Michael Louis Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
Behram V. Parekh - State Bar No. 180361
bvp@kirtlandpackard.com
Heather M. Peterson - State Bar No. 261303
hmp@kirtlandpackard.com
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Telephone 310.536.1000
Facsimile 310.536.1001

*Counsel for Plaintiffs Latta, Edge, Gonzalez, and Proposed Interim Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION**<br><br>This Document Relates To:<br>All Actions | Master File No. 2:12-ml-2317 CAS (JEM)<br><br>[MDL No. 2317]<br><br>**COOPERATING COUNSELS' NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF KIRTLAND & PACKARD LLP AS INTERIM CLASS COUNSEL AND APPROVAL OF PROPOSED LEADERSHIP STRUCTURE; MEMORANDUM IN SUPPORT THEREOF**<br><br><u>Hearing</u>:<br><br>Date: March 26, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 5<br><br>Trial Date: None Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 26, 2012, at 10:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 5 of the United States District Court for the Central District of California, 312 North Spring Street, Los Angeles, California, before the Honorable Christina A. Snyder, United States District Judge, Plaintiffs in the *Ruscitti*, *Chenier*, *Latta*, *Paragin*, and *Edge* actions will move and for entry of an order appointing Behram V. Parekh of Kirtland & Packard LLP, counsel of record in the *Latta* and *Edge* actions, as Interim Class Counsel and appointing a Plaintiffs' Executive Committee consisting of a single counsel from each of the *Ruscitti*, *Chenier*, and *Paragin* cases.

Pursuant to Local Rule 7-3, Plaintiffs' counsel herein met and conferred with Defendants' counsel. Defendants have indicated that they oppose this motion. Plaintiffs' counsel herein also met and conferred with Plaintiff's counsel in the coordinated *Stiepleman v. Oreck Corp*. action, CACD Case No. 2:12-cv-00949-CAS-JEM. Plaintiff Stiepleman's counsel have indicated that they oppose this motion.

Dated: February 27, 2012

RESPECTFULLY SUBMITTED,
Michael Louis Kelly
Behram V. Parekh
Heather M. Peterson

By: /s/ Behram V. Parekh
BEHRAM V. PAREKH
**KIRTLANDPACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Telephone (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiffs Latta, Edge, Gonalez, and Proposed Interim Class Counsel*

[Additional Counsel on Signature Page]

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. ARGUMENT ........ 5

A. THIS IS ONE CASE ABOUT FALSE AND DECEPTIVE MARKETING ........ 5

B. APPOINTMENT OF INTERIM CLASS COUNSEL ........ 8

1. The Court Possesses the Authority and Should Appoint as Interim Class Counsel Attorneys Who Have the Knowledge, Experience, and Resources to Manage the Action ........ 8

2. The Court Should Adopt Cooperating Counsel's Proposed Leadership Structure ........ 10

3. The Proposed Structure Is Best Suited to Manage the Litigation ........ 10

a. Proposed Interim Class Counsel and Members of the PEC Have Worked to Identify and Investigate the Claims at Issue ........ 11

b. Proposed Interim Class Counsel Has Extensive Experience Handling Complex and Class Actions ........ 13

c. Members of the PEC Have Extensive Experience Handling Complex Litigation and Class Actions ........ 16

i. Roger L. Mandel, Lackey Hershman, L.L.P. ........ 16

ii. Frank E. Piscitelli, Jr., Piscitelli Law Firm ........ 17

iii. Ben Bingham, Bingham & Lea, P.C. ........ 18

d. Proposed Interim Class Counsel Has the Best Knowledge of the Applicable Law ........ 18

e. Proposed Interim Class Counsel and the PEC Have and Will Dedicate the Resources Necessary to Represent the Class ........ 19

f. Kirtland Packard Enjoys the Support and Confidence of All Other Cooperating Counsel ........ 20

4. The Appointment of Mr. Stiepleman's Counsel as Interim Counsel by the Florida Court Should Not Be Controlling ..... 20

IV. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

Federal Cases

*Carlin v. DairyAmerica, Inc.*,
109CV0430 AWI DLB, 2009 WL 1518058 (E.D. Cal. May 29, 2009) ........ 12

*Ehler v. IPEX, Inc.*,
CIV.A. 08-CV-02220CM, 2009 WL 1392075 (D. Colo. May 15, 2009) ........ 12

*In re Mun. Derivatives Antitrust Litig.*,
252 F.R.D. 184 (S.D.N.Y. 2008) ........ 13

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 8

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ........ 8

*Walker v. Discover Fin. Services*,
10-CV-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011) ........ 12

Federal Statutes

28 U.S.C. § 1407(a) ........ 4

Federal Rules

Fed. R. Civ. P. 23(g) ........ 2, 9, 10

Fed. R. Civ. P. 23(g)(1)(A) ........ 9

Fed. R. Civ. P. 23(g)(1)(A)(i) ........ 12

Fed. R. Civ. P. 23(g)(1)(A)(iv) ........ 19

Fed. R. Civ. P. 23(g)(2)(B) ........ 9

Fed. R. Civ. P. 23(g)(3) ........ 8, 21

## I. INTRODUCTION

All Plaintiffs and their counsel in this multidistrict proceeding, *except* for counsel representing a single plaintiff, Scott Stiepleman[1], ("*Stiepleman*"), have agreed to work cooperatively together to prosecute this litigation for the benefit of the putative class ("Cooperating Counsel")[2]. Although each of the first five cases were filed independently by separate counsel representing separate plaintiffs, the

---

[1] *Stiepleman v. Oreck Corp.*, CACD Case No. 2:12-cv-00949-CAS-JEM. *Stiepleman* was originally filed on August 19, 2011 in the Southern District of Florida by Mr. Davis of Thornton Davis & Fein (Miami, Florida); Mr. Marlborough of Faruqi & Faruqi (New York, New York) and Mr. Bursor of Bursor & Fisher (New York, New York). The complaint concerns Plaintiff Stiepleman's February 23, 2011 purchase of one ProShield Plus air purifier.

