**FARUQI & FARUQI, LLP**
David E. Bower (Bar No. 119546)
Email: dbower@faruqilaw.com
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiff Scott Stiepleman and Interim Class Counsel for the Air Purifier Class*

(Additional counsel listed on signature page)

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Oreck Corporation Halo Vacuum and Air Purifiers Marketing and Sales Practices Litigation<br><br>This Document Relates to All Actions | Master File No. 2:12-ml-2317 CAS (JEM)<br>[MDL No. 2317]<br><br>**OPPOSITION TO MOTION FOR APPOINTMENT OF KIRTLAND & PACKARD LLP AS INTERIM CLASS COUNSEL AND APPROVAL OF PROPOSED LEADERSHIP STRUCTURE**<br><br>Date: March 26, 2012<br>Time: 10:00 a.m.<br>Courtroom: 5 |

# TABLE OF CONTENTS

PAGE(S)


I. INTRODUCTION .... 1

II. ARGUMENT .... 6

A. Competing Counsel's Motion Should Be Denied For Violating Local Rule 7-3 .... 6

B. The Order Appointing Lead Counsel Is Binding Until Modified Or Vacated By This Court .... 7

C. Coordination Or Consolidation Should Be Decided Before The Appointment Of Interim Counsel .... 8

D. The Two Putative Classes Should Be Represented By Separate Counsel .... 10

1. Competing Class Counsel Cannot Fairly And Adequately Represent the Interests Of Purchasers Of Air Purifiers And Vacuum Cleaners .... 10

2. Counsel In The Stiepleman Action Are Best Qualified To Represent The Air Purifier Class .... 14

a. Stiepleman's Counsel's Investigation And Complaint Are Unrivaled .... 14

(i) Competing Counsel's Duplicative Efforts .... 15

(ii) Competing Counsel Fail to Grasp The Importance of Technological Differences Between Air Purifiers And Vacuum Cleaners .... 16

b. Stiepleman's Counsel Have The Requisite Experience, Knowledge, And Resources To Manage And Prosecute This Action .... 17

(i) Faruqi & Faruqi .... 17

(ii) Faruqi & Faruqi Has Unique Experience as Lead Counsel in a Similar Air Purifier Action And Spokesman Liability .... 17

(iii) Thornton, Davis & Fein .... 18

(iv) Bursor & Fisher .... 18

c. The Resources Counsel Will Commit to Representing the Class .... 19

III. CONCLUSION .... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc.v. Windsor*,
521 U.S. 591 (1997) ........ 10

*Campbell v. Ticketmaster Entm't, Inc.*,
Case No. CV 09-1968 ABC (JCL), 2009 U.S. Dist. LEXIS 42982 (C.D. Cal. May 8, 2009) ........ 7

*Cassese v. Washington Mut., Inc.*,
262 F.R.D. 179 (E.D.N.Y. 2009) ........ 9

*Chavez v. Blue Sky Natural Bev. Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ........ 11

*FTC v. Bonnie & Co. Fashions, Inc.*,
90 Civ. 4454, 1992 U.S. Dist. LEXIS 18764 (D.N.J. Sept. 28, 1992) ........ 12

*FTC v. Gem Merchandising Corp.*,
87 F.3d 466 (11th Cir. 1996) ........ 12

*FTC v. U.S. Sales Corp.*,
785 F. Supp. 737 (N.D. Ill. 1992) ........ 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006) ........ 10

*In re Bank of Am. Wage & Hour Empl. Litig.*,
MDL No. 10-MD-2138-JWL, 2010 U.S. Dist. LEXIS 111913 (D. Kan. Oct. 20, 2010) ........ 7

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,
780 F. Supp. 2d 1379 (J.P.M.L. 2011) ........ 9

*In re Equity Funding Corp. of Am. Sec. Litig.*,
416 F. Supp. 161 (C.D. Cal. 1976) ........ 8

*In re Packaged Ice Litig.*,
08-MD-01952, 2009 U.S. Dist. LEXIS 45492 (E.D. Mich. June 1, 2009) ........ 15

*In re Pharmacy Benefit Managers Antitrust Litig.*,
582 F.3d 432 (3d Cir. 2009) ........ 7

*In re Plumbing Fixture Cases*,
298 F. Supp. 484 (J.P.M.L. 1968) .......... 7

*In Re Repetitive Stress Injury Litig.*,
11 F.3d 368 (2d Cir. 1993) .......... 9

*In re South Cent. States Bakery Prods. Antitrust Litig.*,
433 F. Supp. 1127 (J.P.M.L. 1977) .......... 8

*Kayes v. Pacific Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) .......... 11, 13

*Miller v. Beazer Homes USA, Inc.*,
Case No. 07-cv-00952-RWS, 2007 WL 3005332
(N.D. Ga. October 11, 2007) .......... 14

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......... 10

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
495 F.Supp.2d 1052 (S.D. Cal. 2007) .......... 9

*Sullivan v. Chase Inv. Services Inc.*,
79 F.R.D. 246 (N.D. Cal. 1978) .......... 11, 12, 13

*Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*,
664 F.2d 114 (6th Cir. 1981) .......... 7

*Weiner v. Bank of King of Prussia*,
358 F. Supp. 684 (E.D. Pa. 1973) .......... 9

