Michael Louis Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
Behram V. Parekh - State Bar No. 180361
bvp@kirtlandpackard.com
Heather M. Peterson - State Bar No. 261303
hmp@kirtlandpackard.com
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Telephone 310.536.1000
Facsimile 310.536.1001

*Counsel for Plaintiffs Latta, Edge, Gonzalez, and Proposed Interim Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION**

This Document Relates To:
All Actions

Master File No. 2:12-ml-2317 CAS (JEM)

[MDL No. 2317]

**REPLY TO DEFENDANT ORECK'S AND PLAINTIFF STIEPLEMAN'S OPPOSITIONS TO MOTION FOR APPOINTMENT OF KIRTLAND & PACKARD LLP AS INTERIM CLASS COUNSEL AND APPROVAL OF PROPOSED LEADERSHIP STRUCTURE**

Hearing:

Date: March 26, 2012
Time: 10:00 a.m.
Place: Courtroom 5

Trial Date: None Set

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. There Is No Evidence of An Actual Conflict of Interest .......... 1

1. There Is No Evidence of a Limited Pool of Resources Resulting in an Actual Conflict .......... 2

2. There Is No Other Evidence of an Actual Conflict .......... 4

B. The Interests of the Vacuum Cleaner and Air Purifier Purchasers Are Aligned .......... 6

C. Cooperating Counsel Have Satisfied Local Rule 7-3 .......... 10

D. The Florida Court's Order Appointing Interim Class Counsel Should be Considered Non-Binding or Vacated By This Court .......... 11

E. Oreck's Arguments Regarding the Unsuitability of Cooperating Counsel are Specious and Have Already Been Rejected .......... 12

F. Kirtland & Packard LLP and the Members of the Plaintiffs' Executive Committee Are Best Qualified To Represent the Entire Class .......... 12

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Federal Cases


*Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203 (E.D. Pa. 2010) ........ 2

*Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355 (N.D. Cal. 2011) ........ 2

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ........ 9

*Cummings v. Connell*, 316 F.3d 886 (9th Cir. 2003) ........ 2, 4

*Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233 (D.N.J. 2008) ........ 10

*Graveley v. City of Philadelphia* CIV.A. 90-3620, 1997 WL 698171, *6 (E.D. Pa. Nov. 7, 1997) *aff'd*, 172 F.3d 40 (3d Cir. 1998) ........ 2

*In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996) ........ 9

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ........ 4

*Marcus v. BMW of N. Am., LLC*, CIV.A. 08-5859 KSH, 2010 WL 4853308 (D.N.J. Nov. 19, 2010) ........ 10

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........ 1

*Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978) ........ 2

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, SACV07-1306JVS(RNBX), 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ........ 9

*Soc. Services Union, Local 535, Serv. Employees Int'l Union, AFL-CIO v. Santa Clara County*, 609 F.2d 944 (9th Cir. 1979) ........ 2

*Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978) ........ 4


State Cases


*Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89 (Cal. Ct. App. 2008) ........ 9

## I. INTRODUCTION

All Plaintiffs and their counsel in this multidistrict proceeding, *except* for counsel representing a single plaintiff, Scott Stiepleman, ("*Stiepleman*"), have agreed to work cooperatively together to prosecute this litigation for the benefit of the putative class ("Cooperating Counsel"). In response to Cooperating Counsel's Motion for Appointment of Interim Class Counsel, counsel in *Stiepleman* raise various arguments as to why the motion should be denied, all of which can essentially be summarized under two general arguments: 1) there is a potential conflict which requires the vacuum cleaner and air purifier purchasers to be represented by separate counsel; and 2) *Stiepleman* counsel are best qualified to represent the air purifier purchasers. Unusually, Defendant Oreck has also filed an opposition to the Motion. Defendant Oreck's opposition, however, is essentially devoid of fact based arguments; instead, it consists of almost entirely of *ad hominem* attacks on Cooperating Counsel.[1]

Cooperating Counsel respectfully submit that the arguments raised by *Stiepleman* and Defendant Oreck are without merit, and Cooperating Counsel's Motion for Appointment of Interim Class Counsel should be granted.