[2] Cooperating Counsel are counsel in the following cases, in order of filing:

1) *Ruscitti v. Oreck Corp*. CACD Case No. 2:12-cv-00950-CAS-JEM. *Ruscitti* was originally filed on May 10, 2011 in the Northern District of Illinois by Mr. Bingham of Bingham & Lea, P.C. (San Antonio, Texas), Mr. Keogh of Keogh Law Firm (Chicago, Illinois), and Mr. Heenan of Heenan & Bishop (Billings, Montana);
2) *Chenier v. Oreck Corp.*, CACD Case No. 2:11-cv-05321-CAS-JEM. *Chenier* was originally filed on June 24, 2011 in this District by and Mr. Mandel of Lackey Hershman LLP (Dallas, Texas), Mr. Tamez of Gnau & Tamez Law Group LLP (San Diego, California), Mr. Wilson of Wilson Trosclair & Lovins PLLC (Dallas, Texas), and Mr. Nachawati of Fears Nachawati Law Firm PLLC (Dallas, Texas). Mr. Piscitelli, Jr. of Piscitelli Law Firm (Highland Heights, Ohio) was added as counsel of record on an amended complaint filed on August 30, 2011;
3) *Latta v. Oreck Corp.*, CACD Case No. 5:11-cv-01082-CAS-JEM. *Latta* was originally filed on July 11, 2011 in this District by Mr. Parekh of Kirtland & Packard LLP (El Segundo, California);
4) *Paragin v. Oreck Corp.*, CACD Case No. 2:11-cv-00951. *Paragin* was originally filed on August 23, 2011 in the Southern District of Ohio by Mr. Piscitelli, Jr. of Piscitelli Law Firm (Highland Heights, Ohio);
5) *Edge v. Oreck Corp.*, CACD Case No. 2:11-cv-08725-CAS-JEM. *Edge* was originally filed on October 21, 2011 in this District by Mr. Parekh of Kirtland & Packard LLP (El Segundo, California).

numerous Plaintiffs' counsel in four of those five cases were able to work together cooperatively in order to ensure that the best interests of *all* putative class members would be represented, and were able to do so well before this MDL proceeding was even initiated. This cooperative working relationship was agreed to in order to best promote the interest of the putative class, and for the exact same purposes that these proceedings were granted MDL status: "to avoid duplication of discovery, to prevent inconsistent pretrial rulings, and to conserve the resources of the parties, their counsel, and the judiciary."[3] Cooperating Counsel asked the *Stiepleman* lawyers to join and work together with Cooperating Counsel before the MDL proceeding was initiated, but they declined to do so.

The *Stiepleman* lawyers, even after the MDL panel's ruling, now persist in going their own way and advancing a "two case" theory of the litigation which has already been rejected by this Court and by the MDL Panel. In fact, the "two-case" theory finds as its only ally the very Defendants being prosecuted in this case, who apparently believe that their interests are best achieved by following a "divide and conquer" strategy. Because the *Stiepleman* lawyers have consistently refused to work with Cooperating Counsel and appear to be bent only on advancing their own interests, Cooperating Counsel respectfully request that, pursuant to Fed. R. Civ. P. 23(g), the Court appoint as Interim Class Counsel for *all* putative class members (vacuum *and* air purifier purchasers), Behram V. Parekh of Kirtland & Packard LLP, and approve a three person executive committee composed of a single counsel from each of the underlying actions who have already demonstrated that they are capable of working together towards the common goal of litigating and resolving this case in the best interests of the putative class.

---

[3] An Overview of the United States Judicial Panel on Multidistrict Litigation found at: http://www.jpml.uscourts.gov/Legal_Resources/legal_resources.html

A decision by this Court on the appointment of interim class counsel is somewhat urgent. The parties have agreed to two days of mediation in New York City on April 9 and 10, 2012. While it initially appeared that the *Stiepleman* lawyers were going to work with Cooperating Counsel in attempting to achieve a global resolution of the case, they stopped communicating with Cooperating Counsel, unilaterally filed a "Status Report" with no notice, much less discussion or input, from any of the other parties to the litigation, and with complete disregard for this District's emphasis on and preference for prior meet and confers and joint submissions. (*See*, 2:12-cv-949-CAS-JEM, Docket Nos.73 & 74). The *Stiepleman* lawyers effectively ask, in the guise of such "Status Report," for this Court to ignore the MDL Panel's decision not to fracture this case, for this Court to reconsider its Tentative Decision on Oreck's Motion to Dismiss and Motion to Strike, issued October 24, 2011, and for this Court to appoint *Stiepleman* counsel as interim class counsel in this MDL over a portion of the putative class.[4] Cooperating Counsel respectfully oppose the requests contained in the *Stiepleman* "Status Report."

## II. BACKGROUND

The products at issue in this case, the Oreck Halo vacuum and the Oreck XL, ProShield and ProShield Plus model air purifiers (hereafter "Oreck Products"), were often marketed together under the banner "flu fighters" and with many common representations about their ability to kill bacteria, viruses, molds, etc. On behalf of their clients, Cooperating Counsel filed lawsuits asserting that the health-related claims made about the Oreck Products were false and misleading to consumers.

This Court has already recognized that this is one case about marketing used to fool customers, not two cases about the underlying technology used in the

[4] Although *Stiepleman*'s counsel obtained an order from the Florida District Court appointing them as interim class counsel in the *Stiepleman* action, as discussed in more detail below, Cooperating Counsel respectfully submit that the manner in which such appointment was obtained renders it of little significance in this MDL proceeding.

products. Oreck moved to dismiss and/or strike claims made about air purifier products not actually purchased by Plaintiff Chenier (who only purchased a vacuum cleaner product) and this Court denied the motion to strike and instead found that because of the common marketing, Plaintiff Chenier had standing to prosecute claims for both vacuum and air purifier purchasers. Tentative Civil Minutes, October 24, 2011, p.4 ("…the Court finds that at this stage of the proceedings, plaintiffs have standing to represent purchasers of both the Halo and the ProShield") (See Exhibit A attached hereto).