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) .......... 11

**STATUTES**

15 U.S.C. § 53(b) .......... 12

28 U.S.C. § 1407 .......... 8, 9

28 U.S.C. § 1407(a) .......... 8

**OTHER AUTHORITIES**

Manual for Complex Litigation, Fourth § 20.132 (2004) .......... 7, 8

**RULES**

Fed. R. Civ. P. 23(g) .......... passim

Fed. R. Civ. P. 42(a) .......... 8

## I. INTRODUCTION

Scott Stiepleman is the named plaintiff in the first-filed Oreck air purifier case, *Scott Stiepleman v. Oreck Corporation, Oreck Direct, LLC, and David Oreck*, C.A. No. 0:11-61861 (S.D. Fla.), which was transferred to this District by the MDL Panel on February 3, 2012. In addition to being the first-filed air purifier case, *Stiepleman* is also the broadest of the air purifier cases. It includes claims concerning three lines of Oreck's air purifiers (the "XL Professional," the "ProShield," and the "ProShield Plus"). *Stiepleman* is also the only case that includes claims against Oreck's founder, David Oreck. The *Stiepleman* case does not include any claims concerning the Halo vacuum cleaner.

On November 2, 2011, the Hon. William P. Dimitrouleas of the Southern District of Florida appointed Stiepleman's counsel[1] interim co-lead counsel for a putative class consisting of all persons in the United States who purchased an Oreck XL Professional, Oreck ProShield, and/or Oreck ProShield Plus air purifier (the "Air Purifier Class"). Competing Counsel[2] now seek to represent a class that overlaps and conflicts with the Air Purifier Class Stiepleman's Counsel have already been appointed to represent. Competing Counsel's motion should be denied.

Prior to the filing of the *Stiepleman* action, several of the law firms among the Competing Counsel filed class actions on behalf of purchasers of the Oreck Halo vacuum cleaners, but none had filed any claim concerning Oreck air purifiers. On May 10, 2011, the Keogh, Heenan, and Bingham firms, filed *Ruscitti v. Oreck Corp.* in the Northern District of Illinois (now CACD Case No. 2:12-cv-00950), seeking to represent a national class of "all person [sic] in the United States who purchased a [sic] Oreck Halo." On June 24, 2011, the Gnau, Fears, and Wilson firms, filed

---

[1] "Stiepleman Counsel" or "Interim Counsel" consist of Faruqi & Faruqi, LLP, Bursor & Fisher, P.A., and Thornton, Davis & Fein, P.A.

[2] "Competing Counsel" includes Kirtland & Packard LLP, Bingham & Lea PC, Piscitelli Law Firm, Lackey Hershman LLP, Heenan Law Firm, Keogh Law LTD, Fears Nachawati Law Firm PLLC, Wilson Trosclair & Lovins PLLC, and Gnau & Tamez Law Group LLP.

*Chenier v. Oreck Corp.*, in this District, CACD Case No. 2:11-cv-05321-CAS-JEM, seeking to represent a national class of "[a]ll individuals who purchased an Oreck Halo upright vacuum cleaner." On July 11, 2011, the Kirtland firm filed *Latta v. Oreck Corp.* in this District, CACD Case No. 5:11-cv-01082-CAS-JEM, seeking to represent "[a]ll persons located within California who purchased an Oreck Halo vacuum …." Notably, none of these actions asserted any claims on behalf of purchasers of Oreck air purifiers. And though these counsel now contend that purchasers of Halo vacuums and Oreck air purifiers should be lumped together in one big class because "this really is one case about marketing, not two cases about two technologies," Competing Counsel's Br. at 6:4-5, none took that position when they first filed their complaints. Instead they limited their claims, and their class definitions, to only the Oreck Halo vacuum products.

On August 19, 2011, Stiepleman's Counsel filed the first-filed case concerning Oreck air purifiers which asserted claims on behalf of purchasers of three models of Oreck air purifiers, and did not overlap in any respect with Competing Counsel's earlier-filed Halo vacuum cases. The 97-page *Stiepleman* complaint is a substantial and comprehensive piece of work product that was the result of more than 4 months of investigation and hundreds of hours of attorney time. Stiepleman's Counsel interviewed or corresponded with more than 50 purchasers of Oreck air purifiers, met with several authorized Oreck dealers, visited and inspected Oreck store locations, and reviewed hundreds of websites and media to collect the advertisements at issue. *See* Vozzolo Decl. ¶ 5. Stiepleman's Counsel also obtained 2,279 pages of documents from the Federal Trade Commission ("FTC") in response to a Freedom of Information Act ("FOIA") request, consulted with experts, and did other extensive research prior to filing the *Stiepleman* complaint. *See id.* ¶ 6. Stiepleman's Counsel did not limit themselves to the facts outlined in the FTC action, but instead drew upon their unique knowledge of air purifier technology and their original investigation which uncovered that Oreck's advertising campaign

regarding its air purifiers: (1) predated the conduct in the FTC action by approximately six years; and (2) included two predecessor models, the XL Professional and the ProShield, which predated the FTC action and were not at issue in the FTC case. *Id.* ¶¶ 4-8, 16-17.