## II. ARGUMENT

### A. There Is No Evidence of An Actual Conflict of Interest

It is only necessary to appoint separate counsel for class members where an *actual* conflict of interest exists between members of the putative class. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999)(holders of present and future

---

[1] For example, Oreck states that Cooperating Counsel's Motion "raises the ugly question" of whether the driving force behind Cooperating Counsel's Motion is to cut *Stiepleman* counsel out of the case and take over the purportedly larger air purifier purchaser case. (Oreck Opp. at 12). This is simply not true. As noted in the Declaration of Benjamin R. Bingham filed herewith, Cooperating Counsel have made numerous efforts to convince *Stiepleman* counsel join Cooperating Counsel in presenting a unified front against Defendant. *Stiepleman* counsel have rebuffed all such efforts.

claims have an actual, immediate, conflict of interest: "for the currently injured, the critical goal is generous immediate payments, but that goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future"); *Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 359 (N.D. Cal. 2011)("the mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical"); *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003)("this circuit does not favor denial of class certification on the basis of speculative conflicts"); *Soc. Services Union, Local 535, Serv. Employees Int'l Union, AFL-CIO v. Santa Clara County*, 609 F.2d 944, 948 (9th Cir. 1979)("mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification"); *Reynolds v. Nat'l Football League*, 584 F.2d 280, 286 (8th Cir. 1978)(theoretical conflicts of interest do not require disqualification of counsel); *Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203, 208 (E.D. Pa. 2010)("it is only necessary to appoint separate subclass counsel if the Court determines that an actual conflict exists between the subclasses as to the evidence to be produced at trial"); *Graveley v. City of Philadelphia*, CIV.A. 90-3620, 1997 WL 698171, *6 (E.D. Pa. Nov. 7, 1997) *aff'd*, 172 F.3d 40 (3d Cir. 1998)("while plaintiffs' counsel seeks to represent three subclasses, there appears to be no conflict of interest among the classes that would disqualify the same counsel from representing all three").

**1. There Is No Evidence of a Limited Pool of Resources Resulting in an Actual Conflict**

*Stiepleman* counsel make the argument that there is a limited pool of resources from which any recovery may be obtained, and, therefore, separate counsel is necessary to represent vacuum purchasers and air purifier purchasers. *Stiepleman* counsel, however, provide *no real evidence* to support their claim. Their entire argument is based upon their stretched interpretation of a single redacted letter, dated January 5, 2011, sent from the Federal Trade Commission ("FTC") to

Oreck during negotiation of a consent agreement between the FTC and Oreck. *Stiepleman* counsel argues that because the FTC, as part of those negotiations, offered to reduce the redress payment required from Oreck as part of the consent agreement, and that because one of the items reviewed by the FTC in making its revised offer was "Oreck's financial status," that this is sufficient evidence to allow the Court to conclude that Oreck has a limited pool of resources from which to pay any recovery in this action.[2] (*See*, Vozzolo Decl. Ex. 6, D.E.# 11-6 at p. 9-10). This argument fails for three reasons.

First, the FTC letter never mentions the amount of original offer, redacts the revised offer, and states that Oreck's (redacted) counter-offer to the FTC's original offer is "insufficient given the significant amount of consumer injury at issue." *Id*. Thus, it is clear that this letter is simply part of an ongoing negotiation, and like every negotiation, some compromise is being offered by both sides to the negotiation from their starting positions. Second, the letter cites to numerous items the FTC considered as part of making revised offer, including a November 23, 2010 meeting, Oreck's letter of December 9, 2010, and subsequent discussions. *Id*. Thus, it is clear that Oreck's financial status is not the only item upon which the FTC based its decision to revise down the redress offer. Third and finally, the letter also shows that the FTC revised significant other, non-monetary, aspects of the offer. Thus, *Stiepleman* counsel's stretched reading of this letter as constituting evidence that Oreck has a limited pool of resources from which to satisfy any settlement or judgment in this action must be disregarded.