The MDL Panel also recognized that this is one case about marketing, not two cases about technology. After considering the briefing and arguments of Cooperating Counsel, the *Stiepleman* lawyers, and Oreck, the MDL Panel found that all of the pending actions "involve common questions of fact" and "share factual issues arising from allegations that Oreck falsely and deceptively marketed the subject products—both the Halo and the air purifiers—as highly effective in eliminating common viruses, germs, and allergens and reducing the risk of, or preventing the flu or other illnesses." More specifically, the Panel noted:

> The two-MDL approach suggested by Oreck is problematic given that the plaintiff in the *Paragin* action purchased both a Halo and an air purifier, and the two plaintiffs in the *Edge* action purchased one or the other of those products. Oreck's approach would mean that one MDL – the Halo MDL – would consist of two actions *in toto* and the Halo-related claims in two others. The other – the air purifier MDL – would consist of fewer than three actions: one action in its entirety and the air purifier-related claims in two others. Oreck has not pointed to any instance in which the Panel has created two MDLs by slicing and dicing just half a dozen actions. Although separating out the claims in these actions is certainly permissible, *see* 28 U.S.C. § 1407(a), it is not warranted here.

*See In Re: Oreck Corporation Halo Vacuum Marketing And Sales Practices Litigation***,** MDL No. 2317, Document 42, p. 2, f.n. 5. (*See*, Exhibit B).

The only parties to take a contrary position are Defendants, and Plaintiff Stiepleman, who only purchased a single air purifier and who seeks to represent air purifier purchasers only. This position ignores, for example, consumers such as Plaintiff Paragin, who simultaneously purchased both types of products based on a single marketing campaign, and who seeks to represent *all* putative class members.

## III. ARGUMENT

### A. THIS IS ONE CASE ABOUT FALSE AND DECEPTIVE MARKETING

As stated above, this Court has already recognized that this case is about one marketing scheme and not two individual technologies. The MDL Panel also easily recognized the obvious oneness of the case when, after Oreck initiated two MDL petitions, the MDL court allowed one filing to serve both cases (instead of having to file pleadings in each case), allowed time to argue to the Panel as only one case, denied Oreck's and Stiepleman's request to split the case into two MDLs, and re-named the litigation "In re: Oreck Corporation Halo Vacuum and Air Purifiers Marketing and Sales practices Litigation," assigning it only one MDL case number.

Although Defendants and Plaintiff Stiepleman argue that these are separate cases based upon different underlying technology, it is simply not significant that one product claims to use a UV light while another product claims to use a "Truman Cell" to supposedly accomplish the misleading claims; the allegation is that there is no reliable scientific evidence that either the UV light or the Truman Cell does what Oreck represented they would both do: "Kill up to 99.9% of bacteria, viruses, molds," etc.

Despite its protests after this litigation started, Oreck made this a single case about all of these products by the way it marketed the products involved. Oreck marketed the vacuum and air purifier products together, sold the vacuum and air purifier products together (offering a discount to purchasers who purchased both products at the same time, such as Plaintiff Paragin) and settled FTC charges on

both lines of products at one time, with one consent decree, one $750,000 payment not designated or segregated between air purifiers and vacuums, and one going-forward injunction related to all products.

Even the *Stiepleman* lawyers recognized at the outset that this really is one case about marketing, not two cases about two technologies. As the fourth filed case against Oreck related to its "flu fighter" marketing, the *Stiepleman* lawyers contacted some of Cooperating Counsel with a suggestion that we "discuss a combined strategy in these matters" and all work together.[5] It turned out that what they really meant was to split the case into two cases with the *Stiepleman* lawyers taking air purifiers and Cooperating Counsel prosecuting vacuum claims. However, if the *Stiepleman* lawyers really thought these were two cases, why bother to ask Cooperating Counsel to agree to split the one case into two cases? Why did the *Stiepleman* lawyers think they even needed to contact Cooperating Counsel?

After their strategy was rejected by Cooperating Counsel, the *Stiepleman* lawyers joined Oreck's bid to the MDL Panel to split the case in two, playing into Oreck's "divide and conquer" strategy. The MDL Panel ruled against Mr. Stiepleman's and Oreck's bids to have these cases separated with the Halo vacuum cases going to Illinois and the air purifier cases going to Florida. The MDL Panel, rather, agreed with Cooperating Counsel's recommendation for a single MDL proceeding before this Court.[6] It was obviously the intention of the MDL Panel that the products be treated as one case regarding a deceptive campaign by Oreck, not two cases about ineffectual technologies.

---

[5] See Letter from Barry Davis to Cooperating Counsel Aug. 22, 2011, filed herewith as Exhibit G.

[6] The MDL Panel, in agreeing with Cooperating Counsel's recommendation and sending these cases to this Court, also recognized that this Court was the most appropriate venue for the MDL proceeding and clearly rejected both Oreck's and Stiepleman's strenuous arguments to the Panel that this Court should not be selected as the MDL venue because Cooperating Counsel had purportedly engaged in forum shopping.

In a "Status Report" filed after the MDL decision, *Stiepleman* lawyers re-urge notions already rejected by this Court and by the MDL Panel, namely, that this case should be split into two cases despite the common marketing related to the products. (*See*, 2:12-cv-949-CAS-JEM, Docket Nos.73 & 74). One of reasons advanced by *Stiepleman* lawyers is that there is a conflict based upon an alleged limited pool of assets from which recovery can be had, implying that Oreck is or will become insolvent. *Id*. This, they suggest, creates a conflict between vacuum purchasers and air purifier purchasers who will need to compete for Oreck's supposedly limited funds. *Id*. Plaintiff Stiepleman, however, presents absolutely no evidence that Oreck is in danger of insolvency or that there is a limited pool of resources available for payment of any recovery, and there is no basis to assume that his allegations are true or based on any fact. *Id*.