After the filing of the *Stiepleman* case, Competing Counsel, who had previously filed only Halo vacuum cases, suddenly started copying the *Stiepleman* complaint and filing duplicative and overlapping actions. On August 23, 2011, the Piscitelli firm (working with Competing Counsel) filed *Paragin v. Oreck Corp. et al.*, in the Southern District of Ohio (now CACD Case No. 2:11-cv-00951) seeking to represent a class of "all Ohio residents … who purchased [both] … [a] Halo Vacuum Cleaner and [a] ProShield Plus …." *Id.* at ¶¶ 34, 39. On August 30, 2011, Competing Counsel amended the *Chenier* complaint to add claims concerning the Oreck Proshield Plus, despite the fact that neither *Chenier* plaintiff had purchased any Oreck air purifier. On October 7, 2011, Mr. Piscitelli sent a demand letter on behalf of Linda Gonzalez, a purchaser of one or more Oreck air purifiers. That demand letter plagiarized extensively from the *Stiepleman* complaint and included as an exhibit an original photograph taken by Stiepleman's Counsel during the course of Stiepleman's presuit investigation. *See* Vozzolo Decl. ¶ 41-45 and Exh. 16 (annotated version of Mr. Piscitelli's demand letter highlighting the text and images plagiarized from the Stiepleman complaint). On October 21, 2011, Mr. Piscitelli's firm, along with the Kirtland, Bingham,and Heenan firms, filed *Edge and Gonzalez v. Oreck Corp. et al.*, in this District, CACD Case No. 2:11-08725, asserting claims based on both the Oreck Halo vacuum cleaner and one or more of the Oreck air purifiers. So by the end of October 2011, each of the firms comprising Competing Counsel had filed multiple overlapping actions that conflicted with their own prior Halo vacuum cases, and also overlapped with air purifier claims in the *Stiepleman* case. None of the Competing Counsel, however, had done any original work related

to the Oreck air purifier claims. They had simply copied the *Stiepleman* complaint and/or the prior FTC action.

Stiepleman's Counsel (now Interim Class Counsel) have repeatedly reached out to Competing Counsel and indicated a willingness to work together to advance the interests of all of our clients. For example, we have repeatedly assured Competing Counsel that we do not intend to assert any claims that would overlap with their Halo vacuum cases. And we have offered to work together cooperatively, though we have insisted that all counsel must abide by Judge Dimitrouleas' order appointing Interim Class Counsel representing the Air Purifier Class. However, we have been unable to reach agreement on this fundamental issue, since Competing Counsel are not content with just litigating the Halo vacuum cases they initially brought, but insist on attempting to cut in to the *Stiepleman* action, and undermine Judge Dimitrouleas's appointment of Interim Class Counsel to represent the Air Purifier Class.

Competing Counsel's motion should be denied for at least four reasons. First, Competing Counsel failed to follow Local Rule 7-3, which requires movants to meet and confer in good faith at least 10 days before filing a motion. Competing Counsel did not meet and confer at all with Interim Class Counsel. Instead they made a perfunctory phone call one business day prior to filing, simply to inform Interim Class Counsel that they would file a motion seeking a competing appointment. *See* Bursor Decl. ¶ 2.

Second, Judge Dimitrouleas's order appointing Interim Class Counsel to represent the Air Purifier Class remains in effect unless and until it is vacated. But Competing Counsel have not moved to vacate this order and there are no grounds to do so.

Third, despite the MDL Panel's order transferring *Stiepleman* and several other cases to this District for coordinated proceedings, the actions have not yet been consolidated. Although some form of consolidation will be necessary for the

efficient conduct of these actions, there is a fundamental disagreement over whether there are one or two distinct classes – the Air Purifier Class for which Interim Class Counsel have already been appointed, and a separate class of Halo vacuum cleaner purchasers. The MDL Panel left that issue unresolved, in deference to this Court. *See* 2/4/12 MDL Transfer Order at 2 ("[T]he transferee judge may account, at her discretion, for differences among the actions through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice."). Competing Counsel's motion seeks to leapfrog past that fundamental issue – before this Court decides the appropriate scope of consolidation – by seeking appointment to represent a consolidated class of both air purifier and Halo vacuum purchasers. Thus, Competing Counsel's motion puts the cart before the horse. The Court should first decide whether these two different classes should be consolidated into one. It should then decide whether there are grounds for vacating Judge Dimitrouleas's order appointing Interim Class Counsel. Competing motions for appointment should not be heard until after those threshold issues have been resolved.

Fourth, should the Court reach the question of which counsel are better qualified for appointment, Interim Class Counsel's qualifications and work to date show that they are best able to represent the Air Purifier Class. Faruqi &Faruqi maintains an office within this district, and has the unique experience of having previously represented a nationwide class of air purifier purchasers as co-lead class counsel in *Potter, et al.v. Sharper Image Corporation*, San Francisco County Superior Court Case No.CGC-03-426350 ("*Sharper Image*"). Both the Faruqi and Bursor firms are similarly experienced with spokesman liability, having acted as co-lead counsel in *Thomas v. Global Vision Products, Inc.*, Case No. RG-03091195, (California Superior Ct., Alameda Cty.)("*Global Vision*"), which featured two spokesmen for the company who were named as defendants. In addition, as detailed above, Interim Class Counsel has conducted an extensive four-month investigation as to claims arising from Oreck's false and deceptive advertising campaign. As part

of this investigation Interim Class Counsel communicated with over 50 Oreck customers, communicated with authorized Oreck dealers, inspected Oreck store locations, consulted with experts, reviewed hundreds of websites to collect false advertisements, and reviewed thousands of pages of documents from the FTC in response to a FOIA request.