*Stiepleman* counsel cites to no other evidence that Oreck's resources are so limited that an actual conflict exists between vacuum and air purifier purchasers. Notably, Defendant Oreck, which also asserts that a purported conflict exists between vacuum and air purifier purchasers, and which would be in the best position

---

[2] *Stiepleman* Opposition at p. 13 references Vozzolo Decl. Exh. 24, which does not exist, but which appears to be a reference to Vozzolo Decl. Exh. 6.

to make an informed argument, *does not* make such an argument, and submits *no evidence* that a limited pool of resources exists.

*Stiepleman's* citation to *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) is unavailing. *Stiepleman* misinterprets *Kayes*. In *Kayes*, which relied on the reasoning in *Sullivan v. Chase Inv. Services of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978), the Court found that an actual conflict existed between the representation of the class by counsel who was also simultaneously representing individuals with differing claims. *Kayes*, 51 F.3d at 1465. The Court went on to hold that even though there had been no manifestation of such conflict, that is "there had as yet been no reason to believe improper influence had resulted from the representation of two parties with conflicting interests," the potential that such improper influence would result was sufficient to require class counsel to withdraw from the individual representation. *Id.* Thus, the reasoning in *Kayes* was that the Court found that a conflict of interest actually existed between the two representations, but that such conflict had not yet manifested in the form of actual improper influence. *Id*.

That is simply not the case here. Here, there is no evidence that an actual conflict of interest exists, just that there is the theoretical possibility of one. Ninth Circuit law is clear that a mere theoretical possibility of conflict is insufficient to render class representatives or their counsel inadequate. *Cummings*, 316 F.3d at 896. Given that no reliable and credible evidence exists to show that Oreck's resources are so limited that an actual conflict exists between vacuum and air purifier purchasers, this argument must fail.

### 2. There Is No Other Evidence of an Actual Conflict

The remainder of Oreck's and *Stiepleman's* arguments regarding conflict is even more speculative than the argument that a conflict exists because Oreck allegedly has a limited pool of resources. Both Oreck and *Stiepleman* speculate (without a shred of supporting evidence and in remarkably similar language) that the

number of vacuum purchasers is significantly smaller than the number of air purifier purchasers because vacuum purchasers are "necessarily" limited to the two years since Oreck purchased the rights to the Halo vacuum[3] and a single product, whereas the air purifier purchasers can "reach back for the entirety of the applicable statute of limitations" and allege claims for three products.[4] This resort to pure speculation is even more egregious on the part of Oreck than *Stiepleman*, because, presumably, Oreck actually has records of the number of vacuum cleaners and air purifiers sold during the claimed relevant time periods and the amount of revenue earned by Oreck through the sale of those products, yet Oreck provides not a single shred of evidence for its assertions. Thus, this rampant speculation by Oreck and *Stiepleman* must be disregarded.

Even if *Stiepleman's* and Oreck's assertions were supported by evidence, however, neither *Stiepleman* nor Oreck explain how a difference in the number of purchasers of each product or their respective damages calculation creates a *conflict of interest* between those purchasers or their counsel. As was noted in the Motion, the three models of air purifiers at issue were sold at different price points, during different time periods, and, potentially, could result in differing damages amounts attributable to their purchasers. If *Stiepleman's* argument were accepted at face value, each model of air purifier would require separate representation by separate plaintiffs and counsel, yet *Stiepleman* counsel argue that such separate representation is unnecessary when applied to them. (*Stiepleman* Opp. at 12). Cooperating counsel submit that separate representation is unnecessary when applied to *any* of the products.

---

[3] Vacuum cleaner purchaser plaintiffs do not concede that their claims are limited only to the time period after Oreck acquired the rights to the Halo vacuum.

[4] *See Oreck* Opposition at 11 (D.E.#10) and *Stiepleman* Opposition at 11 (D.E.#11).

### B. The Interests of the Vacuum Cleaner and Air Purifier Purchasers Are Aligned

The products at issue in this case, the Oreck Halo vacuum and the Oreck XL, ProShield and ProShield Plus air purifiers, as even Oreck admits, were marketed together by Oreck in a joint advertising campaign that lasted for over six months. (Oreck Opp. at 5; Jenkins Decl. ¶7). As Cooperating Counsel have pointed out in the *Ruscitti*, *Paragin*, and *Edge* complaints, the claims made regarding these products were virtually identical, not just during the joint advertising campaign, but even when they were advertised separately.