If, however, one takes *Stiepleman*'s lawyers' argument related to the need for two separate classes at face value, then Plaintiff Stiepleman and his lawyers are also incapable of representing the interests of purchasers of more than one air purifier product and cannot be interim class counsel for the class of purchasers of three models of air purifiers they seek to represent. The three air purifier models at issue were sold at different price points, had differing feature sets, were sometimes subject to different advertising, were potentially bought for differing reasons, and are potentially subject to different damages calculations. Thus, taking *Stiepleman* lawyers' argument to its logical conclusion, each air purifier model purchaser class should be separate, should be entitled to its own class counsel, and *Stiepleman* lawyers should be limited to representing purchasers of the specific model of air purifier purchased by Plaintiff Stiepleman. Cooperating Counsel, however, submit that this argument, just like *Stiepleman* lawyers' argument against single representation of a combined vacuum cleaner and air purifier class, is without merit.

In actual fact, Cooperating Counsel have consulted with and are in the process of retaining experts to assist them in formulating a detailed damage model that will

provide an objective basis to ascertain the damages or "price premium" paid for each of the products at issue if a full refund does not turn out to be the eventual remedy.[7] This will provide a basis for determining class members' damages as to each of the products at issue, including the three types of air purifiers, which were all sold at different price points. A detailed but cohesive damage model is also necessary, in part, because many class members purchased more than one of the disputed products and discounts were available to those class members for purchasing multiple products. By creating a single, cohesive damage model which accounts for the potentially differing price premiums paid by purchasers of each product, Cooperating Counsel can effectively advocate and advance the interests of *all* class members, without conflict.

## B. APPOINTMENT OF INTERIM CLASS COUNSEL

### 1. The Court Possesses the Authority and Should Appoint as Interim Class Counsel Attorneys Who Have the Knowledge, Experience, and Resources to Manage the Action

This Court possesses broad inherent authority "to control the disposition of the case[s] on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Pursuant to Fed. R. Civ. P. 23(g)(3), a "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." It is well established that appointment of lead counsel is appropriate in order to ensure efficient representation in a proposed class action. *See* 5 *J. Moore's Federal Practice*, ¶ 402.02[2] (1985), *citing Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977)("it is ... within the court's discretion to appoint general or lead

---

[7] Cooperating Counsel has attempted to engage the *Stiepleman* lawyers in a joint effort to retain experts for the Class, but to no effect so far, putting air purifier class members at the risk of differing damage models due to lack of communication and coordination by the *Stiepleman* lawyers.

counsel whose function is to supervise and coordinate the conduct of the consolidated cases.")

The Manual for Complex Litigation ("Manual") recognizes the benefit of appointing an appropriate leadership structure of plaintiffs' counsel in complex litigations. *See, Manual for Complex Litigation*, 4th Ed. (2004), § 10.22. As the Manual states, "[i]nstituting special procedures for coordination of counsel early in the litigation will help avoid … problems [of unnecessary costs and duplication]." *Id.* The Manual delineates a number of factors the court should assess when appointing lead counsel, including counsel's qualifications, experience in similar litigations, competence, resources, commitment and ability to command the respect of their colleagues and work cooperatively with opposing counsel. *Id*. at § 10.224.

In 2003, those factors were incorporated into Fed. R. Civ. P. 23(g), a then new rule for appointing lead or interim lead class counsel. Fed. R. Civ. P. 23(g) further provides that where more than one firm moves for appointment as lead counsel, the court is to appoint the counsel or firm that is "best able to represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(2)(B).

Pursuant to the recommendations of the Manual and the requirements of Fed. R. Civ. P. 23(g), courts look to ensure that those firms or counsel appointed as lead counsel are "qualified and responsible" and that they will fairly and adequately represent all of the parties on their side through efficiency and economy. *See* Manual, §§ 10.22 and 10.221. The factors that the Court is to consider under Fed. R. Civ. P. 23(g)(1)(A) are:

(i) The work counsel has done in identifying or investigating potential claims in the action;
(ii) Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) Counsel's knowledge of the applicable law; and
(iv) The resources that counsel will commit to representing the class.

As demonstrated below, based on each of these factors, proposed Interim Class Counsel and the structure recommend herein is the most appropriate choice.

**2. The Court Should Adopt Cooperating Counsel's Proposed Leadership Structure**

Cooperating Counsel respectfully moves the Court to appoint as Interim Class Counsel Kirtland & Packard LLP, and more specifically, Mr. Behram V. Parekh of that firm. Cooperating Counsel also request that the Court appoint, or allow Interim Class Counsel to compose, a Plaintiffs' Executive Committee ("PEC"), composed of Ben Bingham of Bingham & Lea, P.C., representing the first filed *Ruscitti* case, Roger Mandel of Lackey Hershman, LLP, representing the second filed *Chenier* case, and Frank Piscitelli, Jr. of the Piscitelli Law Firm representing the *Paragin* vacuum and air purifier case.

Mr. Parekh is currently the counsel of record in the *Latta* and *Edge* cases. These two cases were both originally filed in this District and include a representative plaintiff who purchased at least one of each of the vacuum and air purifier products at issue. Between these two cases, Kirtland & Packard LLP directly represents at least one person who purchased the Halo vacuum at issue and at least one person who purchased the Oreck XL and Oreck ProShield Plus air purifiers at issue in this case.[8]

**3. The Proposed Structure Is Best Suited to Manage the Litigation**

Proposed Interim Class Counsel, along with the proposed members of the PEC, are best suited to represent the putative class under the requirements of Fed. R. Civ. P. 23(g) based upon the work they have done identifying and investigating the potential claims in the action, their experience in handling class actions, complex litigation, and the types of claims asserted in these actions, their knowledge of the applicable law, and the resources they will commit to representing the class.

---

[8] Among them, Cooperating Counsel have been contacted by over 125 purchasers of all the Oreck products involved in this case who can potentially act as additional class representatives if necessary or appropriate.