## II. ARGUMENT

### A. Competing Counsel's Motion Should Be Denied For Violating Local Rule 7-3

Local Rule 7-3 requires "at least ten (10) days prior to the filing of [any] motion" counsel contemplating filing the motion contact opposing counsel to thoroughly discuss the substance of the motion and any potential resolution. The notice of motion must include a statement that "[t]his motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." L.R. 7-3.

Violating both the spirit and the letter of the local rules, Competing Counsel placed a phone call to Mr. Scott Bursor on February 24, 2012, just one business day before filing their Motion. Bursor Decl. ¶ 2. Notably, Competing Counsel failed to include the date of the conference in their Motion. Moreover, Competing Counsel did not "thoroughly discuss" the substance of the present Motion, since it failed to inform counsel that Competing Counsel intended to implicitly vacate Judge Dimitrouleas' Order or achieve a tacit consolidation of all six actions. *Id.*

This Court should exercise its discretion to refuse consideration of Competing Counsel's Motion, which was not filed ten (10) days after conference of counsel. *See* L.R. 7-4, 7-12. Further, the Court may deem the failure to file within the timeframe set by Local Rule as grounds for denial of the motion. L.R. 7-12. Plaintiff Stiepleman therefore requests that the Motion be denied pursuant to L.R. 7-12.

**B. The Order Appointing Lead Counsel Is Binding Until Modified Or Vacated By This Court**

A transferor court order remains in effect upon section 1407 transfer unless the order was made to expire at that time by its own terms. *See, e.g.*, *In re Bank of Am. Wage & Hour Empl. Litig.*, MDL No. 10-MD-2138-JWL, 2010 U.S. Dist. LEXIS 111913, at *14-15 (D. Kan. Oct. 20, 2010); Manual for Complex Litigation ("MCL"), Fourth § 20.132 (2004) ("[U]nless altered . . . the transferor court's orders remain in effect."). The Florida order that Competing Counsel asks this Court to disregard contains no qualifying language. Accordingly, it remains in effect until this Court finds good cause to modify it.

This Court has inherent authority to modify or vacate a transferor court order, but only when "necessary in the interests of justice." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 496 (J.P.M.L. 1968) (discussing class determinations); *see also In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 442 (3d Cir. 2009). Under this standard, courts have modified or vacated orders where the transferor court was misinformed (*see, e.g.*, *Campbell v. Ticketmaster Entm't, Inc.*, Case No. CV 09-1968 ABC (JCL), 2009 U.S. Dist. LEXIS 42982, at *1 (C.D. Cal. May 8, 2009)) or where the transferor court failed to articulate its reasoning. *See, e.g.*, *In re Bank of Am. Wage & Hour Employment Litig.*, 2010 U.S. Dist. LEXIS 111913, at *20-21. Otherwise, the transferee court "ought as a practical matter to accord considerable deference to the judgment of the transferor court . . . ." *Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 120 (6th Cir. 1981).

Contrary to Competing Counsel's argument, the District Court in Florida was fully informed of the scope and status of these related actions when it rendered its decision to appoint co-lead interim class counsel. This information came not only from Plaintiff Stiepleman, but also from counsel for the Oreck defendants, who opposed the Rule 23(g) motion. In fact, Judge Dimitrouleas deferred ruling until November 1, 2011, directing the parties in the interim to file supplemental papers

advising the Florida Court of any changes in circumstances. This not only provided Judge Dimitrouleas with all relevant information, it also gave other counsel the opportunity to file competing applications. As now revealed in the Motion, Competing Counsel made the tactical decision to await the decision of the MDL Panel rather than apply for appointment as interim counsel. Because Judge Dimitrouleas was fully informed of other pending and related actions when issuing the Order appointing Stiepleman's Counsel interim co-lead counsel (Interim Class Counsel Order Vozzolo Decl. Exh. 5), the *Stiepleman* Order remains in effect unless and until this Court has good cause to vacate it, which Competing Counsel has failed to provide.

### C. Coordination Or Consolidation Should Be Decided Before The Appointment Of Interim Counsel

Transfer by the MDL Panel did not result in consolidation of these actions. On the contrary, "the consolidation of pleadings for pretrial purposes is within the discretionary power of the district court, particularly in the context of complex pretrial proceedings pursuant to 28 U.S.C. § 1407(a)." *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976). Competing Counsel's mischaracterizing of the MDL Panel's transfer decision as signifying a rejection of a "two case theory," *see, e.g.*, Competing Counsel's Br. at 2:12-14, shows a misunderstanding of the purpose of Section 1407 transfer and the limited role of the MDL Panel.