Further, even a cursory comparison of the claims raised as being false and misleading in the *Stiepleman* complaint, which only alleges claims regarding air purifiers, and the *Latta* and *Ruscitti* complaints, which only allege claims regarding vacuum cleaners, demonstrates the clear overlap in the underlying factual allegations and legal theories:

| *Stiepleman Complaint* | *Latta & Ruscitti Complaints* |
|---|---|
| "Every time you close your front door, you're sealing yourself in with airborne bacteria, dust, germs, and allergens. Some you can smell. Most you can't." (¶41) | "Chances are allergens and illness triggers are in your home...living right under your feet. Dirt and debris you can see and germs, bacteria and dust mites that you can't see. " (Ruscitti ¶16) |
| "Virus, fungus, bacteria and hundreds of other germs are carried in the air at all times. If inhaled into the lungs, germs can cause cold, flu, pneumonia and other respiratory infections." (¶24) | "There is a lot more that could be living in your home than just your family and pets. Dust-mites, fleas and their eggs, mold, bacteria, germs, and microorganisms that cause flu, diarrhea and upset stomachs could be living there, too." (Ruscitti ¶18) |

| | |
|---|---|
| "eliminated 99% of the allergens, viruses, bacteria, mold, and germs" (¶21) | "reduce up to 99.9 % of germs and bacteria" (Latta ¶12) "kills up to 99.9% of germs and bacteria" (Ruscitti ¶12) |
| "destroy bacteria, mold, viruses, and fungi, as well as remove pet hair, pet dander, dust mites" (¶25) | "kill many germs, viruses, bacteria and dust mite eggs" (Latta ¶14) "kill many bacteria, viruses, dust mite eggs, and even mold" (Ruscitti ¶14) |
| "substantially reduce the risk of or prevent the flu" (¶1) | "substantially reduces the risk or directly prevents the flu" (Latta ¶17) "substantially reduces the risk of or prevents the flu" (Ruscitti ¶24) |
| "Each of these representations was false and misleading. In fact, scientific tests do not prove that Oreck Air Purifiers will eliminate or virtually eliminate many common viruses, germs and allergens from a typical household room under normal living conditions" (¶51) | "In reality, there are no significant or reliable scientific tests which prove that the Oreck Halo, through normal use, will eliminate or kill all or virtually all germs, bacteria, allergens, or viruses found on carpets or floors. The representations made are thus false, misleading and deceptive." (Latta¶18) "In truth and in fact, scientific tests do not prove that users of the Oreck Halo will eliminate or virtually eliminate many common germs and allergens found on the floors in their homes. Therefore, the representations set forth above were, and are, false or |

| | |
|---|---|
| | misleading" (Ruscitti ¶26) |
| Advertised through Print, Website, 60 second Ads, 30 minute Infomercials | Advertised through Print, Website, 60 Second Ads, 30 minute Infomericals |
| Nationwide Class | Nationwide Class |
| Magnusson-Moss Warranty Act | Magnusson-Moss Warranty Act |
| Express Warranty | Express Warranty |
| Unjust Enrichment | Unjust Enrichment |
| Florida Statutory Consumer Protection Laws | California and Illinois Statutory Consumer Protection Laws |

Finally, even the *Stiepleman* Complaint references the very same combined marketing material, which advertised the vacuum and air purifiers together as "flu fighters" (*Stiepleman* Complaint ¶36) as contained in the remaining complaints.

Given the above, it is clear that the interests of *all* plaintiffs and class members, regardless of whether they purchased a Halo vacuum, Oreck XL air purifier, ProShield air purifier, or ProShield Plus air purifier, are aligned. *All* plaintiffs and class members were deceived by virtually identical marketing claims made by Oreck. First, Oreck's scare tactics to make consumers believe their house was full of germs, and then second, the sell, Oreck's products' ability to kill germs and fight flu. *All* plaintiffs and class members seek recompense from Oreck for this deception.