**a. Proposed Interim Class Counsel and Members of the PEC Have Worked to Identify and Investigate the Claims at Issue**

Proposed Interim Class Counsel, along with members of the PEC, originally identified and investigated the practices that give rise to this litigation. Proposed Interim Class Counsel and members of the PEC were responsible for the first three filed cases related to the matters in this litigation, are the only counsel who represent both vacuum cleaner and air purifier clients, and are the only counsel who have already briefed, argued, and received tentative rulings on the claims alleged in their complaints, and, effectively, caused the MDL process to occur in this litigation through cooperatively working together to coordinate these cases before this Court.

Cooperating Counsel members conducted extensive investigation prior to the filing of their complaints, as evidenced by their complaints, including reviewing the filings and documents in the related action brought by the Federal Trade Commission, conducting an independent investigation of the underlying claims, and consulting with experts with relation to both the technical and damages aspects of the litigation. Cooperating Counsel have already obtained some discovery in their underlying litigations and are in the process of obtaining further discovery.

Cooperating Counsel have also worked to further the possible early settlement of this litigation. After Cooperating Counsel advanced the name of the Honorable Layne R. Phillips, retired, to act a mediator, all parties have agreed to mediate the case on April 9 and 10, 2012 in New York City. In order to achieve an effective mediation, it is important that counsel for the putative class speak with one voice and for the class first and foremost. A singular authoritative voice is necessary in order to achieve the best results for the putative class, provide Defendants with surety in their dealings, and avoid any possibility of a reverse auction. Thus, appointment of a singular Interim Class Counsel, whose appointment is supported by all Plaintiffs and their counsel in five of the six coordinated cases, will

significantly enhance the ability of Plaintiffs to effectively advocate on behalf of the *entire* putative class, and not just a segment or divided portion of the putative class.

Further, as discussed above, having a singular Interim Class Counsel for both the vacuum and air purifier products does not create any conflict. There is absolutely no reason to believe, and certainly no evidence, that Oreck Corporation is in tight financial straits or incapable of funding a fair and reasonable settlement for all putative class members. There is no reason to believe that Oreck would commit to a two-day mediation if it did not, in good faith, believe that a fair and reasonable settlement could be achieved and fully funded on behalf of all putative class members. Likewise, there is no reason to believe that Plaintiffs will be able to get a better deal negotiating each product separately rather than together and simple common sense would indicate otherwise.[9]

Under such circumstances, Fed. R. Civ. P. 23(g)(1)(A)(i) and case law thereunder favor the appointment of Proposed Interim Class Counsel as they investigated potential claims, initiated the litigation and are working towards a resolution on behalf of the class. *See Walker v. Discover Fin. Services,* 10-CV-6994, 2011 WL 2160889, *3 (N.D. Ill. May 26, 2011)(finding the appropriate lead counsel to be the ones who filed the action and worked to identify and investigate potential claims); *Carlin v. DairyAmerica, Inc.*, 109CV0430 AWI DLB, 2009 WL 1518058, *3 (E.D. Cal. May 29, 2009)(finding counsel who did a majority of the preparation work leading to the filing of an action, including investigation into the alleged misconduct and identification of the legal theory of the case is a factor favoring appointment of lead counsel); *Ehler v. IPEX, Inc.*, 08-CV-02220CM, 2009 WL

---

[9] Although *Stiepleman* lawyers have argued, in their "Status Report," that the interests of vacuum cleaner class members and air purifier class members are in conflict and require separate representation, they present no evidence of such. Frankly, the *Stiepleman* lawyers, by taking such a position, are, more than anything else, acting in a manner designed to serve their own self-interests, and contrary to the best interests of putative class members in maximizing their recovery.

1392075, *2 (D. Colo. May 15, 2009)(finding the appropriate interim lead counsel to be the firms that investigated and identified the potential claims, and were engaged in discussions aimed at resolving the claims on behalf of the putative class); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008)(work done by counsel investigating claims and negotiating a settlement with the defendant weighs in favor of their appointment as interim lead counsel).

**b. Proposed Interim Class Counsel Has Extensive Experience Handling Complex and Class Actions**

Kirtland & Packard LLP has vast experience in handling class actions and other complex litigation and the types of claims asserted in this action, along with being a very capable full service law firm. The firm brings the following skills and benefits to the leadership of this case:

– Nationwide consumer class action leadership and litigation experience;

– The ability to understand, litigate and communicate complex subjects;

– The proven ability to, if necessary, try to verdict complex actions;

– The proven ability to take cases through appeal and Supreme Court review;

– Significant manpower and resources; and

– The experience and stability of a firm dealing with complex litigation since 1932.

The lead attorneys from the firm on this matter, Behram V. Parekh and Michael Louis Kelly, personally also bring a wealth of class action litigation experience to this matter. Mr. Parekh is of counsel to Kirtland & Packard LLP and has been litigating complex securities and consumer class actions for his entire sixteen year career. He has been appointed as lead or co-lead counsel in numerous complex class action and mass tort cases. Mr. Parekh has extensive experience litigating consumer class actions, including taking complex litigation through trial and appeal. Mr. Parekh is also a graduate of the Straus Institute for Dispute Resolution's Alternative Dispute Resolution program, which gives him a

considerable advantage in effectively advocating the interests of his clients and the putative class in arbitrations and mediations, as well as understanding the dynamics of mediations, and how to use the mediation process to effectively settle complex cases.

Mr. Kelly is a senior partner with Kirtland & Packard LLP. Mr. Kelly has practiced with the firm for his entire legal career spanning over thirty years, and has concentrated his trial practice in product liability, consumer class actions and business litigation. He has tried many types of cases to successful jury verdict, including obtaining a record setting individual discrimination verdict of $63.9 million dollars in the *PrivatAir* case in 2005. He has also worked tirelessly to expand consumer protections. In the *Indochina International* case, Mr. Kelly obtained a multi-million dollar verdict against several insurance companies when they conspired to provide their insured a defense, but then wrongfully filed a declaratory relief action against their insured, to try to reduce the money they paid to injured third parties. This case created a new form of insurer liability to insureds.