The Panel's function under Section 1407 is to decide in the first instance whether to *transfer* actions for coordinated *or* consolidated pretrial proceedings. The decision, however, on "[w]hether and to what extent the pretrial proceedings in the transferred actions will be coordinated or consolidated is the function of the transferee judge." *In re South Cent. States Bakery Prods. Antitrust Litig.*, 433 F. Supp. 1127, 1130 (J.P.M.L. 1977).

At the earliest opportunity, this Court should consider whether consolidation of pretrial proceedings is feasible and likely to reduce conflicts and duplication of efforts.[3] *See* Fed.R.Civ.P. 42(a); MCL § 20.11.[4]

Competing Counsel ignore their burden and disregard the standards under Rule 42(a), which are distinct from the standards for centralization pursuant to 28 U.S.C. § 1407.[5] Thus, while determining that centralization pursuant to section 1407 was appropriate, the MDL Panel expressly ruled "the transferee judge may account, at her discretion, for differences among the actions through the use of appropriate pretrial devices. . ." MDL Transfer Order at 2.

---

[3] Likewise, these actions were not consolidated for class treatment by this Court's order on the first round of motions to dismiss in the *Chenier* action. The Court held "that ***at this stage of the proceedings***, plaintiffs have standing to represent purchasers of both the Halo and the ProShield." *Chenier v. Oreck Corp.*, CDCA Case No. 11-cv-5321, Tentative Civil Minutes, October 24, 2011, p.4, Competing Counsel's Br., Parekh Decl. Exh. A (emphasis added). It is well recognized that "the question of standing is totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23." *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973). Competing Counsel continue to argue that the Halo and the Air Purifiers were "often marketed together." Competing Counsel's Br. at 3:13. In fact, since the motion to dismiss, Competing Counsel added two additional air purifier models that were marketed for three years before Oreck ever acquired the Halo vacuum from its developer, and have only identified two advertisements run in 2009 alone which jointly marketed the Halo and the ProShield Plus – ***and not a single infomercial***. This illustrates why "standing to sue does not, of itself, support the right to bring a class action." *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 183 (E.D.N.Y. 2009)(quotation omitted).

[4] The party seeking consolidation bears the burden of establishing that judicial economy and convenience outweigh prejudice. *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1057 (S.D. Cal. 2007). Moreover, the Court "must examine 'special underlying facts' with 'close attention' before ordering a consolidation." *In Re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)).

[5] In fact, the threshold for Section 1407 centralization is not high and is informed by different goals. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011)

The claims in these cases are based on different class periods, are asserted against different defendants,[6] concern different products and technologies developed by different companies and seek different remedies. Vozzolo Decl. ¶¶4-8, 16-17, 36-38. These differences indicate that consolidation of these cases will lead to more confusion and delay than efficiency. But regardless whether this Court finds consolidation under Rule 42(a) appropriate, separate counsel for the two putative classes in the various complaints is essential for the fair and adequate prosecution of these claims.

### D. The Two Putative Classes Should Be Represented By Separate Counsel

#### 1. Competing Class Counsel Cannot Fairly And Adequately Represent the Interests Of Purchasers Of Air Purifiers And Vacuum Cleaners

When appointing class counsel Fed. R. of Civ. Pro. 23(g)(1)(B) provides that the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Courts generally look to the considerations set out in Rule 23(g)(1) and (2), which govern appointment of class counsel once a class is certified, to evaluate the designation of interim class counsel before certification. *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

Competing Counsel seek to simultaneously represent purchasers of the Halo vacuum cleaner and the Oreck Air Purifiers. Competing Counsel will be unable to vigorously pursue the interests of both the vacuum class and the air purifier class at the same time since, as described in more detail below, the interests of one class could have an adverse effect on the interests of the others. More so, when the two classes of purchasers, represented by the same counsel, compete for recovery from the same pool of limited assets. Class certification – and later, the binding effect of

[6] Only *Stiepleman* names founder and spokesman David Oreck as a defendant.

any class action judgment – depends on a finding that the named plaintiff and proposed class counsel fairly and adequately represent the interests of the class. *See Amchem Prods., Inc.v. Windsor*, 521 U.S. 591, 625-626 n.20 (1997). The "fairness and adequacy" requirement cannot be met if counsel is subject to divided loyalties. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). ("an attorney who represents another class against the same defendant may not serve as class counsel"). "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (quoting *Sullivan v. Chase Inv. Services Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978)).

There are key differences between the classes and the products on which their claims are based that give cause for concern. First, the Oreck Air Purifiers class and the damages claim for that class may be many times larger than the vacuum cleaner class. The Oreck Halo vacuum was only marketed and sold by Oreck for two years whereas the air purifier claims reach back through the entire applicable statute of limitations period. The air purifier class also includes three air purifier models, rather than one vacuum model. The disparate size of the classes raises a concern as to how zealously a firm will continue to represent both classes, particularly if one case appears to weaken as the litigation progresses. If counsel adjusts or compromises legal tactics to accommodate both classes, class counsel is not giving undivided loyalty to either class. The case theories, strength of the claims, likelihood and amount of recover, and desirability of settlement offers are all tied to the different product lines underlying the actions. Since the factual underpinnings and all but two of the misrepresentations differ and "lead to a substantial divergence in the evidence required to prove the claims," adequate representation requires different plaintiffs and counsel. *Wiener v. Dannon Co.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009).