Although both Oreck and *Stiepleman* raise this issue in the guise of a conflict of interest, what they are really arguing is that the vacuum and air purifier purchasers do not have standing to represent each other because their claims are not typical of each other. Oreck already raised this exact argument in the context of its Motion to Strike filed in the *Chenier* action. This Court thoroughly reviewed such argument, and rejected it. Tentative Civil Minutes, October 24, 2011, p.4 ("the Court finds that at this stage of the proceedings, plaintiffs have standing to represent

purchasers of both the Halo and the ProShield"). While it is true that the underlying technology in the vacuum and air purifiers is different, the marketing message was the same, as was the fact that Oreck did not have scientific substantiation to support its claims as to *any* of these products. The claims of the vacuum and air purifier purchasers are typical of each other.

Various courts that have looked at this issue have come to the same conclusion in numerous cases. For instance, in a case last year in the Northern District of California, the court certified a class over the defendants' objections that the named plaintiffs did not buy all of the products upon which they based their claims. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010). The Court noted that "[u]nder Rule 23(a)(3)'s permissive standards, 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *See Id.* ("Although plaintiff did not purchase each type of beverage carrying the misleading label, his claims are 'reasonably coextensive with those of absent members.'").

Cases in the Central District and in California state courts have reached similar conclusions in similar contexts. *See Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, SACV07-1306JVS(RNBX), 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008)(certifyingclass over defendants' objection that the named plaintiffs had not purchased one of the products in question, noting that "[t]ypicality requires the named Plaintiffs to demonstrate that their claims 'arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'") (citing *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996)("a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences" between their respective claims.")); *Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89, 98 (2008)(certifying class by Honda purchaser to represent interests of Suzuki and Yamaha purchasers).

Similarly, in a recent case in the District of New Jersey, a court certified a class action over similar objections raised by the defendants that the named plaintiffs could not represent the claims of persons who purchased products that the named plaintiffs had not purchased. *See Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 244 (D.N.J. 2008). The court held that "the fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality." *See Id.* ("a finding of typicality necessitates simply that there is "a strong similarity of legal theories, or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant.") Yet another district court from New Jersey certified a class under similar circumstances, noting that "[c]ourts in this district have held that a plaintiff can establish typicality even where class members have bought products that differ from products the plaintiff bought." *See Marcus v. BMW of N. Am., LLC*, CIV.A. 08-5859 KSH, 2010 WL 4853308 (D.N.J. Nov. 19, 2010)("even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories.")

Given the above, it is clear that the interest of vacuum and air purifier purchasers are sufficiently aligned and typical of each other that appointment of separate counsel is simply not necessary to protect the interests of vacuum and air purifier purchasers. In actual fact, appointment of separate counsel could considerably hurt the ability of *all* purchasers to obtain an optimal result by allowing defendant to pursue a divide and conquer strategy.

**C. Cooperating Counsel Have Satisfied Local Rule 7-3**

*Stiepleman* counsel misleadingly argue that Cooperating Counsel failed to abide by Local Rule 7-3. This is completely false. As made clear in the Declaration of Benjamin R. Bingham filed herewith, Mr. Bingham first spoke to Mr. Bursor about Cooperating Counsel's intent to file the instant motion on February 17, 2012.

(Bingham Decl. ¶2). Mr. Bursor, in his Declaration, misleadingly omits this February 17, 2012, conversation, which initiated the Local Rule 7-3 meet and confer process and during which conversation all aspects of the Motion were discussed. Mr. Bursor, instead, focuses solely on a subsequent conversation on February 24, 2012. Local Rule 7-3 does not provide, however, that counsel have to meet and confer endlessly until all parties agree that they are at an impasse and then wait ten days to file a Motion. Local Rule 7-3 simply provides that the parties should have an opportunity to adequately meet and confer to see if the necessity for the Motion could be avoided. As is clear from the oppositions submitted by Oreck and *Stiepleman*, there was no possibility, based upon the positions of the parties, that the Motion could have been avoided at the time it was made.