Along with Mr. Parekh and Mr. Kelly, the firm also has a full-fledged trial and appellate practice, with countless verdicts and over 180 published appellate opinions to its credit since the firm's founding in 1932, a list of which is included in the firm's resume, filed herewith as Exhibit C. Kirtland & Packard LLP also has extensive experience in complex multi-party and multi-district litigation, and has litigated, or is currently involved in litigating, multiple MDL proceedings, beginning with MDL-13 in 1967. Kirtland & Packard LLP has acted as lead counsel in multiple successfully concluded consumer class actions. Further, both Mr. Parekh and Mr. Kelly have litigated class action, complex litigation, and mass tort claims for most of their legal careers and have been appointed as lead counsel or a member of a lead counsel committee in numerous cases, including currently serving as a member of the lead counsel committee in the Toyota Unintended Acceleration Litigation, MDL-2151 in the Central District of California, as co-lead counsel in the

Apple iPhone4 Litigation, MDL-2188 in the Northern District of California (wherein just recently the plaintiffs obtained preliminary approval of a settlement on behalf of over 24 million class members which allows each class member to receive $15 in cash plus a free “bumper” worth $29), and as sole lead counsel in the POM Wonderful LLC Litigation, MDL-2199, in the Central District of California.

In one recent and more difficult matter, Mr. Parekh and Mr. Kelly were involved with over twenty-five other law firms who had filed related cases. Without the need for a formal contested lead counsel appointment process, Mr. Kelly and Mr. Parekh were able to forge consensus from rampant dissension, allocate and supervise detailed work, including multiple trips to the Court of Appeals and California Supreme Court, eventually settle the case, distribute millions of dollars in relief, and divide and distribute fees, all without any significant disagreements derailing the complicated process. Members of Kirtland & Packard LLP have successfully served as lead or co-lead counsel in countless complex, class action, and mass tort cases involving products liability, securities, and employment issues, resulting in settlements or verdicts totaling hundreds of millions of dollars. A partial list of such matters successfully concluded by Mr. Parekh and Mr. Kelly include:

| | |
|---|---|
| $150,000,000 | Drug liability litigation [parties confidential] |
| $63,900,000 | *Baker v. PrivatAir* [age discrimination claim] |
| $18,500,000 | Business litigation [parties confidential] |
| $12,200,000 | *Opperman v. Verizon* [consumer class action] |
| $12,000,000 | *Great Escape Promotion Cases* [consumer class action] |
| $10,000,000 | *In re Mastec Inc. Securities Litigation* |
| $7,000,000 | *Amande v. Los Angeles County* [juvenile detention claim] |
| $6,000,000 | *Meyers v. CalTrans* [defective roadway design] |
| $4,344,000 | SUV design defect case [parties confidential] |
| $2,600,000 | *Indochina v. Stratford Insurance Co.* [Insurance bad faith] |

### c. Members of the PEC Have Extensive Experience Handling Complex Litigation and Class Actions

Each proposed member of the PEC also has extensive experience in class actions and complex litigation including consumer cases, securities cases, anti-trust cases, employment cases, class actions within bankruptcy proceedings, MDL proceedings, and numerous other complex and multi-party litigations.

#### i. Roger L. Mandel, Lackey Hershman, L.L.P.

Mr. Mandel is a nationally known class action lawyer who has been lead and liaison counsel in class action cases across the country which have successfully recovered hundreds of millions of dollars for injured consumers. He successfully tried one of the only two class actions known to have been tried to a jury verdict in the Texas State Courts. He is the past co-chair of the Class Action Litigation Group of the American Association of Justice. He has been named as a Texas Super Lawyer in the Class Action/Mass Torts category since the inception of the ratings in 2003. He is a frequent author and lecturer on class action topics.

Beyond the accomplishments and awards set forth in his Curriculum Vitae, filed herewith as Exhibit D, Mr. Mandel is currently serving as the lead counsel in a nationwide class action brought under ERISA on behalf of over 24,000 401(k) plans pending in the United States District Court for the District of Connecticut, a nationwide consumer fraud case against a “penny auction” website in the United States District Court for the District of Connecticut, a nationwide consumer fraud case against a “penny auction” website pending in the United States District Court for the Western District of Oklahoma, and a nationwide breach of warranty and consumer fraud class action pending in the United States District Court for the Eastern District of Wisconsin. Mr. Mandel also previously served as co-lead counsel in a major MDL antitrust class action.

Mr. Mandel is a partner in the 22 lawyer law firm of Lackey Hershman, L.L.P., with offices in Dallas, Texas, and New York, New York. Lackey

Hershman's partners collectively have decades of experience in prosecuting complex commercial litigation and class actions in federal and state courts across the country, including multiple multi-million dollar jury verdicts. Lackey Hershman has both the manpower and financial resources to prosecute this case to the fullest extent necessary.

**ii. Frank E. Piscitelli, Jr., Piscitelli Law Firm**

Mr. Piscitelli is experienced in both consumer class actions and multi-district litigation. He has served or is currently is serving as co-lead counsel, class counsel, a member of steering committee or executive committee in numerous consumer class actions throughout the United States. Mr. Piscitelli was class counsel in *Gemelas v. The Dannon Co., Inc.*, appointed by the Honorable Dan Aaron Polster, United States District Court for the Northern District of Ohio, Eastern Division. *Dannon* was a nationwide class action that resulted in a $35million landmark settlement and at the time was the largest false advertising case involving a food product. This case involved monetary relief to the class and injunctive relief involving labeling and advertising changes. Mr. Piscitelli also serves as class counsel in *Dennis, et al. v. Kellogg Company*, United States District Court for the Southern District of California, appointed by the Honorable Irma E. Gonzalez. This is another nationwide false advertising consumer class action involving a food product that is currently pending in the Ninth Circuit Court of Appeals.