Contrary to Competing Counsel's argument, separate counsel would not be necessary for each of the three models of air purifiers, since, unlike the Halo vacuum's UV-C technology, all of the air purifier misrepresentations related to the Truman Cell technology and its ability to kill germs and viruses that cause colds and flu. As a result, it is proper for the same counsel to represent purchasers of all three air purifiers, since the claims rest upon the "same facts and legal theory." *Chavez v. Blue Sky Natural Bev. Co*, 268 F.R.D. 365, 378 (N.D. Cal. 2010).

As importantly, the two classes of plaintiffs may be forced to compete for recovery from a limited pool of assets and so any firm that represents both classes simultaneously cannot maximize the benefit to one class without reducing the benefit to the other. *See Sullivan*, 79 F.R.D. at 258 ("The possibility that assets and insurance of the defendants who may have committed fraud against the plaintiffs will be insufficient to satisfy an alleged liability to the class of over $20 million is great enough to influence litigation strategy."). Evidence uncovered by Stiepleman's Counsel indicate that the pool of assets from which these two classes may seek relief is limited. Section 13(b) of the FTC Act (15 U.S.C. § 53(b)) authorizes the FTC to sue companies that make deceptive claims about their products, as with Oreck. The FTC suits sometimes result in redress payments for the benefit of consumers. Courts have found that proper redress for consumers under section 13(b) in cases against a company engaging in unfair or deceptive acts is the full amount lost by consumers. *See FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468 (11th Cir. 1996) (affirming an award of damages calculated by consumers' losses); *FTC v. U.S. Sales Corp.*, 785 F. Supp. 737, 753 (N.D. Ill. 1992) ("the proper amount of restitution has been held to be the purchase price of the relevant product . . . less any refunds or money earned"). The total recovery by the FTC, however, can be limited by the defendant's ability to pay. See http://www.ftc.gov/bcp/cases/redress.shtml#moneyBack (noting that the that the amount of recovery depends "on how much the defendants are able to pay, how much the court orders for refunds, and how many people bought the product.")

*FTC v. Bonnie & Co. Fashions, Inc.*, 90 Civ. 4454, 1992 U.S. Dist. LEXIS 18764, at *22 (D.N.J. Sept. 28, 1992) (stating "in determining the amount of the penalty, the court is directed to take into account … [defendant's] ability to pay, effect on ability to continue to do business, and such other matters as justice may require…").

During its enforcement action, the FTC recognized that Oreck's false advertising produced a "substantial amount of consumer injury." Nevertheless, after reviewing Oreck's "financial status," the FTC reduced the redress payment required under the consent decree to just $750,000, based upon Oreck's ability to pay, rather than the full amount originally requested. Vozzolo Decl. Exh. 24. This paltry redress payment, in light of the "substantial" injury to consumers and volume of sales is a striking illustration of Defendants' precarious financial condition. *Id.* By claiming a lack of evidence of insolvency[7], Competing Counsel "misunderstand[s] the law. The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict." *Kayes v. Pacific Lumber Co.*, 51 F.3d at 1465. In *Sullivan*, 79 F.R.D. at 258, the same counsel simultaneously sought to represent a class of purchasers of investment advisory services under the Investment Advisors Act and a class of purchasers of securities under the federal securities law against the same defendant. The Court recognized that a potential conflict arose, since the mere possibility that assets and insurance of the defendants "will be insufficient to satisfy an alleged liability to the class of over $20 million is great enough to influence litigation strategy." *Id.* Therefore, as a precondition for class certification, the Court required counsel to withdraw from such simultaneous representation, explaining that "[t] he responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Id.* Competing Counsel's Motion presents the exact same potential conflict that would impair counsel's ability to vigorously pursue the interests of both

[7] Competing Counsel's Br. at p.7.

the vacuum class and air purifier class who are competing for recoveries from the same limited pool of assets.

**2. Counsel In The Stiepleman Action Are Best Qualified To Represent The Air Purifier Class**

Even if this Court considers the appointment of interim lead counsel *de novo*, Stiepleman's Cousel have demonstrated that they are best able to effectively represent a proposed nationwide class of purchasers of Oreck air purifiers.

Pursuant to Fed. R. Civ. P. 23(g)(3), a Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In doing so, the factors to be considered focus on: (1) the work counsel has done in investigating and identifying the claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted, (iii) counsel's knowledge of the applicable law, (iv) the resources counsel will commit to representing the class, and (v) counsel's ability to fairly and adequately represent the class. Fed. R. Civ. P. 23(g)(1)(A), (B). If more than one applicant seeks appointment, the Court "must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