### D. The Florida Court's Order Appointing Interim Class Counsel Should Be Considered Non-Binding or Vacated By This Court

As fully explained in the Motion, the procedural inconsistencies surrounding the issuance of the Florida District Court's Order appointing interim class counsel for air purifier purchasers and its necessarily limited scope requires that such Order be considered non-binding by this Court or reconsidered by the Court and vacated. As noted in the Motion, no notice of any of the proceedings in the Florida District Court were provided by anyone to Cooperating Counsel. Further, as noted in the Motion, even if notice of the September 30, 2011 Order had been provided to Cooperating Counsel, they still would have had no idea that 1) the Florida Court expected to entertain competing motions to be appointed interim class counsel because the September 30, 2011 Order provided for no such procedure; 2) that the Florida Court intended to appoint interim class counsel on November 2, 2011, without the necessity for *Stiepleman* counsel to re-file their motion and contrary to the express terms of the September 30, 2011 Order; 3) that the Florida Court would choose to do so despite the pendency of MDL petitions; and 4) that no notice of this Court's October 24, 2011 proceedings would be provided to the Florida Court.

Further at most, the Florida Court's Order appointed The *Stiepleman* counsel as interim counsel *in that action*. The Florida Court did not have the authority to appoint the *Stiepleman* counsel as interim class counsel for purposes of the MDL proceeding, as the MDL proceeding was not even formed. Now that the *Stiepleman* case has been coordinated and transferred, that order should be of no effect.

**E. Oreck's Arguments Regarding the Unsuitability of Cooperating Counsel are Specious and Have Already Been Rejected**

Oreck once again rehashes the same arguments it made to the MDL panel regarding "forum shopping" and how Cooperating Counsel should not be "rewarded" for the "forum shopping." The MDL panel completely ignored such arguments, not even addressing them in its order assigning the MDL to this Court, and Cooperating Counsel respectfully request that this Court do the same.

Despite Oreck's rhetoric to the contrary, no "forum shopping" occurred. Cooperating Counsel, in the interests of efficiency, sought leave of this Court to voluntarily transfer or dismiss and re-file actions that were pending outside this District, believing this Court was the most appropriate venue for this litigation. Upon this Court's guidance that it would prefer for the MDL panel to make such a decision, Cooperating Counsel filed a counter-petition to Oreck's MDL petition. While Oreck's petition sought two separate MDLs, one located in Illinois and one located in Florida, Cooperating Counsel argued for a single MDL proceeding before this Court. The MDL panel agreed with Cooperating Counsel's position and transferred all actions to this Court. Oreck's allegations of impropriety on the part of Cooperating Counsel are specious.

**F. Kirtland & Packard LLP and the Members of the Plaintiffs' Executive Committee Are Best Qualified To Represent the Entire Class**

Oreck argues that appointing of interim class counsel solely for Halo purchasers is unnecessary. This argument is irrelevant, as the Motion does not seek

appointment of interim class counsel solely for Halo purchasers, but for *all* purchasers. *Stiepleman* counsel argues that they are best suited to represent air purifier purchasers. Again, this argument is irrelevant, as they do not argue they are best suited to represent *all* purchasers. Further, even as to purchasers of air purifiers, *Stiepleman* counsel are no more qualified than Proposed Interim Class Counsel.

As noted in the Motion, Proposed Interim Class Counsel, along with members of the proposed PEC, originally identified and investigated the practices that give rise to this litigation. Proposed Interim Class Counsel and proposed members of the PEC were responsible for the first three filed cases related to the matters in this litigation, are the only counsel who represent both vacuum cleaner and air purifier clients, are the only counsel who have already briefed, argued, and received tentative rulings on the claims alleged in their complaints, including claims relating to air purifiers, and are the  counsel who were successful in convincing the MDL panel to transfer these actions as a single MDL to this Court.

Further, although *Stiepleman* counsel claim to have conducted an "extensive four-month investigation" into this litigation prior to filing their complaint, it is unclear as to what benefit, if any, that investigation has provided, nor is it clear that *Stiepleman* counsel actually conducted any substantial investigation different from that conducted by Proposed Interim Class Counsel and members of the PEC.