Mr. Piscitelli served as a member of the Executive Committee for *In re: Countrywide Financial Corp. Cutomer Data Security Breach Litigation*, MDL-1998, appointed by the Honorable Thomas B. Russell of the Western District of Kentucky. He is also a member of the Plaintiff's Steering Committee for *In Re Kaba Simplex Lock Marketing a Sales Practices Litigation*, MDL-2220, appointed by the Honorable Donald C. Nugent of the Northern District of Ohio. *Kaba* is a consumer class action concerning defective push button locks that are found in residential, commercial and government buildings, including airports and

courthouses throughout the United States. Mr. Piscitelli also serves on the discovery committee and law committee for *In re*: *Navistar Diesel Engine Products Liability Litigation*, MDL-2223, appointed by the Honorable Matthew F. Kennelly of the Northern District of Illinois. The *Navistar* MDL involves thousands on consumers who purchased Ford trucks with a defective engine. Mr. Piscitelli also serves on the Steering Commitee for *In re: Fosamax (Alendronate Sodium) Products Liability Litigation (No. II)* MDL-2243, appointed by the Honorable Garrett E. Brown, Jr. of the District of New Jersey.

In addition, Mr. Piscitelli is active in numerous bar associations and organizations including the American Association for Justice and the Ohio Association for Justice, where he serves as an editor of Ohio Trial. Mr. Piscitelli is A.V. peer review rated and a 2012 Ohio Super Lawyer. Mr. Piscitelli's resume is filed herewith as Exhibit E.

**iii. Ben Bingham, Bingham & Lea, P.C.**

Mr. Bingham is rated AV-Preeminent by the Martindale-Hubbell Peer Review ratings system, signifying that among his peers he enjoys the highest possible ratings for both legal ability and ethical conduct. He has been licensed for nearly 29 years, and AV-rated for more than half of that period of time. His diverse experience includes representing bankruptcy trustees in individual and class action cases, representing some of the world's largest lenders in commercial workout and bankruptcy matters, and serving as lead or co-lead counsel in consumer class actions that have included usury claims, state securities claims, unfair collection activities, credit reporting violations, illegal marketing schemes, and other deceptive trade practices. His resume is filed herewith as Exhibit F.

**d. Proposed Interim Class Counsel Has the Best Knowledge of the Applicable Law**

Kirtland & Packard LLP's knowledge of the applicable law cannot be challenged or doubted. Kirtland & Packard LLP is the only plaintiffs' law firm

actually based in Los Angeles and has the most familiarity with local practice and procedures. Further, members of Kirtland & Packard LLP are intimately familiar with the cutting edge issues related to the claims asserted in this litigation (deceptive practices, breach of contract, and breach of warranty claims on a nationwide class basis) through their role as a member of the lead counsel committee in the *In re Toyota Unintended Acceleration* MDL litigation, where the very issues that will become important in this litigation, such as dealing with the applicability and enforceability of various state consumer protection statutes, jurisdictional challenges, the ability to certify a nationwide class on various different causes of action, the ability to certify grouped multi-state classes, etc…, are already being briefed and litigated.

**e. Proposed Interim Class Counsel and the PEC Have and Will Dedicate the Resources Necessary to Represent the Class**

Kirtland & Packard LLP not only has the knowledge, experience and ability to represent the proposed class in this action, they, along with the other firms proposed as members of the PEC and the other firms composing Cooperating Counsel, clearly have the resources necessary to litigate this case. Kirtland & Packard LLP will continue to staff this case with experienced lawyers to prepare pleadings, write motions and legal memoranda, conduct discovery, and prepare for trial. Further, Kirtland & Packard LLP, along with members of the PEC and Cooperating Counsel, will continue to commit the same resources and effort to this case as they have committed to their other successful litigation efforts, which have included taking cases through trial and appeal. Kirtland & Packard LLP individually, and collectively with the PEC and other Cooperating Counsel, clearly have the financial and human resources to properly and diligently represent plaintiffs and the putative class in this MDL in satisfaction of Fed. R. Civ. P. 23(g)(1)(A)(iv).

**f. Kirtland Packard Enjoys the Support and Confidence of All Other Cooperating Counsel**

Kirtland & Packard LLP has a proven ability to work with and command the respect of other lawyers, as evidenced by the numerous cases in which they have been appointed lead and co-lead counsel. Further, Kirtland & Packard LLP enjoys the support and confidence of all other Cooperating Counsel in this litigation, many of whom could easily vie for appointment as interim lead counsel themselves, as evidenced by their achievements and resumes filed herewith. The fact that Plaintiffs' counsel in all the underlying cases, other than counsel for Mr. Stiepleman, jointly support the appointment of Kirtland & Packard LLP as Interim Class Counsel should weigh heavily in favor of their appointment.

**4. The Appointment of Mr. Stiepleman's Counsel as Interim Counsel by the Florida Court Should Not Be Controlling**

Given the circumstances in which it occurred, the appointment of *Stiepleman* lawyers as interim class counsel in Florida should be given little weight. *Stiepleman* was the fourth filed case concerning Oreck's marketing of "flu fighter" products. *Stiepleman* was filed on August 19, 2011, more than three months after the first filed case. Four days after the case was filed, the *Stiepleman* lawyers moved for appointment as interim class counsel. Although they knew about Cooperating Counsel's actions, sent them letters and emails, and talked with them on the telephone, the *Stiepleman* lawyers did not serve any of the Cooperating Counsel with a copy of their motion for appointment or otherwise make any effort to make them aware of this maneuver.[10]

---

[10] *Stiepleman* lawyers pre-maturely and unnecessarily file early motions for appointment as interim class counsel as a routine practice, even where they are the only lawyers in the case. This practice is apparently designed as a blocking maneuver to exclude other competing counsel and bind the class to only the choice of counsel made by the initial plaintiff. For examples of *Stiepleman* lawyers' "interim class counsel" maneuver, see, *e.g*,. *Crewe v Rich Dad Education, LLC* 11-

After a hearing on September 30, 2011 on the *Stiepleman* lawyers' motion to be appointed interim class counsel, the Florida District Court entered an order which stated, in relevant part:

> Accordingly, it is **ORDERED AND ADJUDGED** as follows:
>
> 1. Plaintiff's Motion for Appointment of Co-Lead Interim Class Counsel Pursuant to Fed. R. Civ. P. 23(g)(3)[DE 5] is **DENIED** without prejudice, and may be refiled on November 1, 2011.
>
> 2. The parties shall notify the Court on or before October 31st, 2011, of any relevant circumstances in pending class actions, or any newly filed class actions, bringing claims against the Defendants for their representations regarding their Oreck XL Professional, Oreck ProShield, and Oreck ProShield Plus air filters.