*a. Stiepleman's Counsel's Investigation And Complaint Are Unrivaled*

Counsel's diligent and thorough pre-suit investigation is an important point of consideration for this Court. *See, e.g., Miller v. Beazer Homes USA, Inc.*, Case No. 07-cv-00952-RWS, 2007 WL 3005332 at *1-2 (N.D. Ga. October 11, 2007) (appointing co-lead interim class counsel, in part, because of the extensive pre-suit investigation counsel performed). Judge Dimitrouleas appointed Stiepleman's Counsel as interim class counsel citing their "substantial work identifying or investigating potential claims." *Stiepleman* Order at 4. As detailed above, Stiepleman's Counsel conducted an extensive four-month investigation as to potential claims arising from Oreck's false and deceptive advertising campaign that included communications with over 50 Oreck customers, communications with

authorized Oreck dealers, inspections of Oreck store locations, review of hundreds of websites and media to collect the false advertisements, receipt of 2,279 pages of documents from the FTC in response to a FOIA request, consultation with experts, and other research detailed in the attached declaration of Antonio Vozzolo. Vozzolo Decl. ¶¶ 4-8, 16-17. These efforts culminated in the filing of the *Stiepleman* action, the first case to allege claims based on the marketing of Oreck Air Purifiers. Plaintiff's comprehensive 97-page Complaint explains in detail that the elaborate false and deceptive advertising campaign of Oreck's air purifiers rested on a bogus technology, which Oreck termed the "Truman Cell." *See* Complaint at ¶¶ 1, 18 (Docket No. 1). Stiepleman's Counsel did not limit themselves to the facts outlined by the FTC, but instead drew upon their unique knowledge of air purifiers. *Id.* at ¶¶ 22, 24. Stiepleman's Counsel uncovered that Oreck's advertising campaign regarding its air purifiers: (1) predated the conduct in the FTC action by approximately six years; and (2) included two predecessor models to the ProShield Plus at issue in the FTC action, the XL Professional and the ProShield models. *Id.* at ¶17. Additionally, the investigation uncovered numerous misrepresentations by David Oreck, Oreck's founder and spokesman, whose comments appear in numerous advertisements. *Id.* The *Stiepleman* complaint demonstrates a thorough understanding of the applicable law and remedies that are available to the class.

(i) Competing Counsel's Duplicative Efforts

Despite publicized reports of the FTC action and purported months of factual investigation, Competing Counsel failed to file claims on behalf of air purifier purchasers until after the filing of the *Stiepleman* Complaint. Even then, it took Competing Counsel three tries, and the cumulative effort of at least nine firms, to prepare a complaint of the breadth of the *Stiepleman* action. Additionally, Competing Counsel failed to name David Oreck, an important potential source of recovery for class members. Moreover, when the *Chenier* and *Paragin* actions were

amended to include only the Oreck ProShield Plus air purifier, their allegations merely mimicked the FTC investigation. Consequently, Competing Counsel cannot claim credit for the investigation that went into the filing of these actions. *See, e.g., In re Packaged Ice Litig.*, 08-MD-01952, 2009 U.S. Dist. LEXIS 45492 at *28 (E.D. Mich. June 1, 2009) ("much of the work of identifying and investigating the potential claims has largely been performed by the Department of Justice. No applicant can, therefore, claim an advantage in performing the major leg-work on these claims."). In short, the Competing Counsel have made no noteworthy contribution to the claims regarding Oreck air purifiers.

(ii) Competing Counsel Fail to Grasp The Importance of Technological Differences Between Air Purifiers And Vacuum Cleaners

Competing Counsel continually demonstrate a basic misunderstanding of their own claims. For example, Competing Counsel have repeatedly, and recently, stated that both the Oreck Halo vacuum and the Oreck ProShield Plus air purifier contain a germicidal UV-C light, when only the Halo vacuum employs a UV-C light. In contrast, the alleged germ-killing ability of Oreck's air purifiers is attributed solely to Oreck's electrostatic precipitator referred to as "Truman Cell" technology, developed, tested and patented by Oreck. Despite having filed claims based directly on the Oreck Halo vacuum, counsel remain unable to distinguish the technology. Competing Counsel propose that "this is one case about marketing used to fool customers, not two cases about the underlying technology used in the products." Competing Counsel's Br. at 3-4. But Competing Counsel's own case theories highlight the importance of understanding the underlying technology and their failure in that regard. Vozzolo Decl. ¶¶ 27-40.

### b. *Stiepleman's Counsel Have The Requisite Experience, Knowledge, And Resources To Manage And Prosecute This Action*

Stiepleman's Counsel possess the experience, knowledge and resources to effectively handle this litigation on behalf of the proposed air purifier class. A summary of counsel's qualifications is below and further detail is provided in the attached Declarations of Antonio Vozzolo and Scott Bursor.

#### (i) Faruqi & Faruqi

Faruqi & Faruqi is a national class action law firm with offices in Los Angeles, California as well as New York, Pennsylvania, and Florida. The firm's attorneys have served as lead or co-lead counsel in numerous high-profile cases which ultimately provided significant recoveries to investors, consumers, and employees. The firm's attorneys have represented consumers in a variety of state and federal complex class action cases. The Faruqi firm also has substantial experience handling litigation in California.[8] *See* Vozzolo Decl. Exh. 17.

#### (ii) Faruqi & Faruqi Has Unique Experience as Lead Counsel in a Similar Air Purifier Action And Spokesman Liability

Faruqi & Faruqi has unique experience from litigating another air purifier class action. *See* Vozzolo Decl. ¶ 8-13, Exh. 2. Mr. Vozzolo's firm was co-lead class counsel in *Sharper Image*, brought on behalf of all purchasers of Sharper Image Corporation's ("Sharper Image") Ionic Breeze air purifiers. *Id.* at ¶ 9. Purchasers of the air purifiers alleged that the technology -- similar to that used in the Oreck Air Purifiers -- implemented in Sharper Image's air purifiers was ineffective in killing germs despite a massive marketing program to the contrary. *Id.* at ¶ 10-13. Mr. Vozzolo's and his firm's experience in *Sharper Image* will greatly benefit Plaintiff and the putative class here.