As noted in the Motion, Cooperating Counsel members conducted extensive investigation prior to the filing of their complaints, including reviewing the filings and documents in the related action brought by the FTC (which included receiving and reviewing documents produced by the FTC in response to a Freedom of Information Act request), conducting an independent investigation of the underlying claims, and consulting with experts with relation to both the technical and damages aspects of the litigation. Further, as noted in their Motion, Cooperating Counsel

have been in contact with approximately 125 putative class members[5] and have already obtained some fact discovery in their underlying litigations. Thus, the only additional investigation that *Stiepleman* counsel point to that they did is that they communicated with authorized Oreck dealers and went on inspections of Oreck store locations, information which was not necessary to file a sufficient complaint and which can just as easily be obtained during discovery.

As a result of the investigation by Cooperating Counsel, the claims made in the *Chenier* matter have already been subject to a motion to dismiss and motion to strike by Defendant, and this Court has already tentatively sustained the vast majority of the *Chenier* Complaint. Thus, even if one accepts at face value that *Stiepleman* counsel conducted some additional investigation prior to the filing of their complaint, there does not appear to have been any benefit to the putative class by such investigation.

As for the remainder of *Stiepleman* counsel's arguments, Cooperating Counsel do not argue that *Stiepleman* counsel are unqualified to be class counsel in the abstract. However, given the "go it alone" stance they have taken in this litigation, their insistence on playing along with Defendant's divide-and-conquer strategy, their inability to represent the entire class given the position they have taken on conflicts of interest, and the lack of support for their appointment from *any* other plaintiff in the litigation, Cooperating Counsel respectfully submit that *Stiepleman* counsel are not an appropriate choice for interim class counsel in this litigation. Rather, Kirtland & Packard LLP, with its primary office located in this District, its long experience in class action and complex litigation, and with the full

---

[5] Over ten percent of those consumers who contacted Cooperating Counsel had purchased both the vacuum cleaner and air purifier products, however, there is no way to determine if that percentage is representative of the overall class of purchasers absent discovery from Oreck.

support of all plaintiffs other than *Stiepleman*, is best qualified to be appointed interim class counsel.

## III. CONCLUSION

For the reasons stated above, Plaintiffs in the *Ruscitti*, *Chenier*, *Latta*, *Paragin*, and *Edge* cases and Cooperating Counsel respectfully request that the Court appoint Kirtland & Packard LLP as Interim Class Counsel and adopt the PEC structure outlined in the Motion.

Dated: March 12, 2012

RESPECTFULLY SUBMITTED,

Michael Louis Kelly
Behram V. Parekh
Heather M. Peterson

By: /s/ Behram V. Parekh
BEHRAM V. PAREKH
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Telephone (310) 536-1000
Facsimile: (310) 536-1001

*Counsel for Plaintiffs Latta, Edge, Gonalez, and Proposed Interim Class Counsel*

ADDITIONAL COUNSEL

Ben Bingham
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio Texas 78212
210.224.2885 (direct)
210.224.0141 (fax)
ben@binghamandlea.com

Frank E. Piscitelli, Jr.
PISCITELLI LAW FIRM
6151 Wilson Mills Road, Suite 110
Cleveland, Ohio 44143

(216)931-7000 Telephone
(216)931-9925 Facsimile
frank@feplaw.com

Roger L. Mandel
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
rlm@lhlaw.net

John Heenan
HEENAN LAW FIRM
3970 Avenue D, Suite A
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@heenanlawfirm.com

Keith J. Keogh
Craig Shapiro
Timothy J. Sostrin
KEOGH LAW, LTD.
101 North Wacker Drive, Suite 605
Chicago, Illinois 60606
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com

Majed Nachawati
FEARS | NACHAWATI LAW FIRM, P.L.L.C.
4925 Greenville Ave, Suite 715
Dallas, TX 75206
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

Jeremy R. Wilson
WILSON TROSCLAIR & LOVINS, P.L.L.C.
302 N. Market St., Suite 510
Dallas, TX 75202

Telephone: (214) 484-1930
Facsimile: (214) 276-1475

Daniel R. Tamez, Esq.
GNAU & TAMEZ LAW GROUP, LLP
1010 Second Ave., Suite 1750
San Diego, CA 92101
Telephone: (619) 446-6736
Facsimile: (619) 684-3500