*See*, CACD Case No. 2:12-cv-00949, Docket No. 26 (Sept. 30, 2011).

On October 27, 2011, at this Court's urging, Defendants filed MDL petitions seeking to have these cases coordinated, including the *Stiepleman* action.

On October 31, 2011, Defendants and the *Stiepleman* lawyers notified the Florida District Court that Oreck had applied for MDL proceedings on October 27, 2011, and of this Court's stay of these actions pending the MDL, but did not mention this Court's rejection of the "two case" theory in its October 24, 2011 Tentative Ruling. (CACD Case No. 2:12-cv-00949, Docket Nos. 31 & 32).

---

cv-8301 (S.D.N.Y.) (Case filed Nov. 16, 2011. Bursor & Fisher moved for appointment as lead counsel (without any other competing cases being filed) on Dec. 6, 2001 and before Defendant's appearance. Order appointing Bursor as interim class counsel six days later on Dec. 12, 2011); *McClendon v. Sensa Products, LLC*, 11-cv-1650 (N.D. Cal.) (Case filed April 5, 2011. Bursor & Fisher filed motion for appointment on April 12, 2011. Motion re-filed on April 19, 2011. Motion to appoint denied as pre-mature on June 30, 2011(referring to prior denial of motion to appoint, and referring to "negotiating advantages" sought by plaintiff's counsel).

Knowing that MDL petitions had been filed, but still without notice to Cooperating Counsel, the *Stiepleman* lawyers re-urged their appointment as interim class counsel in their October 31, 2011 "Report," and, without re-filing a motion for appointment, obtained an order appointing them as interim class counsel on November 2, 2011.[11] (CACD Case No. 2:12-cv-00949, Docket No. 36).

The Florida District Court stated in its November 2, 2011 Order that the appointment of *Stiepleman* lawyers was appropriate because counsel in the other related actions could have sought to file competing motions to be appointed interim class counsel in the *Stiepleman* action but did not do so. However, in making that decision, the Florida District Court ignored that there was *no notice given by anyone* to any of the possible competing counsel, ignored that the Florida District Court's September 30, 2011 Order provided no notice that anything other than a status report by the parties was to be filed on or before October 31, 2011, and ignored that the Florida District Court's own, signed September 30, 2011 Order specifically stated that the *Stiepleman* lawyers' motion was denied subject to being "***refiled*** on November 1, 2011." Rather, just a day after the Florida District Court's September 30, 2011 Order provided for the re-filing of *Stiepleman* lawyers' motion for appointment, and without any such re-filing occurring, the Florida District Court appointed *Stiepleman* lawyers as interim class counsel for air purifier purchasers.

Cooperating Counsel respectfully submit that the order by the Florida District Court is certainly not binding on this Court, and, given the circumstances, the determination by the Florida District Court should be given little weight. Rather this

---

[11] While a court is not required to stay proceedings because an MDL petition is pending, this Court stayed these actions, as did every other court except the Florida District Court. Cooperating Counsel, many of whom are very experienced in MDL litigation, cannot be faulted for expecting the Florida District Court to stay its proceedings until after the MDL Panel's decision, or, at the very least, requiring *Stiepleman* lawyers to re-file their motion for appointment, consistent with the Florida District Court's own, signed September 30, 2011 Order.

Court, upon this properly noticed motion and with full notice to *all* parties, should determine and appoint as interim class counsel the law firm best suited to represent the *entire* putative class.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs in the *Ruscitti*, *Chenier*, *Latta*, *Paragin*, and *Edge* cases and Cooperating Counsel respectfully request that the Court appoint Kirtland & Packard LLP as Interim Class Counsel and adopt the PEC structure outlined herein.

Dated: February 27, 2012

RESPECTFULLY SUBMITTED,

Michael Louis Kelly
Behram V. Parekh
Heather M. Peterson

By: /s/ Behram V. Parekh
BEHRAM V. PAREKH
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue
Fourth Floor
El Segundo, California 90245
Telephone (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiffs Latta, Edge, Gonalez, and Proposed Interim Class Counsel*

ADDITIONAL COUNSEL

Ben Bingham
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio Texas 78212
210.224.2885 (direct)
210.224.0141 (fax)
**ben@binghamandlea.com**

Frank E. Piscitelli, Jr.
David W. Skall
PISCITELLI LAW FIRM
6151 Wilson Mills Road, Suite 110
Highland Heights, Ohio 44143
(216)931-7000 Telephone
(216)931-9925 Facsimile
frank@feplaw.com
davidskall@feplaw.com

Roger L. Mandel
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
rlm@lhlaw.net

John Heenan
HEENAN LAW FIRM
3970 Avenue D, Suite A
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
**john@heenanlawfirm.com**

Keith J. Keogh
Craig Shapiro
Timothy J. Sostrin
KEOGH LAW, LTD.
101 North Wacker Drive, Suite 605
Chicago, Illinois 60606
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com

Majed Nachawati
FEARS | NACHAWATI LAW FIRM, P.L.L.C.
4925 Greenville Ave, Suite 715
Dallas, TX 75206
Telephone: (214) 890-0711

Facsimile: (214) 890-0712

Jeremy R. Wilson
WILSON TROSCLAIR & LOVINS, P.L.L.C.
302 N. Market St., Suite 510
Dallas, TX 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475

Daniel R. Tamez, Esq.
GNAU & TAMEZ LAW GROUP, LLP
1010 Second Ave., Suite 1750
San Diego, CA 92101
Telephone: (619) 446-6736
Facsimile: (619) 684-3500