---

[8] In fact, Behram V. Parekh's former law partner, Vahn Alexander, is now a partner in Faruqi & Faruqi's Los Angeles offices.

Mr. Vozzolo and Mr. Bursor are similarly experienced with spokesman liability. The Faruqi and Bursor firms were co-lead counsel in *Global Vision*, which featured two spokesmen for the company who were named as defendants: Dr. David L. Gordon and prominent racecar driver Derrike Cope. Bursor Decl. ¶ 4. Besides obtaining two separate jury verdicts, one $50 million verdict and another $37 million verdict for plaintiff and a class of consumers who purchased the Avacor hair regrowth product, Dr. Gordon was found jointly and severally liable and the Faruqi and Bursor firms successfully negotiated a settlement with Mr. Cope for the full amount of his contract to promote the product at issue. *Id.* at ¶ 4 and Exh. N.

(iii) Thornton, Davis & Fein

Thornton, Davis & Fein focuses on complex commercial, construction, product liability and class actions. Mr. Davis is an AV rated board certified civil trial lawyer who has been practicing for more than thirty years. He has acted as lead counsel in more than 50 trials of complex civil litigation matters including mass disaster litigation, construction litigation, multidistrict product liability cases involving drugs and medical devices, quadriplegia and brain damage cases, intellectual property, and insurance bad faith and fraud. He is repeatedly voted as a "super lawyer" by his colleagues and has lectured and taught extensively on trial practice, both as an adjunct professor and as a trial academy faculty member.

Mr. Davis has been counsel in numerous class actions in connection with claims alleging false advertising and unfair trade practices. In addition, Mr. Davis defended Andrx in a class action alleging price fixing and anti-trust violations. He has also been lead counsel in multidistrict mass disaster litigation, including aviation mass disaster cases involving Arrow Air and American Airlines. *See* Thornton, Davis & Fein firm resume, Vozzolo Decl. Exh. 18.

(iv) Bursor & Fisher

The Bursor firm focuses on complex commercial litigation and class actions. The firm's attorneys have represented both plaintiffs and defendants in more than 70

class action lawsuits in state and federal courts throughout the country in a variety of fields. The attorneys of Bursor firm have been appointed lead or co-lead class counsel to the largest, 2nd largest and 3rd largest classes ever certified. In addition, their attorneys have negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).

The lawyers of Bursor & Fisher also have an active civil trial practice, having won multi-million dollar verdicts or recoveries in four of four civil jury trials since 2008. In addition to the *Global Vision* $50 million jury verdict described above, in *Ayyad v. Sprint Spectrum, L.P.*, the Bursor firm obtained a $299 million trial verdict for a class of Sprint customers on, *inter alia*, unjust enrichment and violations of state fraud acts very similar to those asserted in this case. *See* Bursor & Fisher firm resume, Bursor Decl. Exh. A.

c. *The Resources Counsel Will Commit to Representing the Class*

Stiepelman's Counsel have devoted substantial hours of attorney time and out-of-pocket expenses to this litigation. Stiepleman's Counsel have regularly worked together in litigating actions all over the country and will continue to work together cooperatively, efficiently and effectively on behalf of the putative class. To that end, counsel will continue to conduct weekly conference calls to ensure that all counsel are fully apprised of each other's activities and progress, and to coordinate efforts to avoid duplication. Stiepleman's Counsel will also jointly contribute to a litigation fund, which will facilitate the sharing of expenses and pay for the costs and expenses that will be incurred during this litigation. *See Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) 11/14/11 Order Appointing Interim Class Counsel at 3 (describing Bursor & Fisher as a "well-established" law firm with "the resources and personnel necessary to carry out large-scale class action litigation"), Bursor Decl. Exh. H. As set forth above, the Faruqi, Thornton, and Bursor firms, and have

extensive experience in litigating multi-state consumer class actions, and are familiar with this Court's rules and procedures.

**III. CONCLUSION**

For the foregoing reasons, Stiepleman's Counsel request that the Court deny Competing Counsel's motion for appointment as interim class counsel.

Dated: March 5, 2012

Respectfully submitted,

**FARUQI & FARUQI LLP**

/s/ David E. Bower
David E. Bower

David E. Bower (Bar No. 119546)
Email: dbower@faruqilaw.com
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**FARUQI & FARUQI, LLP**
Antonio Vozzolo
Email: avozzolo @faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 989-9331

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

**THORNTON DAVIS & FEIN, P.A.**
Barry L. Davis
Daniel R. Lever
80 SW Eighth Street, 29th Floor
Miami, Florida 33130
Telephone: (305) 446-2646
Facsimile: (305) 441-2374
Email: davis@tdflaw.com
lever@tdflaw.com

*Attorneys for Plaintiff Scott Stiepleman and Interim Class Counsel for the Air Purifier Class*