1   Michael Louis Kelly- State Bar No. 82063
2   mlk@kirtlandpackard.com
    Behram V. Parekh- State Bar No. 180361
3   bvp@kirtlandpackard.com
    Heather M. Peterson- State Bar No. 261303
4   hmp@kirtlandpackard.com
5   **KIRTLAND & PACKARD LLP**
6   2041 Rosecrans Avenue, Third Floor
    El Segundo, California 90245
7   Telephone 310.536.1000
    Facsimile: 310.536.1001
8
9   *Lead Interim Class Counsel*
10  *[Additional Counsel on Signature Page]*
11
12
13              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
14                    **WESTERN DIVISION**
15
16  **IN RE; ORECK CORPORATION**          **CASE NO. 2:12-ML-02317-CAS-**
    **HALO VACUUM AND AIR**               **JEM**
    **PURIFIERS MARKETING AND**
17  **SALES PRACTICES LITIGATION**        **AMENDED CONSOLIDATED**
18                                        **CLASS ACTION COMPLAINT**
    **THIS DOCUMENTS RELATES TO:**
19
    **ALL CASES**                         **DEMAND FOR JURY TRIAL**
20
21
22
23
24
25
26
27
28

1

FILED
CLERK, U.S. DISTRICT COURT

SEP - 7 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

On behalf of themselves and all others similarly situated, Plaintiffs Roxy Edge, Linda Gonzalez, Gina Chenier, Gaya Yosri, Scott Stiepleman, Greg Ruscitti, Teri Latta, and Edward Paragin sue Defendants, Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC, (collectively referred to as "Oreck") and Oreck employees David Oreck, and Does 1-10 (" Employee Defendants") and in support thereof, state:

## I.

## SUMMARY OF THE CASE

1.     This lawsuit involves the manufacture, marketing and sale by Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC., David Oreck, and Does 1-10 (collectively hereinafter "Defendants") of: (a) Oreck Halo upright vacuum cleaners (the "Oreck Halo" or the "Halo") that Defendants marketed and advertised to the public as being effective in killing virtually all bacteria, viruses, germs, mold and allergens that exist on the floor surfaces upon which they are used, and (b) Oreck XL Professional, Oreck ProShield, and Oreck ProShield Plus air purifiers (the "Air Purifiers", and collectively with the Oreck Halo, the "Products") that Defendants marketed and advertised to the public to be effective in capturing and killing many airborne bacteria and viruses such as the flu virus. Defendants represented to consumers that the Products used scientifically proven technology to eliminate common viruses, germs and allergens, thereby helping to prevent the illnesses they cause.   However, these representations were false, deceptive and inaccurate.  As such, Oreck's actions violated the Magnuson Moss Warranty Act ("MMWA"), breached express warranties made by Oreck, breached implied contractual warranties imposed by law, and Oreck and the Employee Defendants violated numerous state consumer protection statutes and common laws.  This lawsuit is brought by Plaintiffs on behalf of themselves and the members of the Class and Subclasses to seek redress for these violations and breaches.

## II.

## **PARTIES**

2.      Plaintiff, Roxy Edge ("Edge") is a citizen and resident of Los Angeles County, California.

3.      Plaintiff Linda Gonzalez ("Gonzalez") is a citizen and resident of Broome County in the State of New York.

4.      Plaintiff Gina Chenier ("Chenier") is a citizen and resident of Torrance, Los Angeles County, California.

5.      Plaintiff Gaya Yosri ("Yosri") is a citizen and resident of Salt Lake City, Salt Lake County, Utah.

6.      Plaintiff Scott Stiepleman ("Stiepleman") is a citizen of Florida who resides in Coconut Creek, Florida.

7.      Plaintiff Greg Ruscitti ("Ruscitti") is a citizen and resident of the State of Illinois.

8.      Plaintiff Teri Latta ("Latta") is a citizen and resident of Riverside, California.

9.      Plaintiff Edward Paragin ("Paragin") is a citizen and resident of the State of Ohio.

10.     Defendant, Oreck Corporation, is a Delaware corporation with its principal place of business at 565 Marriott Drive, Suite 300, Nashville, Tennessee 37214.  Oreck Corporation does business in California and throughout the United States.

11.     Defendant, Oreck Direct, LLC, is a commercial manufacturer, distributor and/or retailer of the Products, incorporated and licensed under the laws of the State of Delaware, with its principal place of business at 565 Marriott Drive, Suite 300, Nashville, Tennessee 37214.  Oreck Direct, LLC does business in California and throughout the United States.

1     12.    Defendant, Oreck Homecare, LLC, is a commercial manufacturer,
2  distributor and/or retailer of the Products and a limited liability corporation
3  established under the laws of the State of Delaware, with its principal place of
4  business in Nashville, Tennessee at 565 Marriott Drive, Suite 300, Nashville,
5  Tennessee 37214.   Oreck Homecare, LLC, does business in California and
6  throughout the United States.

7     13.    Defendant David Oreck ("Mr. Oreck") is, upon information and
8  belief, a resident of New Orleans, Louisiana.

9     14.    Plaintiffs Edge, Chenier and Latta (hereinafter the "California
10 Plaintiffs"), Stiepleman, Paragin and Gonzalez do not know the true names or
11 capacities of the persons or entities sued herein as DOES 1-10, inclusive, and
12 therefore sues such Defendants by fictitious names.   The California Plaintiffs,
13 Stiepleman, Paragin and Gonzalez are informed and believe, and upon such
14 information and belief allege, that each of the DOE Defendants is in some manner
15 legally responsible for the damages suffered by Plaintiffs and the members of the
16 class as alleged herein. Plaintiff will amend this complaint to set forth the true
17 names and capacities of these Defendants when they have been ascertained, along
18 with appropriate charging allegations, as may be necessary.

**III.**

**JURISDICTION AND VENUE**

21    14. This Court has jurisdiction over this matter pursuant to 28 U.S.C.
22 §1332(d)(2) (the Class Action Fairness Act), as Plaintiffs are citizens of
23 California, New York, Utah, Florida, Illinois, and Ohio and the other members of
24 the Class are citizens of all of the other United States, and the aggregate amount
25 in controversy exceeds the jurisdictional amount of $5,000,000.

26    15. Venue is appropriate in this District because Plaintiffs Edge and
27 Chenier are residents of the District, because the acts and occurrences that are the
28 subject matter of their claims and of many other Class members occurred in

4

1  whole or substantial part in the District, and Oreck, using as a spokesperson

2  David Oreck extensively sold Oreck branded goods within the District.

3      16. This Court has personal jurisdiction over Oreck because Oreck

4  extensively advertise and directly sell their Products to California residents and

5  because Defendants purposefully avail themselves of distribution chains likely to

6  lead to the sale of their Products to California residents.  With estimated annual

7  sales revenue of approximately $190 million and over 400 store locations, Oreck

8  is individually and/or collectively among the leading manufacturers of home

9  cleaning equipment in the United States.  Oreck's websites advertise the Products

10 throughout the United States, Europe and most of the world.  Upon information

11 and belief, Oreck's Products are ultimately sold to tens or hundreds of thousands,

12 if not millions, of California residents.

13     17. Oreck's  extensive  business  and  advertising  engagements  with

14 California residents constitute purposeful availment of this forum sufficient to

15 subject Oreck to suit in this forum.  Because of Oreck's significant contacts with

16 this forum, assertion of jurisdiction to remedy Oreck's conduct does not offend

17 traditional notions of fair play and substantial justice.

18     18.   This Court has jurisdiction over David Oreck in California.

19 Defendant David Oreck was a central participant in Oreck's misleading

20 marketing of the Products such that jurisdiction over him exists in  this Court.

21 David Oreck appeared in promotional materials bearing his picture, signature and

22 quotes such as "It's flu season. What are you doing about it?  My Oreck Air

23 Purifier captures and destroys viruses, bacteria and germs."  With David Oreck's

24 knowledge and  personal  participation, these  marketing  materials  were  then

25 directed at and transmitted to consumers nationwide,[1] which necessarily included

26

27 _____

[1] Oreck also retained M2 Marketing Strategy and Management Services which specializes in national direct

28

5

1  being directed to consumers in California, Illinois, Ohio, Utah, New York and
2  Florida.   Moreover, these marketing materials were given to the Company's
3  franchisees and independent retailers, many of which are located in California,
4  Illinois, Ohio, Utah, New York and Florida.  In fact, David Oreck made personal
5  appearances in Florida in 2007 at a conference for Oreck attended by Florida
6  franchisees and independent retailers.

7      19. Moreover, print advertisements, including one featuring David Oreck
8  sitting in a director's chair, were published in nationwide magazines with
9  circulation in the millions, such as Popular Science and Weekly World News.
10  Moreover, David Oreck personally appeared in Oreck's infomercials, which were
11  aired throughout the country, including specifically California, Illinois, Ohio,
12  Utah, New York and Florida, touting the ability of the Products to kill viruses and
13  bacteria and fight flu and colds.  Moreover, Oreck used the services of Go
14  Convergence[2], a prominent full service, marketing firm located in Orlando,
15  Florida, on at least one occasion in 2009 to produce an infomercial to promote the
16  Oreck Halo.  Similarly, Oreck worked with Script to Screen, a California based
17  company, and David Oreck appeared in the infomercials Script to Screen
18  produced.  Thus, with the assistance of Oreck and others, David Oreck not only
19  transmitted false, misleading and deceptive communications into Florida and
20  California, in doing so he also worked with marketing entities located in these
21  two states to publish this massive marketing campaign.  In sum, the allegations

22  _____

23  response marketing campaigns to promote its Air Purifiers.

24  [2]  According to Go Convergence's website: "Oreck's experienced marketing team retained GoConvergence to
25  develop an integrated Direct Response launch that included TV, print, direct mail, web, and retail POS tactics.
26  The campaign has also served as a foundation for repositioning the Oreck brand as a contemporary home products
      technology company, targeting a younger, more affluent consumer."

27

28

1    herein arise from the contacts that David Oreck purposefully established
2    nationwide, and including California, Illinois, Ohio, Utah, New York and Florida.

### IV.

### STATEMENT OF FACTS

#### *A. GENERAL*

6        20.  This is a consumer class action lawsuit brought pursuant to Federal
7    Rules of Civil Procedure 23(a) and (b).  In this Complaint, whenever it is alleged
8    that Oreck falsely advertised the Products, it is alleged on information and belief
9    that in large part the false advertisements were made with, by, and/or with the
10   direct participation of David Oreck, and the other Employee Defendants who
11   must necessarily act for the corporate defendants.

12       21. Now and at all times relevant to this Complaint, David Oreck was an
13   employee of Oreck.[3]  Mr. Oreck, once voted one of the most recognizable
14   personalities in America[4], is a well-known personality who has appeared in radio
15   and television advertising for Oreck products for more than 40 years. Over 90%
16   of women in America aged 30-65 know who David Oreck is, and 98% of them
17   view his Oreck brand, in a very positive manner.[5] David Oreck is the recipient of
18   countless national advertising and marketing awards. He was awarded the
19   American Marketing Association's Marketer of the Year award and was named
20   both U.S. National Finalist and Louisiana Entrepreneur of the Year.[6]  Mr. Oreck
21   has lectured on marketing and advertising at more than 50 universities, and has

-------

23   [3] See, Complaint for Damages and Declaratory Relief in *Oreck Corporation, et al v. HCC Global Financial*
24   *Products, LLC*,  Case No. 2012-148 in Chancery Court for Putnam County Tenn., at para. 5 and 22, a true and
25   correct copy of which is attached hereto as Exhibit 16.
     [4] http://www.news.colostate.edu/Release/2709 ;  http://www.pace.edu/lubin/departments-and-research-
26   centers/entrepreneurship-lubin/pace-pitch-contest/second-annual-pace-pitch-contest/judges/#Oreck

27   [5] http://davidoreckfundraising.com/aboutUs.html

28   [6] *Id.*

been interviewed by CNN, CNBC, Fox News, and other syndicated TV shows, while his radio interviews have been heard by millions of people on approximately 1,000 radio stations.[7]

22. By 2003, the same year as his "marketer of the year" award, David Oreck was a veteran of nationally aired half-hour infomercials touting the Oreck XL air purifier. The infomercials were shown 500 times a week in different television markets throughout the country, and the infomercials were, in Mr. Oreck's own words "extremely successful in terms of generating sales for our product."[8] In short, David Oreck is not just an employee and he is not just a salesman, he is America's super-salesman who describes Oreck as "my hobby, my work, my everything."[9] Like with his 2003 infomercials, his famous name, famous voice, his *persona* and perceived credibility were all integral and critical to the success of the false advertising campaign described below. Mr. Oreck personally made many of the representations set forth herein, many detailed in the infomercial transcripts attached hereto as Exhibit 5 and 10 as well as those appearing in numerous national radio, web, print, and television advertisements.

23. Notably, one of the transcripts attached to the Complaint includes over thirty separate quotes from David Oreck in just **one** infomercial, including such statements as:

> Do you want to protect your family from exposure to colds and flu this season in your home.  Do you have pets?  Do you ever use aerosol cleaners?  Does anyone in your family have allergies or asthma?  Now if you answered "yes" to any of these questions, that's

---

[7] *Id.*

[8] See Declaration of David Oreck dated March 19, 2004  filed in Oreck Direct, LLC v. Sharper Image, Case No. 04-178 (E.D. La.), Doc. 11-4, a true and correct copy of which is attached as Exhibit 17.

[9] CNN interview http://money.cnn.com/2008/07/21/smallbusiness/oreck.fsb/index.htm

1    where my new ProShield Plus Air Purifier comes in.   Exh 1, p. 2
2    (emphasis added).

3         Independent Air Quality Tests proved that *my* new Oreck
4    ProShield Plus could help reduce the amount of harmful airborne
5    particles in your home by up to 99%.   *Id*. p.8 (emphasis added).

6         I want you to use ***my new ProShield Plus*** in your home for 30
7    days. . . .   You know ***we're America's #1 seller of air purifiers, and***
8    ***I'm convinced this is the best one we have ever built!***   *Id.* p. 10
9    (emphasis added).

10        And shipping and handling ***is on me!***  . . . ***I'll*** even pay return
11   shipping.  *Id.* (emphasis added).

12        Order now and ***I'll*** send you two free gifts . . . .  *Id.* p. 16
13   (emphasis added).

14        ***We're*** an American company.  ***We*** stand behind what we sell.
15   I believe you ask anybody who bought an Oreck product I think
16   you'll find that they say "those are good folks."  *Id.* 24 (emphasis
17   added).

18   24. In another infomercial, David Oreck was filmed standing in a lab
19   boasting that the Truman Cell was developed and patented by his David Oreck
20   Laboratories.[10]

21   25. In another infomercial for the Halo vacuum cleaner, David Oreck again
22   represents the products and the statements as being *his* products and *his*
23   representations. (See Exh 5).   For example, appearing, in person, in the
24   infomercial, David Oreck states, amongst other things, the following:

25
26
27
_____

28   [10] See at http://www.youtube.com/watch?v=p2nBorV5Wa8&feature=related

Hello, I'm David Oreck.  You know the filth of the street is on your feet. And every day it can get tracked into the place we all presume is safe – our home. Now that filth is loaded with germs and bacteria that can make your entire family sick. Go beyond clean to a healthier clean with the Oreck Halo – *my* remarkable germ-killing machine.  Which also happens to be one of the best vacuums *I've* ever made. Exh 5, p. 1 (emphasis added).

26. Acting within the course and scope of their employment and in the normal course of business of Oreck, the Employee Defendants actively developed, participated in, and directed others who participated in, and approved and consented to the false advertising described in this Complaint.  Because of their participation in the false advertising described herein, the Employee Defendants are individually liable, and Oreck is vicariously liable for their actions under principles of agency law. On information and belief, the Oreck entity defendants are each an instrumentality of one another. While the exact inter-relationship of the Oreck entity defendants is not fully known at this time, it is known that they all share the same principal place of business and corporate office at 565 Marriott Drive, Suite 300, Nashville, Tennessee 37214. It is believed that there is substantial overlap and sharing of officers, directors, equity owners and employees among the Oreck entities. It is known that there is common ownership, e.g. that the sole member of Oreck Direct, LLC, is Oreck Corporation. It is believed that Oreck Corporation is the primary operating entity that controls the policies, business activities, transfer or distribution of assets, liabilities and responsibilities among the various other Oreck entities and that there is such a unity of interest and ownership among the various Oreck entities that the separate "personalities" of the Oreck entities ceases to exist or should be disregarded to avoid an unjust or inequitable result in this case.

27. While the vast majority of sales that are the subject of this complaint were sales made direct by Oreck to the consumer, some sales were made by

Oreck franchisees. On information and belief, Defendants controlled and directed, and/or provided the false advertising for the benefit of the franchisees, and are believed to have paid Oreck for shared advertising from which they both benefitted. The false advertising about the Products was uniform without regard to whether the Products were purchased from Oreck direct, whether by phone, online or from an Oreck owned store, or from a franchise store or from an authorized dealer.

28. Sales were also made through third-party retailers, including but not limited to authorized dealers.  On information and belief, Oreck provided the claims and marketing information and/or copy that were used by these third-party retailers to market and sell the Products to consumers, including plaintiffs and Class Members.  The false marketing of the Products was uniform without regard to the third-party retailers involved, because Defendants cause the third-party retailers to disseminate the marketing information, which Defendants had developed and conveyed to the third-party retailers, the consumers, including plaintiffs and Class Members.

29. Plaintiffs' claims rest on Defendants' individual and/or collective sale of the Oreck Halo and Air Purifiers based on widely disseminated, long term, nationally uniform and consistent false and/or misleading statements made in their massive advertising campaign for the Products, in infomercials, print ads, on their websites, on the Products, the Product packaging, the Product labels, and in the Products' User's Guides. Plaintiffs are not claiming that the vacuums did not vacuum or that the air purifiers did not move air.  More specifically, Plaintiffs do not claim that there was any malfunction of the Products or that the Products failed to perform as a result of any defect, deficiency or inadequacy in the design or manufacture of the Products.  Rather, Plaintiffs are claiming that even when working properly and without any defect, deficiency or inadequacy in their design or manufacture, the Products did not and do not possess the ability to deliver the

health benefits in the homes of consumers that Oreck said and implied that they did because the Products did not and could not eliminate up to 99% of germs, viruses, bacteria, molds and allergens such that Defendants' statements to the effect that the Products could do so was false or misleading and deceptive. This is a false labeling and false advertising case.

30. The first product in question, purchased by all Plaintiffs except Mr. Gonzalez and Mr. Stiepleman is the Oreck Halo, which is an upright vacuum cleaner that was advertised and sold to consumers. The Oreck Halo contained a HEPA filter bag and a built-in light chamber that generated ultraviolet light in the C spectrum (UV-C) onto floor surfaces while vacuuming. The Halo was available and sold by Defendants directly, through their franchisees, and through Defendants' authorized dealers throughout the United States. The "Halo" trademark and certain assets were acquired by Defendants from Halo Technologies, Inc. ("Halo Technologies"), in July of 2008. Those assets included the right to incorporate the UV-C light chamber into the Products. From the previous years of marketing by Halo Technologies and the subsequent marketing by Defendants, the "Halo" trademark is associated with and constitutes a representation that any product bearing the "Halo" trademark can and will kill bacteria and viruses using UV-C light.

31. Defendants advertised and marketed the Halo as a "flu fighter." According to Oreck, the technology utilized by the Halo killed "up to 99.9%" of germs and bacteria that can cause common illnesses such as influenza. Defendants' advertising campaign for the Halo consisted of traditional 60-second television commercials, printed advertisement materials, product labeling, online media and even a 30-minute long infomercial. The underlying claim of the advertisements was clear: the Halo vacuum cleaner had been tested and was scientifically proven to kill or otherwise eliminate germs, viruses, bacteria,

1  allergens and other unwanted pathogens that could lead to health problems for
2  consumers and their families.

3        32. According to Defendants, the Halo was different from an ordinary
4  upright vacuum in that the Halo incorporated a "light chamber" into its design
5  that "creates a powerful germicidal wavelength of UV-C light that can kill and
6  reduce up to 99.9% of germs and bacteria helping you give your floors a healthier
7  clean." This functionality was depicted in a number of different ways throughout
8  Oreck's many advertising mediums.  One such advertisement showed a man in a
9  lab coat (attempting to lend credence to Oreck's claims of scientific testing)
10 vacuuming a floor surface with the Halo.  Other advertisements featured the Halo
11 eliminating simulated germs, bacteria and dust mite eggs below a carpeted floor
12 surface.  According to Defendants, all of this was accomplished in less than one
13 second of exposure to the light emitted from the Halo.  One of Oreck's printed
14 advertisements claimed that, "when the light is on, germs are gone."

15       33. Defendants also utilized a UV-A light in another product, their
16 ProShield Plus Air Purifier with Helios[11] Shield.  In this product, Oreck didn't
17 claim that the UV-A light, dubbed the "Helios Shield," killed germs, bacteria,
18 molds, or viruses like the Halo.  Although they were frequently advertised
19 together, Oreck represented that the ProShield Plus air purifier "uses ultraviolet
20 light to smash the molecular structure of gases and odors" and "uses UV light to
21 remove many odors from the air." Defendants also made very similar claims
22 about their Air Purifiers' germ killing and flu fighting abilities, claiming the Air
23 Purifiers would remove flu and other viruses, bacteria, mold and other pathogens
24 from the air.

[11] Helios is the name of the Greek God of Sun; the Helios name on the air purifier was apparently meant to equate the Sun's UV light with the light on the air purifier.

34. With regard to the Oreck XL Professional, the Oreck ProShield and the Oreck ProShield Plus, (the "Air Purifiers") Defendants claimed that the Air Purifiers were capable of killing illness causing germs and bacteria by use of "Truman Cell" technology.  The Truman Cell is a permanent filter that, according to Defendants, "captures and destroys bacteria, molds, viruses & fungi by electrostatically charging and collecting particles."

35. Below are numerous examples of the advertising Defendants disseminated regarding the Products to Plaintiffs, the members of the Class, and the general public.  Defendants' other advertising for the Products made substantially similar claims.

36. Regarding the Oreck XL Professional air purifier David Oreck, speaking for Defendants, claimed:



See Exhibit 1 attached hereto.

14

37.  Regarding the ProShield and ProShield Plus air purifiers, Defendants made the representations contained in this "Oreck Clean Home" website:

ORECK CLEAN HOME

Oreck, the company that excels in Air Purifiers.

## Introducing Oreck ProShield® and Oreck ProShield® Plus from America's #1 seller of Air Purifiers.

**Helios Shield,® the Truman Cell® and other advanced technologies capture and destroy many airborne bacteria, viruses, allergens, and neutralize volatile organic compounds and odors.**

The EPA says indoor air pollution may be 5 times more polluted than the air outside! We know that sounds crazy. But since we spend up to 90% of our time indoors, usually with the windows sealed and doors shut, indoor air pollution could be more hazardous than you think.

Think about it. Cooking odors, chemical fumes, cigarette and cigar smoke, aerosol cleaners, insect sprays, pets and kids, pollen, mold and mildew, are all sources of pollution. These are the things that could cause allergies to flair, restless nights, eye irritation, seasonal colds and flu. In fact, every time somebody moves around their home they could be kicking those potentially dangerous particulates up into the air they breathe.

The new Oreck ProShield™ Plus helps reduce those nasty airborne particulates in homes, and can actually improve the air quality. At the same time, it also helps eliminate odors. That's because the Oreck ProShield Plus constantly moves the air, drawing in and trapping those particulates. If you don't move the air you can't clean the air. Twenty-four hours a day, the new Oreck ProShield Plus with its unique new Helios Shield UV odor control technology, and exclusive Truman cell is capturing pet dander, dust, and other harmful allergens. It's also killing many germs and viruses and neutralizing dangerous volatile organic compounds found in so many household products.

## Contemporary styling. Advanced engineering. Compact design. Complete portability.

The secret to the new Oreck ProShield Plus's powerful performance is Oreck's exclusive "capture and kill" filtration system. As the air circulates through it, Oreck's patented Truman Cell® electrically charges dust, allergens and germs and pulls them out of the air like a magnet. Then Oreck's newest innovation, the revolutionary Helios Shield® utilizes UV light for superior odor control capability. That type of cleaning power gives Oreck the ability to capture and kill many airborne viruses, neutralize volatile organic compounds, and eliminate odors as it circulates the air through its system. That's what makes the ProShield Plus such an effective tool in reducing airborne allergens.



In in-home testing, the ProShield helped deliver up to a 99% reduction in particles down to .1 microns*



|  | PROSHIELD | PROSHIELD+ |
|---|---|---|
| Color: | Piano Black | Gunmetal |
| New Technology: | N/A | Helios Shield |
| Odor Control: | Odor Absorber Plus | PCO - UV Odor Control |
| Filtration: | Truman Cell® never needs replacing | Truman Cell® never needs replacing |
| Efficacy: | 12' x 18' room twice every hour | 12' x 18' room twice every hour |
| Orientation: | Dual | Dual |
| Noise Level: | Whisper-quiet, on low | Whisper-quiet, on low |
| Energy Efficiency: | Ordinary light bulb | Ordinary light bulb |
| Warranty: | 2-year limited warranty Lifetime warranty on the Truman Cell | 2-year limited warranty Lifetime warranty on the Truman Cell |
| Dimensions: | 10.5"x 4.5"x 18" | 10.5"x 4.5"x 18" |
| SKUs: | AIR12B | AIR12GU |



 

PROSHIELD®   PROSHIELD+®

See Exhibit 2 attached hereto.

38. Defendants placed the following combined advertisement for their Halo and ProShield Plus products on their website at http://www.oreck.com/flu-fighters/index.cfm:  (see Exhibit 3, attached hereto).



39.  The text of this advertisement stated, in pertinent part, that:

**The new Oreck ProShield™ Plus Air Purifier with Helios Shield™ captures and destroys many airborne viruses like the flu.**

You can do something about the air in your home. Twice every hour, the new Oreck ProShield Plus cleans and re-circulates the air in a 12' x 18' room. In in-home testing, the ProShield helped deliver up to a 99% reduction in particles down to .1 microns.* . . . ."

**The Oreck Halo® kills many germs on your floor while you vacuum.**

Now you and your family can enjoy a healthier clean. This is the only vacuum in the world that uses powerful UV-C light to kill many of the germs that could be living on your floors. UV-C technology is not new. It's used to sanitize hospital operating rooms and to purify drinking water . . . ."

40. Defendants also disseminated a similar combination print advertisements under a similar "flu fighter" banner (see Exhibit 4, attached hereto) displayed below:



41.  The above-referenced advertisement states, in pertinent part: "Introducing the Oreck Flu Fighters.

Help stop the flu on virtually any surface and in the air in your home. Captures Viruses.  Kills Viruses.

The NEW Oreck ProShield™ Plus Air Purifier with Helios Shield™ can capture and destroy many airborne viruses like the flu.

You can do something about the air in your home. Twice every hour, the new Oreck ProShield Plus cleans and re-circulates the air in a 12' x 1 8' room. In in-home testing, the ProShield helped deliver up to a 99% reduction in airborne particles down to .1 microns.*

\*   \*   \*

Now you and your family can enjoy a healthier clean. This is the only vacuum in the world that uses powerful UV-C light to kill many of the germs that could be living on your floors. UV-C technology is not new. It's used to sanitize hospital operating rooms and to purify drinking water supplies. See for yourself just how effective it is and what a fantastic job it does on all types of floor surfaces.* . . . ."

42. In addition to its internet and print advertising, Defendants ran a thirty-minute infomercial on television specifically for the Halo vacuum cleaner (see Exhibit 5, the transcript, attached hereto).  Selections from the transcript of this infomercial are quoted below:

[Announcer]: "Your floors look clean but are they really...even if it looks clean there can be germs, mold, bacteria, viruses, dust mite and

flea eggs living right under your feet. Tracked in on your shoes or carried in by your pet. Did you know that you can find over 100,000 dust mites on one square yard of carpet and dust mites have been linked to indoor allergies and asthma. Plus there can be up to 2,500 bacteria, a common cause of infections on just one square inch of tile. But it gets worse! You could find up to 200,000 bacteria on just one square inch of carpet."

\* \* \*

[Announcer]: "Ordinary vacuums pick up dirt, but may leave germs behind and harsh chemicals like bleach can ruin carpet. But now you can kill and reduce many germs and bacteria on all your floors, while you vacuum. Introducing the revolutionary Oreck Halo-the only germ-killing UVC vacuum!"

[The advertisement depicts a woman quickly vacuuming up all simulated germs. On the screen, the following statement appears in small white print superimposed at the bottom of the screen for a few seconds: "Simulation only. Results may vary. Extent of killing on surfaces depends on microorganism exposure time. The Oreck Halo vacuum cleaner is not intended for use in the cure, mitigation, treatment or prevention of any disease or medical condition, including asthma or allergies."]

\* \* \*

[Announcer]: "The light chamber in the Oreck Halo has killed up to 99.9% of bacteria exposed to its light in one second or less."

[The advertisement depicts a woman vacuuming up all simulated germs. On screen, the statements appear: "Killed up to 99.9% of bacteria in laboratory testing." and "One second or less."]

\* \* \*

[Andrea Jackson]: "The Oreck Halo light chamber has been tested and shown to kill up to 99.9% of certain common germs, plus dangerous pathogens like E. coli and MRSA. Best of all, the many germs it kills can then be vacuumed up without a trace, thanks to superior vacuum technology that could only come from Oreck."

[The advertisement depicts a man quickly vacuuming up all simulated germs. On screen, the following statement appears: "Reduced up to 99.9% of common germs in laboratory testing." The advertisement also contains the following statement in small white print superimposed at the bottom of the screen: "Simulation only. Results may vary. Extent of killing on surfaces depends on microorganism exposure time. The Oreck Halo vacuum cleaner is not intended for use in the cure, mitigation, treatment or prevention of any disease or medical condition, including asthma or allergies. Do not attempt to look into Oreck Halo light. See Owner's Manual for safety and other instructions."]

\* \* \*

[Announcer]: "In laboratory testing the Halo light chamber can kill flu virus and E. coli bacteria in as little as .33 seconds. There is no extra work and no extra cleaning."

[The advertisement depicts a man in lab coat vacuuming, followed by the following chart: The advertisement then calls out from the chart the times relating to the flu virus and E. coli bacteria.]

1
2
3
4
5
6
7
8

| UP TO 99.9% KILL | SECONDS |
| --- | --- |
| INFECTIOUS HEPATITIS | 0.40 |
| INFLUENZA | 0.33 |
| BACILLUS ANTRACIS ANTHRAX | 0.44 |
| E. COLI | 0.33 |
| MYCOBACTERIUM TUBERCULOSIS | 0.50 |
| SALMONELLEA ENTERITIDIS | 0.38 |

9                                    *   *   *

10   [Stan Kikkert]: "I'm Stan Kikkert. In carpets, we can commonly find

11   staphylococcus. Basically we did a simple experiment. I applied

12   staphylococcus to the surface of various carpet samples. Some of those

13   samples were vacuumed two passes from the Oreck Halo vac. Some

14   received four passes, some received six passes. In addition, I did this

15   experiment in parallel with a conventional vacuum, one that did not

16   have an ultra-violet light. After performing the vacuuming, I swabbed

17   the carpets, and transferred those swabs onto some auger Petri dishes.

18   What we saw was a conventional vacuum is not effective at removing

19   microorganisms from the carpet. The Oreck Halo vac was successful at

20   removing bacteria from the surface of carpet samples. That reduction

21   was approximately 80%, with each set of two passes."

22
23
24
25



26
27    [On-screen depiction]
28

[On screen in above depiction in small white print at the bottom of the screen: "53% to 88% percent reduction in bacterial load was observed in laboratory testing."]

[Stan Kikkert]: "We see that repeated use of the Oreck Halo vac, you get a repeated reduction in the amount of bacteria that's present on the surface of the carpet samples."



[On-screen depiction]

[On screen in above depiction in small white print at the bottom of the screen: "53% to 88% percent reduction in bacterial load was observed in laboratory testing."]

\* \* \*

[Dr. Charles Gerba]: "To assess the effectiveness of the Oreck Halo, we looked at the numbers of bacteria in five different households. And I want to show you the results, because they're rather dramatic. Let me start with the Rosser home, where you can see the number of bacteria on the baby's carpeting before and after the use of the Oreck Halo-over a 90% reduction."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



[On-screen depiction]

[On screen in above depiction in small white print at the bottom of the screen: "Results may vary. Extent of killing on surfaces depends on microorganism exposure time. Bacteria colonies were incubated for comparison based on colony growth. Results may not represent actual bacteria levels present prior to incubation."]

[Consumer endorser]: "Now I know firsthand! I mean the results are right in front of my face. It makes such a difference. That's just amazing."

[Dr. Charles Gerba]: "Well, let's take a look at the results from the Harber's kitchen tile floor. This is before and after. You can see the effectiveness of the Oreck Halo - here over 90% reduction."

[Woman's voice; close-up of two simulated Petri dishes-before and after-"Harber Family" heading]: "I can't believe how much the Oreck Halo eliminated, and how, just by using the Halo for the thirty days. . . I just couldn't be happier with the results."

[Dr. Charles Gerba]: "Let's move on to the Squier household. You can see the large numbers of bacteria here, and in this case we reduced the number of bacteria by more than 99.9%."

[Consumer endorser]: "The bacteria was almost gone, so I know that if I continued to use the Oreck Halo, it's gonna remove more bacteria each time it's being used."

[Dr. Charles Gerba]: "Let's move on to the Coble home-the hardwood bedroom floors, you can see more than a 90% reduction."

[Consumer endorser]: "Couldn't even express the night and day results."

\* \* \*

43. Defendants also advertised their Halo vacuum in a sixty (60) second television advertisement (see Exhibit 6, the transcript, attached hereto).  Portions of the transcript for this commercial are quoted below:

[Announcer]: "Chances are allergens and illness triggers are in your home...living right under your feet. Dirt and debris you can see and germs, bacteria and dust mites that you can't see. So how do you get from here...



[Depiction of simulated germs, bacteria and dust mite eggs deep below the surface of a carpet] to here?"



[Depiction of woman quickly vacuuming up all simulated mold, bacteria, germs and viruses]

[On screen in above depiction in small white print at the bottom of the screen: "Simulation only. Results may vary. Extent of killing on surfaces depends on microorganism exposure time. Not intended to cure, treat or prevent any disease or medical condition. Do not attempt to look into Oreck Halo light. See Owner's Manual for safety and other instructions."]

[Announcer]: "With the incredible germ killing vacuum so revolutionary it could only be an Oreck.

* * *

The secret is the patented Halo Light chamber that creates a powerful germicidal wavelength of UV-C light that can kill and reduce up to 99.9% of germs and bacteria helping you give your floors a healthier clean."

[The advertisement depicts the Oreck Halo's UV-C light killing germs. On the screen, the following statement appears in small white print superimposed at the bottom of the screen for a few seconds: "Results may vary. Extent of killing on surfaces depends on microorganism exposure time. The Oreck Halo vacuum cleaner is not intended to cure, treat or prevent any disease or medical condition, including asthma or allergies."]

[Announcer]: ". . . . and learn how the Oreck Halo can help you give your home a healthier clean."

[The advertisement depicts the Oreck Halo eliminating all germs below the vacuum]

//

//

//

44. Defendants also disseminated this print advertisement specifically for the Halo (see **Exhibit 7**, attached hereto):



Exhibit G

45. The text of this advertisement stated, in pertinent part:

"Goodbye bacteria, viruses, mold, and germs. Hello barefoot clean!

Introducing the powerful new Oreck Halo.™ The only UV-C germ-killing vacuum.

There is a lot more that could be living in your home than just your family and pets. Dust-mites, fleas and their eggs, mold, bacteria, germs, and microorganisms that cause flu, diarrhea and upset stomachs could be living there, too. Now there's an amazingly powerful new vacuum that was designed to help protect your family from many of those microscopic, uninvited guests. It's the new Oreck Halo with exclusive germ-killing UV-C Technology.

**Technology proven in hospitals.** The new Oreck Halo can kill many bacteria, viruses, dust mite eggs, and even mold on any floor surface.* That's due to its powerful UV-C light. This is the same light used to disinfect hospital operating rooms and purify drinking water. You get a healthier clean.

\* \* \*

[Small print at bottom of ad: "Results may vary. Extent of killing on surfaces depends on exposure time. Instant killing is considered exposure times of one second or less. The Oreck Halo vacuum cleaner is not intended for use in the cure, mitigation, treatment, or prevention of any disease or medical condition, including asthma or allergies. Bag filters 99.95% of all particles captured down to 0.3 microns."]

1      46.  Defendants may have also disseminated to their franchise and company

2  owned stores the following print advertisement for the Halo (see Exhibit 8,

3  attached hereto):

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



Exhibit H

25      47.  That print advertisement contained the following assertions:

26  "Make sure your child is the only thing crawling on your floors.

27

28

**Millions** of germs, viruses and bacteria could be living on **your** floor and can trigger asthma and allergy attacks, colds, and flu.

\*   \*   \*



When the light is on, germs are gone. . . . .”

48. Defendants also disseminated the following advertisement regarding the Halo (see **Exhibit 9**, attached hereto):



Exhibit I

49.  That advertisement stated in pertinent part as follows:

Now you can enjoy a healthier clean, thanks to the Oreck Halo.

This is the only vacuum in the world that uses powerful UV-C light to kill many of the germs that could be living on your floors, such as the flu. UV-C technology is not new. It's used to sanitize hospital operating rooms and to purify drinking water. Plus the Oreck Halo is hypo-allergenic. It traps 99.9% of particulates down to 0.3 microns.



50. Defendants also disseminated a 30-minute infomercial for the ProShield with statements similar to those made for the Halo (see Exhibit 10, the transcript, attached hereto).  Portions of the transcript are quoted below:

[David Oreck]: "Here are a couple of questions. Do you want to protect your family from exposure to colds and flu this season in your home? Do you have pets? Do you ever use aerosol cleaners? Does anyone in your family have allergies or asthma? Now, if you answered 'yes' to any of these questions, that's where my new Pro Shield Plus Air Purifier comes in."

[On-screen depiction of woman sneezing]

* * *

[Announcer]: "Our country is facing what some are calling the worst flu season in years. Now more than ever we should be aware of the airborne germs and viruses that could be in our home."

* * *

[Host]: "Well, now you can fight back with this, the new Oreck ProShield Plus, the air purifier that circulates the air to capture and kill many of the potentially harmful things that may be in it. I know how harmful they can be because my health was severely affected for several years by indoor air pollution. So when the folks at Oreck asked me to host this show I told them I wanted to see proof that the ProShield Plus worked in real homes for real families, and not just in a laboratory. Their response? No problem."

* * *

[Tony Frassrand]: "Well, our independent air quality specialist did an initial test in the Vaccher's home and found that they had an incredibly high number of particles in their air. We then turned on the Oreck ProShield Plus that was placed it in the center of the living room, and the ProShield Plus got to work cleaning the air. Our independent air quality specialist retested the air over a short period of time to see how the Oreck ProShield Plus performed. What'd you find?"

33

[Indoor Air Quality Specialist]: "Well what I found was that we had a 98% reduction."

[Tony Frassrand]: "98% reduction."

[Consumer endorsers]: "Wow!"

\*   \*   \*

[Tony Frassrand]: "Remember, before the ProShield Plus, the Vaccher family was battling an extremely high number of particulates in their air. In fact, the air in their home was more polluted than the air outside. But, the ProShield Plus helped remove 98% of those harmful particles out of the air. Well, if it can happen here in the Vaccher home then it can surely happen for you too."



[On screen in above depiction in small white print at the bottom of the screen: "High setting used for entire test period of time in a sealed room.

Percent reduction includes natural deposition and particle size measured down to 0.1 microns."]

\*   \*   \*

[Announcer]: "And here's a special announcement. Our country is facing what some are calling the worst flu season in years. With the existing flu pandemic on the rise, now more than ever we should be aware of airborne germs and viruses that can be in our homes."



[On screen in above depiction in small white print at the bottom of the screen: "The Oreck ProShield Air Purifier is not intended for use in the cure, mitigation, treatment, or prevention of any disease or medical condition, including asthma or allergies."]

[Announcer]: "That's why when you order now, David Oreck will give you $50.00 off his new Oreck ProShield Plus. That's how committed Oreck is to the well being of your family and it's a smart way to help reduce your chance of exposure to colds and flu in your home."



\* \* \*

1    [Host]: "Few things are more beautiful than flowers in bloom.

2    Unfortunately, that can also mean pollen is in the air. And for some of

3    us, that can mean more than just an occasional sneeze. No wonder so

4    many families with allergy and asthma sufferers love the ProShield

5    Plus."

6                            *   *   *

7    [David Oreck]: "In fact, independent testing proved the ProShield Plus

8    helped produce an astounding 99% reduction in airborne particles in a

9    room in an actual home. And it can do the same in your home."



18   [On screen in above depiction in small white print at the bottom of the

19   screen: "High setting used for entire test period of time in a sealed

20   room. Percent reduction includes natural deposition and particle size

21   measured down to 0.1 microns."]

22   51. Defendants also ran a 120-second television commercial for the

23   ProShield (see Exhibit 11, the transcript, attached hereto).  Relevant portions of

24   the transcript of this commercial are quoted below:

26   [Announcer]: "Attention. The federal government warns we could be

27   in for the worst flu season in decades. So how are you going to fight

1   back the millions of microorganisms that could be riding on the
2   airborne dust in your home?"

3

4   [Announcer]: "And those dust particles could carry things like germs,
5   cold and flu viruses, bacteria, mold and allergens. And could be
6   spreading illnesses like the influenza virus and when your front door
7   closes you and your family are sealed in with that pollution."

8

9   [The advertisement depicts simulated particles floating in a typical
10  living room]

11

12  [Announcer]: "Now, you can fight back with the new Oreck ProShield
13  Plus Air Purifier. The new ProShield Plus features two air-purification
14  innovations only available from Oreck. Powerful fans circulate the air
15  through the ProShield Plus and Oreck's patented Truman Cell
16  electrostatically charges many dust particles, allergens, germs and
17  viruses pulling them out of the air like a magnet. And for odors,
18  Oreck's brand new Helios Shield uses ultraviolet light to smash the
19  molecular structure of gases and odors. In fact, in-home testing shows
20  that the new ProShield Plus helped deliver up to a 99% reduction in
21  airborne particles down to .1 microns."



22
23
24
25
26
27
28

[On-screen depiction of graph showing 99% reduction in airborne particles]

[On screen in above depiction in small white print at the bottom of the screen: "High setting used for entire test period of time in a sealed room. Percentage reduction includes natural deposition and particle size measured down to 0.1 microns."]

[Announcer]: ". . . . Try it risk free for 30 days. Keep it and enjoy the freedom of NO payment and NO interest for 1 year. Call now and fight the flu in your home air, with the new Oreck ProShield Plus air purifier."

52. Finally, Defendants disseminated the following print advertisement for the ProShield Plus (see Exhibit 12, attached hereto):



53.   Relevant portions of this advertisement states:



Introducing the New Oreck ProShield™+ Air Purifier. In-home testing shows the ProShield helped deliver up to 99% reduction in airborne particles down to .1 microns

† Can capture and destroy many airborne allergens and viruses like the flu ! [Followed by this depiction of bacteria, viruses and pollen]



[The advertisement contains the following statement in small print: "High setting used for entire test period of time in a sealed room. Percent reduction includes natural deposition and particle size measured down to .1 micron."]

54. The Halo bears the trademark "Halo" on its label.  This word, given the history of Halo Technologies and the use of the word "Halo" by Halo Technologies and later by Oreck, represents and warrants that the vacuum cleaner will kill bacteria and viruses.  The User Guide accompanying the Halo (see **Exhibit 13**, attached hereto) represents and warrants that the Halo vacuum will kill 99.99% of certain viruses and bacteria when passed over for less than a second, and mold is a mere 1.10 second, as set forth below:

**Cleaning Tips**

- Follow all safety warnings.
- Keep the vacuum moving while in use.
- Avoid banging the vacuum against firm or hard objects.
- Do not pickup small objects such as coins, screws, paper clips etc. These will damage your vacuum, see brushroll reset button.
- Operate the vacuum in a slow back and forth motion. See table below for estimated exposure times to neutralize many common microorganisms.

| Microorganism | Seconds for 99.99% Kill |
|---|---|
| **Virus** | |
| Bacteriophage-E. Coli | 0.33 |
| Infectious Hepatitis | 0.40 |
| Influenza | 0.33 |
| Poliovirus | 0.33 |
| **Bacteria** | |
| Bacillus anthracis - Anthrax | 0.44 |
| E. coli | 0.33 |
| Mycobacterium tuberculosis | 0.50 |
| Salmonella enteritidis | 0.38 |
| **Mold** | |
| Penicillium expansum | 1.10 |

**Vacuum Protection Features**

**Brushroll Reset Button**

Follow the steps below in the event that brushroll motor overheats:

1. Attempt to turn the vacuum OFF then ON. If the brushroll is still not turning, unplug the vacuum.
2. Allow the vacuum (e.g. UV-C light, lens) to cool off and inspect the brushroll to ensure it is free of all hair, threads, strings etc.
3. Plug the vacuum in and press the brushroll reset button.

13

55. The box containing the "Oreck XL ProShield Air Purifier Series", including the ProShield Plus model, states: "HEALTHIER Captures and destroys bacteria, mold, viruses and fungi." The ProShield Plus air purifier itself bears a small removable tag that says, "TRUMAN CELL PROPRIETARY TECHNOLOGY Captures & Destroys Bacteria, Molds, Viruses & Fungi." The User Guide accompanying the ProShield Plus (see Exhibit 14, attached hereto) represents and warrants that the ProShield Plus ". . . can provide broad protection against . . . bacteria, mold, viruses, fungi, . . . that are reduced as the air moves through the air purifier for a healthier, cleaner home environment."

56. Through Oreck's advertisement of the Products, its websites, their Products' packaging, their labels and their User's Guides, as described herein, Oreck represented, expressly or by implication, and expressly warranted that:

A. The Halo substantially reduces the risk of or prevents the flu;

B. The Halo substantially reduces the risk of or prevents other illnesses or ailments caused by bacteria, viruses, molds, and allergens, such as the common cold, diarrhea, upset stomachs, asthma, and allergy symptoms;

C. The Halo will eliminate all or virtually all common germs, viruses and allergens found on the floors in users' homes;

D. The Halo's UV-C light is effective against germs, bacteria, dust mites, mold and viruses embedded in carpets;

E. The Air Purifiers substantially reduce the risk of or prevent the flu;

F. The Air Purifiers substantially reduce the risk of or prevent other illnesses or ailments caused by bacteria, viruses, molds, and allergens, such as the common cold, asthma, and allergy symptoms; and

42

G. The Air Purifiers will eliminate all or virtually all airborne particles, including bacteria and viruses, from a typical household room under normal living conditions.

57. Defendants have represented, expressly or by implication, that they had substantiation in the form of medical test or other scientific bases for the claims and representations regarding the pathogen killing ability and resulting health benefits of the Products. Unfortunately for Plaintiffs and the Class, Defendants' claims are not adequately supported by credible scientific testing or other substantiation.  These claims of adequate substantiation as well as the underlying claims of pathogen killing abilities and ability to prevent disease made by Defendants about the Products are false, deceptive and misleading.

58.  The advertisements referred to herein, as demonstrated by the exhibits attached hereto, were uniform and broadly disseminated throughout the United States. On information and belief, the Oreck XL Infomercial was shown in hundreds of television markets over an extended period of time. For example, David Oreck has testified that the infomercial for the Oreck XL, published by Oreck Direct, LLC aired about 500 times per week in different markets throughout the country.[12] David Oreck also swore that the Oreck XL infomercial cost about $450,000 to produce and that Oreck spent about $450,000 per week in advertising expenses for it.[13] On information and belief, the advertising campaign for Oreck's Halo and ProShield Plus products dwarfed that of the Oreck XL. The extent of Oreck's misrepresentations concerning the above-referenced Products were so extensive, long term, prolific, and widely disseminated that the Federal Trade Commission ("FTC") exercised national jurisdiction and charged Oreck

---

[12] Declaration of David Oreck dated March 19, 2004 and filed in Oreck Direct, LLC v. Sharper Image, Case No. 04-178 (E.D. La.), Doc. 11-4, a true and correct copy of which is attached hereto as Exhibit 17.

[13] Id.

with making false and deceptive claims regarding the Products and their ability to kill and capture allergens, bacteria and viruses. As a result of the FTC action, Oreck agreed in April 2011 to pay $750,000.00 and to stop making these false and unproven claims that the Halo and the ProShield can kill bacteria, viruses and other pathogens, and thereby prevent illness.

## B. PLAINTIFFS

59. After viewing the Oreck Halo infomercial and commercial and also seeing it advertised on the QVC shopping channel, Plantiff Edge purchase a Halo vacuum from QVC in May or June of 2010 paying $599.95. Plaintiff Edge relied upon and would not have purchased the Oreck Halo but for the representations in the infomercial and commercial about it's health benefits, including that it was a "germ killing" vacuum that had killed 99.9% of the bacteria in the home that was depicted in the infomercial. Plaintiff now, based upon the FTC action and Oreck's agreeing to be enjoined from making the same representations alleges that those representations were false. Plaintiff Edge already owned a vacuum that worked perfectly well at cleaning floors and rugs. As a result of the misrepresentations and breaches of warranties concerning the alleged health benefits to be derived from use of the Halo vacuum, Plaintiff Edge has been damaged in the amount of her full purchase price of the Oreck Halo vacuum. Alternatively, Plaintiff Edge has been damaged by Defendants' misrepresentations and/or breaches of warranty in the amount of the difference in value of the Oreck Halo vacuum as represented and/or warranted by Defendants and its actual value as delivered to Plaintiff Edge.

60. After viewing the germ killing and flu and other health benefit related representations made in the advertisements, infomercials and commercials as depicted in or substantially similar to Exhibits 1, 2, 3, 10, 11 and 12, as well as Oreck's website that also made claims substantially similar the claims made in Exhibits 1, 2, 3, 10, 11 and 12, specifically with regard to the ability of the Oreck

products to eliminate germs, viruses, bacteria, molds, dust mites, and allergens, and in reliance upon them and Oreck's warranties, Plaintiff Gonzalez purchased directly from Oreck two Oreck XL Professional air purifiers on November 9, and 10, 2008, for the sum of approximately $650.00 (a buy-one-get-the-second-for-one-half-price offer) and  an Oreck ProShield Plus air purifier on December 21, 2009, for approximately $450.00, including tax. Plaintiff Gonzalez asserts that the Products did not in fact have the represented ability to prevent common illnesses, including the flu, by killing germs, viruses, bacteria and molds. As a result of Defendants' misrepresentations and/or breaches of warranties, Plaintiff Gonzalez has been damaged to the full extent of her purchase price. Alternatively, Plaintiff Gonzalez has been damaged by Defendants' misrepresentations and/or breaches of warranty in the amount of the difference in value of the Oreck Halo vacuum as represented and/or warranted by Defendants in and its actual value as delivered to Plaintiff Gonzalez.

61. On April 21, 2009, Plaintiff Chenier purchased a Oreck Halo vacuum online directly from Defendants for $599.95 (excluding tax).  In making her purchase, Plaintiff relied upon Defendants' misrepresentations concerning the Halo's ability to prevent common illnesses, which Defendants led her to believe was scientifically proven, and upon Defendants' warranties. If not for such representations and Defendants' warranties, Plaintiff Chenier would not have purchased the Halo.

62. Specifically, within the week prior to making her purchase, Plaintiff Chenier viewed Defendant's video online (see Exhibit 4, the transcript) and reviewed Oreck's website, including Exhibit 1 posted thereon.  As a result of Defendants' misrepresentations, Plaintiff Chenier paid the near $600.00 purchase price for the Halo, believing that the exorbitant cost was justified due to the health benefits that the Halo was capable of providing. Plaintiff Chenier has been damaged in the amount of her full purchase price of the Oreck Halo vacuum by

1   the misrepresentations Defendants made regarding the Halo's scientifically

2   proven ability to kill molds, viruses, bacteria, germs and prevent the flu and other

3   diseases and/or by Defendants' breaches of warranty. Alternatively, Plaintiff

4   Chenier has been damaged by the difference in value between the Halo as

5   represented and/or warranted by Defendants and the actual value of the Halo as

6   delivered to her by Defendants.

7       63. Plaintiff Yosri saw the video advertisement for which the script is

8   attached hereto as Exhibit 4 on late night television in the two or three weeks

9   preceding March 10, 2009. A link to it was also forwarded to him by a co-

10  worker, and he viewed it again online during that same time period. Following

11  his viewings of the video, Yosri visited an Oreck store in Salt Lake City two or

12  three times in the two or three weeks preceding March 10, 2009. During those

13  visits, he reviewed copies of the advertisements attached hereto as Exhs. 2 and 5.

14      64. In reliance on the representations and warranties made by Oreck

15  regarding the ability of the UV-C light in the Halo vacuum cleaner to kill

16  bacteria, viruses and mold in carpets, Plaintiff Yosri purchased the Halo vacuum

17  cleaner for $599.99, on March 10, 2009, at the Oreck store in Salt Lake City. If

18  not for the representations and warranties about the potential health benefits of

19  the Halo vacuum cleaner, Plaintiff Yosri would not have purchased it. Plaintiff

20  Yosri has been damaged in the amount of the full purchase price of the Oreck

21  Halo vacuum by the misrepresentations Defendants made regarding the Halo's

22  scientifically proven ability to kill molds, viruses, bacteria, germs and prevent the

23  flu and other diseases and/or by Defendants' breaches of warranty. Alternatively,

24  Plaintiff Yosri has been damaged by the difference in value between the Halo as

25  represented and/or warranted by Defendants and the actual value of the Halo as

26  delivered to him by Defendants.

27      65. After viewing the representations made in the advertisements,

28  infomercials and commercials as depicted in or substantially similar to Exhibit

10, and in reliance upon them and Defendants' warranties, Plaintiff Stiepleman on February 23, 2011, purchased a ProShield Plus air purifier from Oreck for $370.95. The regular retail price of the ProShield Plus was $399.95 plus $21.00 in state tax; however, Mr. Stiepleman was credited with an "AIR12 GU DISCOUNT" of $50.00. Plaintiff Stiepleman paid the nearly $400.00 purchase price for the ProShield Plus, believing that the exorbitant cost was justified due to the health benefits that the ProShield Plus was capable of providing.

66. In making his initial purchase decision, Plaintiff Stiepleman relied on Oreck's misrepresentations concerning the ProShield Plus's ability to prevent common illnesses which Oreck led him to believe was scientifically proven. Plaintiff Stiepleman began using the ProShield Plus on February 24, 2011. Shortly thereafter he began experiencing unpleasant side effects, including headaches, and continued to get sick. He contacted Oreck who advised him to move the unit further away from his bed to avoid getting headaches.

67. If Plaintiff Stiepleman had known that the claims made regarding the Oreck's air purifiers were false or misleading prior to making his purchasing decision, he would not have purchased the ProShield Plus. Plaintiff Stiepleman has been damaged in the amount of his full purchase price of the Oreck ProShield Plus by the misrepresentations Defendants made regarding the ProShield's scientifically proven ability to kill molds, viruses, bacteria, germs and prevent the flu and other diseases and/or by Defendants' breaches of warranty. Alternatively, Plaintiff Stiepleman has been damaged by the difference in value between the Oreck ProShield Plus air purifier as represented and/or warranted by Defendants and the actual value of the Oreck Proshield Plus air purifier as delivered to him by Defendants.

68. After seeing the Oreck infomercial on more than one occasion, and relying upon the truthfulness of the representations made in it regarding the ability of the Oreck Halo vacuum to kill and reduce may germs and bacteria while

vacuuming his home, Plaintiff Ruscitti purchased an Oreck Halo vacuum from an Oreck Home Care Center in Illinois on June 10, 2010. Plaintiff Ruscitti would not have purchased the Oreck Halo vacuum, as opposed to any other vacuum, but for the representations made about the health benefits of the Halo vacuum. Mr. Ruscitti paid $599.95 for the vacuum, a substantial premium over the price of a similar vacuum for which such misrepresentations and warranties were not made. Plaintiff Ruscitti has been damaged in the amount of his full purchase price of the Oreck Halo vacuum by the misrepresentations Defendants made regarding the Halo's alleged scientifically proven ability to kill molds, viruses, bacteria, germs and prevent the flu and other diseases and/or by Defendants' breaches of warranty. Alternatively, Plaintiff Ruscitti has been damaged by the difference in value between the Halo as represented and/or warranted by Defendants and the actual value of the Halo as delivered to him by Defendants.

69. Plaintiff Latta originally went on the internet in search of a vacuum in mid-May, 2011. Having landed on what she believes to be Defendant Orecks' website, Plaintiff first viewed the Oreck Halo vacuum as well as representations lauding the Oreck Halo vacuum's efficacy in fighting allergies. Plaintiff Latta believes that she viewed representations as to the efficacy in fighting bacteria, mold, dust mites, and other germs as well as recalling representations regarding allergies as she suffers from allergies. Plaintiff Latta relied upon the representations related to the efficacy of the Halo vacuum in eliminating germs, bacteria, viruses, molds, dust mites, and other allergens in making the decision to purchase the vacuum. Now set on purchasing the Oreck Halo vacuum, Plaintiff searched the internet for better pricing or perhaps better delivery and/or pick-up options. Plaintiff landed on Grainger's site which sold the product and had the option to pick it up near Plaintiff's residence, which she also found appealing. Thus, she ordered the product from Grainger and purchased it on May 31, 2011. As a result of Defendants' misrepresentations, Plaintiff Latta paid $630.50, pre-

tax, to purchase the Oreck Halo vacuum, believing that the exorbitant cost was justified due to the health benefits that the Oreck Halo vacuum was capable of providing. Plaintiff Latta has been damaged in the amount of her full purchase price of the Oreck Halo vacuum by the misrepresentations Defendants made regarding the Halo's ability to provide her with a healthier home and reduced risk of illness and allergies, and/or by Defendants' breaches of warranty. Alternatively, Plaintiff Latta has been damaged by the difference in value between the Halo as represented and/or warranted by Defendants and the actual value of the Halo as delivered to her by Defendants.

70.   After seeing Oreck's infomercial and visiting Oreck's website, and in reliance upon the truthfulness of Oreck's representations contained therein concerning the health benefits of the Products, and upon Defendants' warranties, in March of 2010, Plaintiff Paragin purchased via the Internet both an Oreck Halo vacuum and a ProShield Air Purifier. Plaintiff Paragin would not have purchased either the Halo vacuum or the ProShield Plus air purifier had he known that the representations made about the Products were false or misleading. Plaintiff Paragin has been damaged as a result of paying for the purchase of the Products. Plaintiff Paragin has been damaged in the amount of the full purchase prices of the Oreck Halo vacuum and by the ProShield Plus air purifier he purchased in reliance on the misrepresentations Defendants made regarding these Products' scientifically proven ability to kill molds, viruses, bacteria, germs and prevent the flu and other diseases and/or by Defendants' breaches of warranty.  Alternatively, Plaintiff Paragin has been damaged by the difference in value between the Products purchased as represented and/or warranted by Defendants and the actual value of the Products delivered by Defendants.

### C. PLAINTIFFS' HARM

71. Defendants represented and warranted that the Products: (a) reduce the risk of or prevent the flu; (b) reduce the risk of or prevent illnesses or ailments

caused by bacteria, viruses, molds, or allergens, such as the common cold, diarrhea, upset stomachs, asthma, and allergy symptoms; and (c) will eliminate all or virtually all germs, bacteria, dust mites, molds, viruses and allergens from a user's floor, or will eliminate all or virtually all indoor airborne particles under normal living conditions.   Plaintiffs contend that these representations and warranties by Defendants were false and/or misleading because the Oreck products at issue were not capable of performing as represented and warranted. Plaintiffs and Class members would not have purchased the Products if Defendants had not represented and warranted as above.   Alternatively, but for Defendants' representations and warranties, Plaintiffs and Class members would not have paid the exorbitant prices they paid for the Products.   Plaintiffs, and any ordinary consumers, would reasonably expect products that are advertised, marketed and warranted as possessing certain characteristics, uses and benefits to in fact possess those characteristics, uses and benefits, particularly when the Products are sold at prices that greatly exceed those of competing products on the market.

72. Because Defendants misrepresented the attributes of the Products, they were able to charge higher prices for these Products in comparison with products that do not purport to offer the alleged health benefits of the Products.   Plaintiffs and Class members were misled into paying these higher prices because they believed that the Products were scientifically proven to kill mold, bacteria and viruses, including the flu.

73. In other words, Plaintiffs and Class members did not get the benefit of their bargains.   Plaintiffs and Class members were misled into purchasing Products that did not meet their expectations.   The Products are not as valuable as the prices Plaintiffs and Class members paid for them.

74. Therefore, Plaintiffs and Class members suffered actual damages as a result of Oreck's actions.   Plaintiffs and the other Class members seek either full

refund of the purchase prices of the Products or recovery of the difference between the prices paid for the Products and the prices that the Products would have commanded in the marketplace if they had been marketed truthfully.

## D. *DEFENDANTS ORECK CORPORATION, ORECK DIRECT AND ORECK HOMECARE AND THEIR WARRANTIES*

75. Defendant Oreck Corporation, Oreck Direct and Oreck Homecare provided written warranties with the Products that ran directly to the end users of the Products; that is, directly to Plaintiffs and the members of the Class. A written warranty for the Halo is contained in its User's Guide, a copy of which is attached hereto as Exhibit 13. In it, these Defendants did not purport to disclaim any implied warranties. A written warranty for the ProShield is contained in its User's Guide, a copy of which is attached hereto as Exhibit 14. In it, Defendants purported to disclaim implied warranties, but such disclaimer is ineffective pursuant to 15 U.S.C. § 2308(a) & (c). A written warranty for the XL Professional is contained in the User's Guide, a copy of which is attached hereto as Exhibit 15. In it, Defendants did not purport to disclaim any implied warranties.

## V.

## CLASS ACTION ALLEGATIONS

76. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

> All residents (individuals, corporations, partnerships and all legal entities) of the United States (the fifty states, the District of Columbia, Puerto Rico and the U.S. Virgin Islands) who, within the applicable statute of limitations purchased a new Halo vacuum or Oreck XL Professional, ProShield and/or ProShield Plus air purifier

from Defendants, Defendants' franchisees or Defendants' authorized dealers.

77. Plaintiffs Edge, Chenier, and Latta also seek to represent a subclass of all Class members who are residents of California and who purchased the Products primarily for personal, household or family use (the "California Subclass").

78. Plaintiff Gonzalez also seeks to represent a subclass of all Class members who are residents of New York and who purchased the Products primarily for personal, household or family use (the "New York Subclass").

79. Plaintiff Yosri also seeks to represent a subclass of all Class members who are residents of Utah and who purchased the Products primarily for personal, household or family use (the "Utah Subclass").

80. Plaintiff Stiepleman also seeks to represent a subclass of all Class members who are residents of Florida and who purchased the Products primarily for personal, household or family use (the "Florida Subclass").

81. Plaintiff Ruscitti also seeks to represent a subclass of all Class members who are residents of Illinois and who purchased the Products primarily for personal, household or family use (the "Illinois Subclass").

82. Plaintiff Paragin also seeks to represent a subclass of all Class members who are residents of Ohio and who purchased the Products primarily for personal, household or family use (the "Ohio Subclass").

83. Excluded from the Class are Defendants as well as the Judge and Magistrate Judge assigned to the matter.

84. The requirements of Fed. R. Civ. P. 23(a) and (b)(3) are met in this case. The Class and the Subclasses are each so numerous that joinder of all members is impracticable. Although discovery will be necessary to establish the exact sizes of the Class and Subclasses, it is likely, based on the nature of

Defendants' business, that the Class numbers in the tens of thousands or millions, and that each Subclass numbers in the hundreds or tens of thousands.

85. There are questions of fact and law common to the Class that predominate over any questions affecting only individual members.  The common questions include:

      a.  Whether Oreck  expressly warranted in writing that the Products could kill up to 99.9% of potentially illness-causing bacteria, mold and viruses;

      b.  Whether Oreck breached express written warranties that the Products could kill potentially illness-causing bacteria, mold and viruses;

      c.  Whether Oreck breached the implied warranty of merchantability for a particular purpose and/or for its ordinary purpose;

      d.  Whether Oreck's breaches of warranties damaged Plaintiffs and the Class; and

      e.  The appropriate measure of damages to be received by Plaintiffs and the Class.

86. Plaintiff Edge, Chenier, Latta and the members of the California Subclass have questions of fact and law common to them that predominate over any questions affecting only individual members of the California Subclass. These common questions include:

      a.  Whether Defendants violated CLRA § 1750, *et seq*.;

      b.  Whether Defendants violated Business and Professions Code § 17200, *et seq*.;

      c.  Whether Oreck violated the Song-Beverly Consumer Warranty Act;

      d.  Whether Defendants violated California Civil Code § 17500, and

e.  The appropriate measure of damages to be received by Plaintiffs and the California Subclass.

87. Plaintiff Gonzalez and the members of the New York Subclass have questions of fact and law common to them that predominate over any questions affecting only individual members of the New York Subclass.  These common questions include:

a.  Whether, by the misrepresentation made in their advertising, Defendants violated the New York General Business Law §349;

b.  Whether, by the misrepresentations made in their advertising, Defendants violated the New York General Business Law §350, and,

c.  The appropriate measure of damages to be received by Plaintiffs and the New York Subclass.

88. Plaintiff Yosri and the members of the Utah Subclass have questions of fact and law common to them, which common questions predominate over any questions only affecting individual members of the Utah Subclass.  These common questions include:

a.  Whether Defendants violated the Utah Consumer Sales Practices Act §13-11-1, *et seq.*;

b.  Whether Defendants violated the Utah Truth in Advertising Act § 13-11a-1, *et seq.* and,

c.  The appropriate measure of damages to be received by Plaintiffs and the Utah Subclass.

89. Plaintiff Stiepleman and the Florida Subclass have questions of fact and law common to them, which common questions predominate over any questions affecting only individual members of the Florida Subclass.  These common questions include:

54

1      a.  Whether Defendants violated the Florida Deceptive and Unfair
2         Trade Practices Act, Fla. Stat. §501.201 *et seq.* and
3      b.  The appropriate measure of damages to be received by Plaintiffs
4         and the Florida Subclass.

5   90. Plaintiff Ruscitti and the members of the Illinois Subclass have
6   questions of fact and law common to them, which common questions
7   predominate over any questions affecting only individual members of the Illinois
8   Subclass.  These common questions include:

9      a.  Whether Oreck violated the Illinois Consumer Fraud and
10        Deceptive Businesses Act, §815 ILCS 505/1 *et seq*. and,
11     b.  The appropriate measure of damages to be received by Plaintiffs
12        and the Illinois Subclass.

13  91. Plaintiff Paragin and the members of the Ohio Subclass have questions
14  of fact and law common to them, which common questions predominate over any
15  questions affecting only individual members of the Ohio Subclass.   These
16  common questions include:

17     a.  Whether Defendants Oreck Corporation, Oreck Direct, LLC,
18        Oreck Homecare, LLC and Mr. Oreck violated the Ohio
19        Consumer Sales Practices Act, Ohio Revised Code Section
20        1345.01, *et seq.;*
21     b.  Whether Defendants Oreck Corporation, Oreck Direct, LLC,
22        Oreck Homecare, LLC and Mr. Oreck violated the Ohio
23        Deceptive Trade Practices Act, Ohio Revised Code Section 4165,
24        *et. seq.;*
25     c.  Whether Defendants Oreck Corporation, Oreck Direct, LLC,
26        Oreck Homecare, LLC and Mr. Oreck are liable for Tortious
27        Breach of Warranty under Ohio law and,
28

d. The appropriate measure of damages to be received by Plaintiffs and the Ohio Subclass.

92. Plaintiffs' claims are typical of the claims of the other members of the Class and of their respective Subclasses because they arise under the same legal theories and out of the same consistent practices of Defendants. Plaintiffs can and will fairly and adequately represent and protect the interests of the Class and their respective Subclasses and have no interests that conflict with the interests of the Class and their respective Subclasses. This is so because:

a. All of the questions of law and fact regarding the liability of the Defendants are common to the Class and Subclasses and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of the Defendants to all Class and Subclass members;

b. Plaintiffs and their counsel have no interests different from or in conflict with the interests of the other members of the Class and the Subclasses;

c. Plaintiffs have retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the Class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class

93. Defendants' actions have affected numerous consumers in a similar way. This class action is superior to any other method for remedying Defendants' actions given that common questions of fact and law predominate and that without the representation provided by Plaintiffs, it is unlikely that any class

56

members would receive legal representation to obtain the remedies specified by relevant statutes and the common law.  Class treatment is also superior because no unusual difficulties will be experienced in managing this case as a class action and doing so will limit the great expense and drain on judicial resources associated with thousands of individual claims and suits.

94. Repeating the allegations above with respect to the requirements of Rule 23(a), Plaintiff alternatively seek, if it is determined that the assets of Defendants are insufficient to fully satisfy the claims of the numerous individuals who will comprise the Class, certification of a "limited fund" class pursuant to Rule 23(b)(1)(B).

## VI.

## CAUSES OF ACTION

## Pre-Suit Notices

95.  With respect to all causes of action asserted below, on one or more occasions, each Plaintiff has given to Oreck Corporation one or more of all pre-suit and pre-claim notices required by law, including notices on at least the following dates: August 27, 2011, September 14, 2011, October 7, 2011 and February 8, 2012. In addition, all Plaintiffs made available to Oreck, through its counsel,  the product(s) that they purchased so that Oreck had the opportunity to repair or replace the product(s) to make them conform to the statements of fact Oreck made about the Products, i.e. that use of the Products could have certain health benefits including prevention of common illnesses, including the flu and colds, by elimination up to 99% (or more) of germs, viruses, molds and bacteria in consumers' homes.

## COUNT I – Plaintiffs and the National Class Against Oreck Corporation – MMWA

96.  Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth here verbatim.

57

97. The Products are consumer products as defined in 15 U.S.C. § 2301(1).

98. Plaintiffs and all the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

99. Defendant Oreck Corporation is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) & (5).

100. In connection with their sale of the Products, Defendant Oreck Corporation issued written warranties as defined in 15 U.S.C. § 2301(6) via their written advertisements, product labeling and written User's Guides, which warranted that the Products could kill up to 99.9% of potentially illness-causing bacteria, viruses, molds and allergens, including the flu virus, from floors, carpets, and the air and thereby substantially reduced the risk of exposure to illness or ailments caused by these pathogens.

101. In connection with their sale of the Products, Oreck Corporation gave to all the putative Class Members who purchased one or more of the Products an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. Specifically, Oreck Corporation warranted that the Products were fit for their ordinary purpose as germ eliminating cleaning products, would pass without objection in the trade, and would conform to the promises and affirmations of fact made on their containers or labels.

102. Oreck Corporation is liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1), because the Products failed to comply with their written warranties and the implied warranty of merchantability. Specifically, the Products do not kill up to 99.9% of potentially illness-causing bacteria, viruses, molds and allergens on floors, carpets and in the air and therefore do not substantially reduce the risk of exposure to illnesses or ailments caused by those pathogens. Further, because of this, the Products are not fit for their ordinary use as germ eliminating cleaning products because they do not in fact kill up to 99.9% of potentially illness causing bacteria, viruses molds and allergens. Further, the

Products do not pass without objection in the trade because they are incapable of performing and so do not in fact perform the functions that they were claimed to perform because they do not in fact kill up to 99.9% of potentially illness causing bacteria, viruses, molds, and allergens.  Further, the Halo did not conform to the promise or affirmation of fact made on its label – the "Halo" trademark – which represented that the vacuum cleaner had the germ and virus fighting properties described above in Section IV(C) that it did not have when used in an ordinary manner for ordinary household purposes.   Further, the Air Purifiers did not conform to the promises and affirmations of fact made on their packaging and labels because they did not capture and destroy bacteria, molds, viruses and fungi and thereby provide a healthier, cleaner home environment.

103.   Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to recover the damages caused to them by Oreck Corporation's' breaches of written and implied warranties, which damages either constitute the full purchase prices of the Products or the difference in value between the Products as warranted and the Products as actually sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class for and in connection with the commencement and prosecution of this action.

## COUNT II – Plaintiffs and the National Class Against Oreck Corporation – Breach of Express Warranties

104.   Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

105.   Oreck Corporation's affirmations of fact and promises made to Plaintiffs and the Class regarding the Products and their descriptions of the Products as contained in Defendants' advertisements, product packaging and

1   labeling and User's Guides became part of the basis of the bargain between Oreck
2   Corporation and Plaintiffs and the Class, thereby creating express warranties that
3   the Products would conform to those affirmations of fact, promises and
4   descriptions.  Namely, Oreck Corporation expressly warranted to Plaintiffs and
5   the Class that the Products would could kill up to 99% (or more) of potentially
6   illness-causing bacteria, viruses, molds and allergens on floors, carpets and in the
7   air and thereby substantially reduce the risk of exposure to ailments associated
8   with those pathogens, when in fact the Products could not kill up to 99% (or
9   more) of potentially illness-causing bacteria, viruses, molds and allergens on
10  floors, carpets and in the air.  Defendants breached those express warranties
11  because the Products do not eliminate these pathogens as warranted.

12      106.  As a proximate result of Oreck Corporation's breaches of express
13  warranties, Plaintiffs and the Class have been damaged either in the full amount
14  of the purchase prices of the Products or in the difference in value between the
15  Products as warranted and the Products as actually sold.

16  **COUNT III – Plaintiffs and Vast Majority of the National Class Against**
17  **Oreck Corporation–**
18  **Breach of the UCC Implied Warranty of Merchantability**

19      107.  Plaintiffs and those members of the Class who purchased one or
20  more of the Products directly from Oreck Corporation, and those who purchased
21  from franchisees or authorized dealers who reside in non-privity UCC states
22  (states which have abolished, either by statute or case law, the vertical privity
23  requirement for consumer transactions) for purposes of the implied warranty of
24  merchantability[14] incorporate herein by reference each preceding and succeeding
25  paragraph as if fully set forth verbatim.

26
27
28  [14] Alaska, Arkansas, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine,

108.   Oreck Corporation is a "merchant" as to the Products within the meaning of the Uniform Commercial Code ("UCC").   It manufactured, distributed and marketed the Products, which are "goods" within the meaning of the UCC. Consequently, it impliedly warranted that the Products were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, and that they would conform to the promises or affirmation of fact made on their containers or labels.

109. Oreck Corporation breached the implied warranties of merchantability because the Products would not pass without objection in the trade, in that they were incapable of performing the functions they were claimed to perform; namely killing bacteria, viruses and other pathogens.

110. Oreck Corporation further breached implied warranties of merchantability because the Products were not fit for the ordinary pathogen eliminating purposes for which they are used.

111. Oreck Corporation further breached implied warranties of merchantability because the Products did not conform to the promises or affirmations of fact made on their labels.  For example, the Halo contains a label bearing the "Halo" trademark.   By long association, the trademark "Halo" constituted a promise or affirmation of fact that the Halo would kill illness causing pathogens.  Such promises or affirmations of fact were not true.

112.   Oreck Corporation further breached implied warranties of merchantability because the Products did not conform to the promises and

---

Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, West Virginia and Wyoming.

affirmations of fact made on their packaging and product labels, including but not limited to the user's guide for the Halo vacuum, which was attached to the vacuum and visible to purchasers of the vacuum. Contrary to Defendants' packaging and product labels, including but not limited to the user's guide for the Halo vacuum, the Products do not and are not proven to meet the claims made, as discussed in more detail in Section IV above, including but not limited to paragraphs 54 and 55 and Section IV(c).

113. As a proximate result of Oreck Corporation's breaches of the implied warranty of merchantability, Plaintiffs and Class members who purchased directly from Oreck Corporation or who live in non-privity UCC states for purposes of implied warranties of merchantability were damaged either in the amount of the full purchase prices they paid for the Products or the difference in value between the Products as warranted and the Products as actually sold.

**COUNT IV – Plaintiffs Edge, Chenier, Latta and the California Subclass Against Oreck Corporation – Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.**

114. Plaintiffs Edge, Chenier, Latta and the California Subclass incorporate herein by reference all preceding and subsequent paragraphs as if fully set forth here verbatim.

115. In violation of Civil Code section 1750, *et seq*. (the "CLRA"), Oreck Corporation has engaged in unfair and deceptive acts and practices in the course of transactions with Plaintiff Edge, Chenier, Latta and the California Subclass, and such transactions were intended to and did result in the sales of goods or services to Plaintiffs Edge, Chenier, Latta and the California Subclass. Plaintiffs Edge, Chenier, Latta and the California Subclass members are "consumers" as that term is used in the CLRA because they sought or acquired Oreck Corporation's goods or services for personal, family, or household purposes. Defendants' past acts and practices include, but are not limited to:

a.  Oreck Corporation's representations that the Products had characteristics, uses, and benefits that they did not have, in violation of Civil Code § 1770(a)(5) i.e the Products do not have the ability in normal household use to kill up to 99.9% of potentially illness causing bacteria, viruses, molds, and allergens.; and

b.  Oreck Corporation's representations that the Products were of a particular standard, quality and grade when they were of another, in violation of Civil Code § 1770(a)(7) i.e the Products do not have the ability in normal household use to kill up to 99.9% of potentially illness causing bacteria, viruses, molds, and allergens.

116.  Oreck Corporation's violations of Civil Code § 1770 have proximately caused damage to Plaintiff Edge, Chenier, Latta, and the other California Subclass members in the amounts of the full purchase price of the Products or, alternatively, in the difference in values between the Products as represented and the Products as actually sold.   Thus, pursuant to Civil Code §1780, Plaintiffs Edge, Chenier, and Latta assert against Oreck Corporation claims for restitution, actual damages, and any other relief that the court deems proper, plus reasonable attorneys' fees and court costs.

**COUNT V – Plaintiffs Edge, Chenier, and Latta and the California Subclass Against Oreck Corporation, Oreck Direct and Oreck Homecare – Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**

117.  Plaintiffs Edge, Chenier, and Latta and the California Subclass incorporate herein by reference the preceding and subsequent paragraphs as if fully set forth here verbatim.

118.  In violation of California Business and Professions Code § 17200, *et seq.*, Defendants Oreck Corporation, Oreck Direct and Oreck Homecare's conduct in this regard has been unfair, unlawful and fraudulent.

119. By engaging in the above-described acts and practices, Defendants Oreck Corporation, Oreck Direct and Oreck Homecare have committed one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiffs Edge, Chenier, and Latta and the California Subclass have suffered injury-in-fact and have lost money and or property.

120. Oreck Corporation, Oreck Direct and Oreck Homecare's business acts and practices are unlawful, in part, because they violate California Business and Professions Code § 17500, *et seq.*, which prohibits false advertising. Defendants Oreck Corporation, Oreck Direct and Oreck Homecare engaged in false advertising by making untrue and misleading statements relating to the Products, as detailed in Section IV(C) above, including those made in the infomercials and commercials, and written advertising.

121. Defendants Oreck Corporation, Oreck Direct and Oreck Homecare's business acts and practices are also unlawful in that they violate the California Consumer Legal Remedies Act. Defendants Oreck Corporation, Oreck Direct and Oreck Homecare are therefore in violation of the "unlawful" prong of the UCL.

122. Defendants Oreck Corporation, Oreck Direct and Oreck Homecare's acts and practices were fraudulent within the meaning of the UCL because they were likely to mislead the members of the public to whom they were directed because, as detailed in Section IV(C) above, in infomercials, TV commercials and written advertisements, Oreck Corporation, Oreck Direct and Oreck Homecare falsely represented that the Products could make one's home healthier by killing up to 99.9% of potentially illness causing bacteria, viruses, molds, and allergens.

123. Plaintiffs Edge, Chenier, and Latta and the California Subclass have suffered injury as a proximate result of Defendants Oreck Corporation, Oreck Direct and Oreck Homecare's actions and seek restitution in the full amount of

the purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the Products as sold.

### COUNT VI – Plaintiffs Edge, Chenier, and Latta and the California Subclass Against Oreck Corporation – Song-Berry Consumer Warranty Act

124.   Plaintiffs Edge, Chenier, and Latta and the California Subclass incorporate herein by reference each preceding and succeeding paragraph as if fully set forth here verbatim.

125.   Plaintiffs Edge, Chenier, and Latta and the members of the California Subclass are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

126.   Oreck Corporation's' Products are "consumer goods" within the meaning of Section 1791(a) of the California Civil Code.

127.   Oreck Corporation is a "manufacturer" of the Products pursuant to Section 1791(j) of the California Civil Code.

128.   As set forth in more detail above in paragraphs 1-124, Oreck Corporation breached both express and implied warranties given to Plaintiffs Edge, Chenier, and Latta and the California Subclass that did not work as claimed in Section IV(C).   Such breaches proximately caused damages to Plaintiffs Edge and Chenier and the California Subclass in the full amount of the purchase prices of the Products or, alternatively, the difference in value between the Products as warranted and the Products as sold.   In addition, pursuant to California Civil Code § 1794(d), Plaintiffs Edge, Chenier, and Latta and the California Subclass are entitled to recover a sum equal to the aggregate amount of their costs and expenses, including attorneys' fees based on actual time expended, determined by the Court to be reasonably incurred by them in connection with their commencement and prosecution of this action.

**COUNT VII – Plaintiffs Edge, Chenier, and Latta and the California Subclass against Oreck Corporation, Oreck Direct and Oreck Homecare– False Advertising- Cal. Bus. & Prof. Code § 17500**

129.    Plaintiffs Edge, Chenier, and Latta and the California Subclass incorporate herein by reference the preceding and subsequent paragraphs as if fully set forth here verbatim.

130.    Defendants Oreck Corporation, Oreck Direct and Oreck Homecare's acts and practices were false and/or misleading within the meaning of the Section 17500 because they were likely to mislead the members of the public to whom they were directed because, as detailed in Section IV(C) above, in infomercials, TV commercials and written advertisements, Oreck Corporation, Oreck Direct and Oreck Homecare falsely represented that the Products could make one's home healthier by killing up to 99.9% of potentially illness causing bacteria, viruses, molds, and allergens.

131.    Plaintiffs Edge, Chenier, and Latta and the California Subclass have suffered injury as a proximate result of Defendants Oreck Corporation, Oreck Direct and Oreck Homecare's actions and seek restitution in the full amount of the purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the Products as sold.

**COUNT VIII – Plaintiff Gonzalez and the New York Subclass Against Oreck Corporation, Oreck Direct and Oreck Homecare -- Violation of New York General Business Laws Art 22-A, §349 Deceptive Acts and Practices**

132.    Plaintiff Gonzalez and the New York Subclass restate each and every paragraph of this Complaint as if fully set forth herein.

133.    This cause of action is brought pursuant to New York's General Business Law, Art 22-A, §349.

134.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

135.   Defendants Oreck Corporation, Oreck Direct and Oreck Homecare have engaged in consumer-oriented conduct, directed to plaintiff Gonzalez and similarly situated consumers, that is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of § 349 of the N.Y. General Business Law.

136.   Specifically, through their television commercials, print ads, infomercials, websites, promotions, packaging, and product labels, such as those set forth in Exhibits 1, 2, 3, 10, 11 and 12, Defendants Oreck Corporation, Oreck Direct and Oreck Homecare have engaged in a pattern of, repetitive and uniform deceptive acts and practices by advertising, promoting, selling, and/or distributing the Products as effective and/or proven through laboratory and independent testing to:

      a. "…capture[ ] and destroy[ ] viruses, bacteria and germs.";

      b. "…capture and destroy many airborne bacteria, viruses, allergens…";

      c. "[h]elp reduce the flu…in the air in your home.";

      d. "protect [consumers] from exposure to colds and flu", as a "smart way to help reduce your chance of exposure to colds and flu in your home", while claiming it was the "Worst Flu Season In Years!";

      e. "remove 98% of …harmful particles";

      f. remove 99% of airborne dust particles that "carry things like germs, cold and flu viruses, bacteria, mold and allergens [that] could be spreading illnesses like the influenza virus";

      g. act as "A NEW WAY TO HELP BATTLE THE FLU"; and

h. "capture and destroy many airborne allergens and viruses like the flu."

137.    In fact, the Products did not conform to the promises and affirmations of fact made in the Oreck Corporation, Oreck Direct and Oreck Homecare television commercials, print ads, infomercials, websites, promotions, and product labels.  Contrary to Oreck Corporation, Oreck Direct and Oreck Homecare's advertising, promotions, websites and labels, the Products did not, do not and are not proven to:

     a. "…capture[ ] and destroy[ ] viruses, bacteria and germs.";

     b. "…capture and destroy many airborne bacteria, viruses, allergens…";

     c. "[h]elp reduce the flu…in the air in your home.";

     d. "protect [consumers] from exposure to colds and flu", as a "smart way to help reduce your chance of exposure to colds and flu in your home", while claiming it was the "Worst Flu Season In Years!";

     e. "remove 98% of …harmful particles";

     f. remove 99% of airborne dust particles that "carry things like germs, cold and flu viruses, bacteria, mold and allergens [that] could be spreading illnesses like the influenza virus";

     g. act as "A NEW WAY TO HELP BATTLE THE FLU"; and

     h. "capture and destroy many airborne allergens and viruses like the flu".

(See Exhibits 1, 2, 3, 10, 11 and 12)

138.  Because Oreck Corporation, Oreck Direct and Oreck Homecare spread their deceptive, false and misleading message through a widespread, uniform and repetitive advertising campaign throughout the United States, including the State of New York, Defendants' misrepresentations were conveyed

68

to the public at large, including Plaintiff Gonzalez and other similarly situated consumers in the State of New York, and thereby affected not just Plaintiff Gonzalez, but also affected similarly situated consumers throughout the State of New York.

139.   Before her purchase of the Air Purifiers in 2008, while in the State of New York, Plaintiff Gonzalez saw advertisements such as those depicted in Exhibits 1, 2, 3, 10, 11 and 12, or ones substantially similar, and she visited Defendants' website that also made claims about the Products substantially similar to the claims made in Exhibits 1, 2, 3, 10, 11 and 12.

140.   Because Oreck Corporation, Oreck Direct and Oreck Homecare's advertisements and promotions included, among other statements, deceptive representations about laboratory proof, independent testing, scientific proof and health benefits, cold, flu and illness prevention benefits, Oreck Corporation, Oreck Direct and Oreck Homecare's  false, misleading and deceptive statements concerning the uses, performance and health benefits of the Products are and were likely to mislead a reasonable consumer acting reasonably under the circumstances, and Plaintiff Gonzalez was, in fact, misled.

141.   Oreck Corporation, Oreck Direct and Oreck Homecare's' false, misleading and deceptive statements of fact have directly caused consumer injury or harm to Plaintiff Gonzalez and the public interest.  Plaintiff Gonzalez was indeed directly and proximately injured by Oreck Corporation, Oreck Direct and Oreck Homecare's deceptive acts and practices in that before she purchased the Air Purifiers, she viewed the advertisements about the Products such as those depicted in Exhibits 1, 2, 3, 11, 12 and 13, or ones substantially similar, and visited Oreck Corporation, Oreck Direct and Oreck Homecare's website where claims substantially similar to those in Exhibits 1, 2, 3, 10, 11 and 12 were made, and relied upon Oreck Corporation, Oreck Direct and Oreck Homecare's deceptive claims that the Products would and were otherwise proven to:

    a. "…capture[ ] and destroy[ ] viruses, bacteria and germs.";

    b. "…capture and destroy many airborne bacteria, viruses, allergens…";

    c. "[h]elp reduce the flu…in the air in your home.";

    d. "protect [consumers] from exposure to colds and flu", as a "smart way to help reduce your chance of exposure to colds and flu in your home", while claiming it was the "Worst Flu Season In Years!";

    e. "remove 98% of …harmful particles";

    f. remove 99% of airborne dust particles that "carry things like germs, cold and flu viruses, bacteria, mold and allergens [that] could be spreading illnesses like the influenza virus";

    g. "A NEW WAY TO HELP BATTLE THE FLU"; and

    h. "capture and destroy many airborne allergens and viruses like the flu."

Plaintiff Gonzalez purchased three Air Purifiers and grossly overpaid for the three Air Purifiers.

142.   As a result of Defendants' unfair and deceptive business practices, Plaintiff Gonzalez and the New York Subclass have suffered injury and damages as the result of their purchasing one or more of the Products.  Plaintiff Gonzalez and the New York subclass have suffered injury and seek restitution, including the full amount of the purchase prices paid for the Products or, alternatively, the difference in value between the Products as represented and the Products as sold.

143.   Plaintiff Gonzalez and each member of the New York subclass seek such restitution or fifty dollars, whichever is greater, as well as reasonable attorneys fees and costs.

**COUNT IX – Plaintiff Gonzalez and the New York Subclass Against Oreck**

**Corporation, Oreck Direct and Oreck Homecare --**

**Violation of New York General Business Laws**

**Art 22-A, §350 False Advertising**

144.   Plaintiff Gonzalez and the New York Subclass restate each and every paragraph of this Complaint as if fully set forth herein.

145.   This cause of action is brought pursuant to New York's General Business Law, Art 22-A, §350.

146.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

147.   Oreck Corporation, Oreck Direct and Oreck Homecare   have engaged and are engaging in consumer-oriented conduct, directed to Plaintiff Gonzalez and similarly situated consumers, that is deceptive or misleading in a material way, constituting false advertising in violation of § 350 of the N.Y. General Business Law.

148.   Specifically, through their television commercials, print ads, infomercials, websites, promotions, and product labels, such as those set forth in Exhibits 1, 2, 3, 10, 11 and 12, Oreck Corporation, Oreck Direct and Oreck Homecare have engaged in a willful and pattern of, repetitive and uniform false advertising that the Products were effective and/or proven through laboratory and independent testing to:

      a.  "…capture[ ] and destroy[ ] viruses, bacteria and germs.";

      b.  "…capture  and  destroy  many  airborne  bacteria,  viruses, allergens…";

      c.  "[h]elp reduce the flu…in the air in your home.";

      d.   "protect [consumers] from exposure to colds and flu", as a "smart way to help reduce your chance of exposure to colds and

flu in your home", while claiming it was the "Worst Flu Season In Years!";

    e.  "remove 98% of …harmful particles";

    f.  remove 99% of airborne dust particles that "carry things like germs, cold and flu viruses, bacteria, mold and allergens [that] could be spreading illnesses like the influenza virus";

    g.  act as "A NEW WAY TO HELP BATTLE THE FLU"; and

    h.  "capture and destroy many airborne allergens and viruses like the flu".

    149.  Before her purchase of the Air Purifiers in 2008, while in the state of New York, Plaintiff Gonzalez saw and relied upon the advertisements of the Products such as those depicted in Exhibits 1, 2, 3, 10, 11 and 12, or ones substantially similar, and she visited Defendants' website that also made claims about the Products substantially similar to the claims made in Exhibits 1, 2, 3, 10, 11 and 12.

    150.  Oreck Corporation, Oreck Direct and Oreck Homecare's false advertising was misleading in a material respect because the Air Purifiers Products did not, do not and are not proven to:

    a.  "…capture[ ] and destroy[ ] viruses, bacteria and germs.";

    b.  "…capture and destroy many airborne bacteria, viruses, allergens…";

    c.  "[h]elp reduce the flu…in the air in your home.";

    d.  "protect [consumers] from exposure to colds and flu", as a "smart way to help reduce your chance of exposure to colds and flu in your home", while claiming it was the "Worst Flu Season In Years!";

    e.  "remove 98% of …harmful particles";

f.  remove 99% of airborne dust particles that "carry things like germs, cold and flu viruses, bacteria, mold and allergens [that] could be spreading illnesses like the influenza virus";

g.  act as "A NEW WAY TO HELP BATTLE THE FLU"; and

h.  "capture and destroy many airborne allergens and viruses like the flu".

(See Exhibits 1, 2, 3, 10, 11 and 12)

151.  Because Oreck Corporation, Oreck Direct and Oreck Homecare spread their false advertising through a widespread, uniform and repetitive advertising campaign throughout the United States, including the State of New York, Oreck Corporation, Oreck Direct and Oreck Homecare's false advertising was conveyed to and had an impact on the public and consumers at large, including Plaintiff Gonzalez and other similarly situated consumers in the State of New York, and thereby affected not just Plaintiff Gonzalez, but also affected similarly situated consumers throughout the State of New York.

152.  Because Oreck Corporation, Oreck Direct and Oreck Homecare 'sfalse advertisements included, among other statements, deceptive representations about laboratory proof, independent testing, scientific proof, health benefits, cold, flu and illness prevention benefits, Oreck Corporation, Oreck Direct and Oreck Homecare's false, misleading and deceptive statements of fact are and were likely to mislead a reasonable consumer acting reasonably under the circumstances, and Plaintiff Gonzalez was, in fact, misled and deceived by their false advertising.

153.  As a direct and proximate result of Oreck Corporation, Oreck Direct and Oreck Homecare's false advertising, Plaintiff Gonzalez was injured because she was misled and deceived by the false advertising in that she relied upon the false advertisements in deciding to purchase the Products at a substantial price

premium over ordinary air purifiers and the Products did not and do not perform as advertised in that they do not and are not proven to:

    a.  "…capture[ ] and destroy[ ] viruses, bacteria and germs.";

    b.  "…capture and destroy many airborne bacteria, viruses, allergens…";

    c.  "[h]elp reduce the flu…in the air in your home.";

    d.  "protect [consumers] from exposure to colds and flu", as a "smart way to help reduce your chance of exposure to colds and flu in your home", while claiming it was the "Worst Flu Season In Years!";

    e.  "remove 98% of …harmful particles";

    f.  remove 99% of airborne dust particles that "carry things like germs, cold and flu viruses, bacteria, mold and allergens [that] could be spreading illnesses like the influenza virus";

    g.  act as "A NEW WAY TO HELP BATTLE THE FLU"; and

    h.  "capture and destroy many airborne allergens and viruses like the flu."

154.  As a result of Oreck Corporation, Oreck Direct and Oreck Homecare's false advertising, Plaintiff Gonzalez and the New York Subclass have suffered and continue to suffer substantial injury, including irreparable injury and damages as the result of their purchasing one or more of the Products. Plaintiff Gonzalez and the New York Subclass have suffered actual damages, including the full amount of the purchase prices paid for the Products or, alternatively, the difference in value between the Products as represented and the Products as sold.

**COUNT X – Plaintiff Yosri and the Utah Subclass Against All Defendants –**
**Utah Consumer Sales Practices Act**

155.   Plaintiff Yosri and the Utah Subclass incorporate herein by reference the preceding and subsequent paragraphs as fully set forth here verbatim.

156.   The sales of the Products to Plaintiff Yosri and the Utah Subclass constituted consumer transactions as defined by Utah Statute § 13-11-3(2)(a).

157.   All Defendants's conduct in connection with the sale of the Products to Plaintiff Yosri and the members of the Utah Subclass constituted unconscionable acts and practices in violation of Utah Statute § 13-11-5(1), in that Plaintiff Yosri and the members of the Utah Subclass were deprived of a meaningful choice in purchasing the Products and the sales were unreasonably favorable to All Defendants.  Because All Defendants falsely represented the pathogen-killing abilities of the Products, Plaintiff Yosri and the members of the Utah Subclass were deprived of the opportunity to decide whether to pay the Products' inflated prices even though they offered no benefits beyond lower-priced competitors.  Further, there was a gross disparity between the prices paid for the Products by Plaintiff Yosri and the members of the Utah Subclass and their actual values, given their inability to kill pathogens as represented, making the sales grossly unfair and resulting in unfair surprise to Plaintiff Yosri and the members of the Utah Subclass.

158.   Plaintiff Yosri and the Utah Subclass have suffered losses as a result of Defendants' violations of the Utah Consumer Sales Practices Act in the amount of their purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the Products as sold and are each entitled to recover the greater of those actual damages or $2,000.00, plus court costs, pursuant to Utah Statute § 13-11-19(2).

## COUNT XI – Plaintiff Yosri and the Utah Subclass Against Oreck –
## Violation of the Utah Truth in Advertising Act

159.   Plaintiff Yosri and the Utah Subclass incorporate herein by reference the preceding and subsequent paragraphs as if fully set forth here verbatim.

160.   All Defendants engaged in deceptive trade practices as defined in Utah Statute § 13-11a-3(1)(b)(c)(e) & (g) in the course of their business.   All Defendants caused the likelihood of confusion or misunderstanding as to the approval or certification of the Products by falsely claiming that their pathogen-eliminating properties had been scientifically proven when they had not been scientifically proven.   Similarly, All Defendants caused the likelihood of confusion or of misunderstanding as to the affiliation, connection, association or certification by another of the Products by falsely claiming that their pathogen eliminating properties had been scientifically proven.   Additionally, by falsely representing the pathogen eliminating properties of the Products that the Products did not have, Defendants falsely represented that they had characteristics, uses, benefits or qualities that they did not have, and that they were of a particular standard, quality or grade when they were of another.

161.   The Products fell within the definition of "goods and services" contained in Utah Statute § 13-11a-2(4) because they were items which were the subject of sales transactions.

162.   Plaintiff Yosri and the Utah Subclass were proximately damaged by All Defendants's deceptive trade practices in the amount of the full purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the value of the Products as sold.   Pursuant to Utah Statute § 13-11a-4(2)(b) & (c), Plaintiff Yosri and the members of the Utah Subclass are each entitled to recover from All Defendants their actual damages or $2,000.00, whichever is greater, plus costs and attorneys' fees.

### COUNT XII - Plaintiff Stiepleman and the Florida Subclass as Against
### Oreck Corporation, Oreck Direct and David Oreck -
### Violation of the Florida Deceptive and Unfair Trade Practices Act.

163.    Plaintiff Stiepleman and the Florida Subclass incorporate herein by reference the preceding and subsequent paragraphs as if fully set forth here verbatim.  Plaintiff Stiepleman for himself and on behalf of the members of the proposed Florida Subclass brings against Defendants Oreck Corporation, Oreck Direct and David Oreck this cause of action for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* (the "Act").   The express purpose of the Act is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."    Fla. Stat. §501.202(2).

164.  Plaintiff Stiepleman and the Florida Subclass members are "consumers" within the meaning of Fla. Stat. §501.203(7).

165.    Defendants were engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

166.    The sale of the Products  constituted "consumer transactions" within the scope of the Fla. Stat. §§ 501.201 to 501.213.

167.  Fla. Stat. §501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

168.  Fla. Stat. §501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have misled – consumers acting reasonably in the circumstances, and thus violate Fla. Stat. §501.204 and 21 U.S.C. §352.

169.   Oreck has violated the Act by engaging in the unfair and deceptive practices as described herein, as described in Section IV, including but not limited Section IV(c) above, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

170.   Plaintiff Stiepleman and the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they paid for the Products that they would not have purchased had they known the true facts about the Products.

171.   The damages suffered by Plaintiff Stiepleman and the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

172.   Pursuant to Fla. Stat. §501.211(1), Plaintiff Stiepleman and the Florida Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Oreck and for restitution and disgorgement.

173.   Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Stiepleman and the Florida Subclass make claims for damages and attorneys' fees and costs.

**COUNT XIII – Plaintiff Ruscitti  and the Illinois Subclass Against Oreck Corporation, Oreck Direct and Oreck Homecare**

**Illinois Consumer Fraud and Deceptive Businesses Act**

174.   Plaintiff Ruscitti and the Illinois Subclass incorporate herein by reference the preceding and subsequent paragraphs as fully set forth here verbatim.

175.   Plaintiff Ruscitti and the Illinois Subclass are "consumers" with the meaning of 815 ILCS §505/1(e).

176.  By selling the Products to Illinois consumers, Oreck Corporation Oreck Direct and Oreck Homecare engaged in "trade" or "commerce" as defined by §815 ILCS § 505/1(f).

177.  In violation of 815 ILCS §505/2 and 815 ILCS §510/2, Oreck Corporation, Oreck Direct and Oreck Homecare represented that the subject of consumer transactions (the Products) had sponsorship, approval, performance characteristics, accessories, uses or benefits that they did not, that they were of a particular standard, quality, grade, style or model when they were not, and indicated that they had been sold in accordance with previous representations, when they had not as more fully described in Section IV, including but not limited to Section IV(c), above. Defendants further violated Federal Trade Commission standards regarding deceptive practices and thus also violated Illinois law. 815 ILCS §505/2.  More specifically Oreck Corporation, Oreck Direct and Oreck Homecare violated the statute by falsely representing in infomercials, commercials and print advertisements, including those set out herein and in the exhibits attached hereto, that the Products had health benefits and could makes one's home healthier by killing up to 99.9% of potentially illness causing bacteria, viruses, molds, and allergens, when the truth is that the Products did not and do not have such capabilities.

178.  Plaintiff Ruscitti and the Illinois Subclass have suffered losses as a result of Oreck's violations of the Illinois Consumer Fraud and Deceptive Businesses Act in the amount of their purchase prices of the Products or, alternatively, the difference in value between the Products as represented and the Products as sold. 815 ILCS §505/10a.

179.  Plaintiff Ruscitti and the Illinois Subclass also seek recovery of their attorneys' fees pursuant to 815 ILCS §505/10a.

**COUNT XIV – Plaintiff Paragin and the Ohio Subclass Against Oreck Corporation, Oreck Direct, LLC, Oreck Homecare LLC, and David Oreck**

## **Violation of the Ohio Consumer Sales Practices Act**

180. Plaintiff Paragin and the Ohio Subclass restate each and every paragraph of the foregoing Complaint as if fully set forth herein.

181. This cause of action is brought pursuant to Ohio's Consumer Sales Practices Act, Ohio Revised Code § 1345.01, *et seq.* ("CSPA").

182. Plaintiff Paragin and the Ohio Subclass were consumers as defined by Ohio Revised Code § 1345.01(D).

183. Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck are suppliers as defined by Ohio Revised Code § 1345.01(C).

184. Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck entered into consumer transactions with Paragin and the Ohio Subclass as defined in Ohio Revised Code § 1345.01(A).

185. By deceptively, falsely, and unfairly representing to consumers that the Products: (a) reduced the risk of or prevents the flu (b) reduced the risk of or prevents illnesses or ailments caused by bacteria, viruses, molds, or allergens, such as the common cold, diarrhea, upset stomachs, asthma, and allergy symptoms; (c) will eliminate all or virtually all germs, bacteria, dust mites, molds, viruses or allergens from a user's floor, will eliminate all or virtually all indoor airborne particles under normal living conditions when they did not, Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck violated Ohio Revised Code §1345.02:

        (A)   by "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction";

        (B)(1)  by representing that the Products have "performance characteristics…uses, or benefits that [they] do [not] have";

(B)(2) by representing that the Products are "of a particular standard, quality, grade, style [or] prescription" when they are not,

(B)(4) by representing that the Products are "available to the consumer for a reason that does not exist;"

(B)(5) by representing that the Products are being "supplied in accordance with a previous representation," when they are not.

186.   In conjunction with the violations of Ohio Revised Code § 1345.02 set forth above, Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck further violated Ohio Admin. Code §109:4-3-10, by representing to consumers that the Products used scientifically proven technology to eliminate or virtually eliminate common viruses, the flu, germs and allergens, thereby helping to prevent the illnesses they cause, when the Products were not scientifically proven to eliminate or virtually eliminate common viruses, the flu, germs, molds and allergens.  Specifically, Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck promoted the germ-killing and illness-preventing abilities of the Products as being supported by scientific data in an effort to cause a reasonable consumer to believe the statements were true, and reasonable consumers, including the named Plaintiffs did, in fact, believe such statements to be true, when the Products did not kill germs, the flu, molds and allergens and thereby did not reduce consumers' exposure to the causes of the illnesses.

187. Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck further violated Ohio Admin. Code §109:4-3-10 because Defendants' scientific support claims were deceptive, false, unfair and unconscionable.   Specifically, at the time Defendants made those claims

81

Defendants did not possess or rely upon a reasonable basis in fact any factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence.

188.   When making the deceptive, false and unfair representations Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck violated Ohio Admin. Code § 109:4-3-03(B) because used various statements, illustrations, demonstrations and representations in their advertisements that created in the mind of a reasonable consumer a false impression as to the grade, quality, value, utility and other material aspects of the Products in such a manner that upon disclosure or discovery of the true facts—that the Products: (a) *did not* reduce the risk of or prevent the flu (b) *did not* reduce the risk of or prevents illnesses or ailments caused by bacteria, viruses, molds, or allergens, such as the common cold, diarrhea, upset stomachs, asthma, and allergy symptoms; (c) *did not* eliminate all or virtually all germs, bacteria, dust mites, molds, viruses or allergens from a user's floor, *did not* eliminate all or virtually all indoor airborne particles under normal living conditions—no reasonable consumer, including the named Plaintiff, would purchase the Products, or alternatively, not purchase the Products at the price they were offered.

189.   Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck further violated Ohio Adm. Code § 109:4-3-03(B), by falsely representing to consumers that the Products used scientifically proven technology to eliminate common viruses, germs and allergens, thereby helping to prevent the illnesses they cause, when the Products were not scientifically proven technology to eliminate or virtually eliminate common viruses, the flu, germs, mold and allergens.  This false, deceptive and unfair representation created in the mind of a reasonable consumer, including the named Plaintiff, a false impression as to the grade, quality, value, utility and other

material aspects of the Products in such a manner that upon disclosure or discovery of the true facts—that the Products do not use scientifically proven technology and do not eliminate or virtually eliminate common viruses, the flu, germs, mold and allergens—no reasonable consumer, including the Plaintiff Paragin, would purchase the Products, or alternatively, would not purchase the Products at the price they were offered.

190.   Based upon Ohio Adm. Code § 109:4-3-03(B) and Ohio Adm. Code § 109:4-3-10, Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck should have known that their advertising, promotions and marketing of the Products violated the CSPA.

191.   The false, unfair, deceptive, and/or unconscionable acts complained of herein are also substantially similar to acts declared unfair and deceptive and made available for public inspection by the Attorney General of Ohio, including, but not limited to, facts set out in the Agreed Entry and Final Judgment Order in *State of Ohio ex. Re. Richard Cordray, Attorney General v. The Dannon Company, Inc.,* Court of Common Pleas, Franklin County, Ohio Case No. 10-CVH-12 18225 ("Dannon").

192.   The circumstances in this case are, in fact, substantially similar to *Dannon*.   In *Dannon*, the Ohio Attorney General of Ohio, Richard Cordray ("Ohio AG"), along with 38 other state Attorneys General, settled an action against Dannon for payment of $21 million for falsely claiming that the Products were proven to have health benefits and/or prevent disease.

193.   In *Dannon*, the AG brought an action under R.C. §1345.02, *et. seq.*, for violations of the CSPA.   Dannon was permanently enjoined and restrained pursuant to R.C. 1345.07 from:

> a. Making any express or implied representation in connection with the advertising, marketing, or labeling of its products, including through the use of a product name, endorsement, depiction, or

illustration, which in: the context of the labeling, advertisement, or marketing material, directly states or implies that such ***[p]roduct may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease***.

b. Making claims and using depictions that its ***products can be used to treat, mitigate, cure, or prevent a specific conditions*** such as diarrhea and constipation in that case.

c. Make structure function claims that its products support or promote temporary relief of conditions without competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, ***when considered in light of the entire body of relevant and reliable scientific evidence to substantiate that the representation is true.*** Competent and reliable scientific evidence means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.

d. Citing, summarizing, or linking to clinical studies or research in the context of the labeling of a its products if the citation, summary, or link to the clinical studies or research, in the context of the labeling as a whole, ***implies that its products or all ingredient in its products treats, mitigates, cures, or prevents a disease,*** e.g., placement on the immediate product labeling or packaging, inappropriate prominence, or lack of relationship to the product's express claims.

e. Making any express or implied representation in connection with the advertising, marketing, labeling of its products, including

84

through the use of a product name, endorsement, depiction, or illustration, ***that its products reduces the likelihood of getting a cold or the flu,*** which in the context of the labeling, advertisement, or marketing material, directly states or implies that its products can be used to treat, mitigate, or prevent a cold or the flu.

f. ***Making any express or implied representation in connection with the advertising, marketing or labeling of its products, including through the use of a product name, endorsement, depiction or illustration, about the health benefits, performance, efficacy or safety of its product, unless the representation is non-misleading, and, at the time the claim is made***, Dannon possesses and relies upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields when considered in light of the entire body of relevant and reliable scientific evidence to substantiate that the representation is true.

g. Making, in connection with the advertising, marketing, or labeling of its products, any express or implied representation about the existence, contents, methodology, statistical analyses, study scope, validity, results, conclusions, or interpretations of any test, study, or research that is false, misleading or deceptive, or that is misleading or deceptive when considered together with other representations or depictions.

194. In the instant matter, Defendants made unsubstantiated deceptive and unfair health claims and disease prevention claims just like Dannon did in its advertising. Defendants claimed that their Products would prevent and protect consumers from all sorts of illness-causing bacteria, viruses and allergens, including the flu virus and other infectious agents, in addition to deceptively and

1    unfairly claiming that the Products eliminate up to 99% of the bacteria, viruses
2    and allergens that would otherwise remain present with use of ordinary vacuum
3    cleaners or air purifiers.

4         195.  Just like Dannon, Defendants' packaging and labeling as a whole,
5    deceptively and unfairly claimed or implied that that the Products kill bacteria,
6    kill viruses, capture viruses, reduce the flu, kill germs, fight the flu, destroy
7    airborne viruses, including the flu virus, eliminate volatile organic compounds,
8    kill the flu virus on any surface and in the air, and reduce allergens.

9         196.  Just like Dannon, Defendants made the false, deceptive, unfair and
10   unconscionable health, illness and disease prevention claims and falsely claimed
11   to have competent and reliable scientific evidence, when, in fact, there is no
12   scientific evidence sufficient in quality and quantity based on standards generally
13   accepted in the relevant scientific fields.  This is especially the case when the
14   relevant science is considered in light of the entire body of relevant and reliable
15   scientific evidence.  Defendants never had reliable scientific evidence, including
16   tests, analyses, research, or studies that had been conducted and evaluated in an
17   objective manner.

18        197.  Defendants' false, deceptive and unfair advertising claims further
19   violated Ohio Revised Code §1345.03(A) because Defendants have engaged in
20   "an unconscionable act or practice in connection with a consumer transaction."

21        198.  As a direct and proximate result of Defendants' violation of Ohio
22   Revised Code §1345.02 and §1345.03, Plaintiff Paragin and the Ohio Subclass
23   have suffered actual damages, measured by the full purchase price of the Products
24   or alternatively by the difference in the value of the Products as represented and
25   their actual value.

26        199.  Pursuant to Ohio Revised Code §1345.09(B), Plaintiff Paragin and
27   each member of the Ohio Subclass are entitled to rescind their transactions or
28   recover three times the amount of the their actual economic damages or two

1 hundred dollars, whichever is greater, plus an amount not to exceed $5,000 in
2 noneconomic damages or recover damages or other appropriate relief in a class
3 action under Federal Rule of Civil Procedure 23.

4    200.   Alternatively, pursuant to Ohio Revised Code §1345.09(D), Plaintiff
5 Paragin and the Ohio Subclass seek an order for restitution and disgorgement.

6    **COUNT XV – Plaintiff Paragin and the Ohio Subclass Against Oreck**
7    **Corporation, Oreck Direct, LLC, Oreck Homecare LLC, and David Oreck**
8    **Violations of Ohio's Deceptive Trade Practices Act**
9    **Ohio Revised Code Section 4165, *et seq.***

10    201.   Plaintiff Paragin and the Ohio Subclass restate each and every
11 paragraph of the foregoing Complaint as if fully rewritten herein.

12    202.   Defendants Oreck Corporation, Oreck Direct, LLC, Oreck
13 Homecare, LLC and Mr. Oreck are persons as defined in Ohio Revised Code
14 §4165.01(D).

15    203.   By making the deceptive, false and unfair representations that the
16 Products: (a) reduced the risk of or prevents the flu (b) reduced the risk of or
17 prevents illnesses or ailments caused by bacteria, viruses, molds, or allergens,
18 such as the common cold, diarrhea, upset stomachs, asthma, and allergy
19 symptoms; (c) will eliminate all or virtually all germs, bacteria, dust mites, molds,
20 viruses or allergens from a user's floor, will eliminate all or virtually all indoor
21 airborne particles under normal living conditions, Defendants have engaged in
22 false, unfair, deceptive, untrue, and misleading advertising in violation of the
23 following subsections of Ohio's Deceptive Trade Practices Act § 4165.02 because
24 Defendants engaged in conduct (described herein) that:

25    (A)(2) "Causes [and have caused in the past] likelihood of confusion
26    or misunderstanding as to the source, sponsorship, approval, or
27    certification of goods . . . ".

28

(A)(4) "Uses [and have used in the past] deceptive representations . . . in connection with goods . . ."

(A)(7) "Represents [and has represented in the past] that goods . . . have sponsorship, approval, characteristics, ingredients, uses [or] benefits . . . that they do not have . . ."

(A)(9) "Represents [and has represented in the past] that goods . . . [were]are of a particular standard, quality or grade" when "they [were]are of another"

204. Defendants' conduct caused substantial injury to Plaintiff Paragin and the Ohio Subclass in that Plaintiff Paragin and the Ohio Subclass paid a substantial price premium for the Products that do not provide the health benefits and disease prevention benefits that Oreck Corporation claimed they provided. Thus, Plaintiff Paragin and the Ohio Subclass have suffered injury in fact and have lost money as a result of Defendants' deceptive conduct, measured by the full purchase price of the Products or alternatively by the difference in the value of the Products as represented and their actual value.

205. Plaintiff Paragin and the Ohio Subclass seek equitable relief and on the terms that the Court considers reasonable.

**COUNT XVI – Plaintiff Paragin and the Ohio Against Oreck Corporation, Oreck Direct, LLC, Oreck Homecare LLC, and David Oreck**
**Tortious Breach of Warranty**

206. Plaintiff Paragin and the Ohio Subclass restate each and every paragraph of the foregoing Complaint as if fully rewritten herein.

207. Plaintiff Paragin and the Ohio Subclass bring this claim against all Defendants with whom they are not in privity of contract.

208. At all times material, Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck manufactured, marketed and sold the Products, and represented and impliedly warranted that they were of good

merchantable quality and fit for their intended use as superior and more effective household appliances that captured and killed up to 99% of bacteria, viruses, the flu, mold and allergens, thereby preventing or otherwise helping protect consumers from contracting illnesses and disease such as the flu and E-Coli.

209.  The Products were defective in formulation, in that they were not properly made and fit for their ordinary and intended purposes as superior and more effective than other vacuums or air cleaners and thus were incapable and otherwise failed to operate as germ killers and flu fighters.

210.  The defect existed at the time the Products left the Defendants' possession.

211.  As a direct and proximate result of the defective nature of the Products, Plaintiff Paragin and the Ohio Subclass have suffered damages by overpaying for the Products.

## COUNT XVII – Plaintiff Paragin and the Ohio Subclass Against Oreck Corporation, Oreck Direct, LLC, Oreck Homecare LLC, and David Oreck

### Fraudulent Misrepresentation and Concealment

212.  Plaintiff Paragin and the Ohio Subclass restate each and every paragraph of the foregoing Complaint as if fully rewritten herein.

213.  At all times material, Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck had a duty to meaningfully and fully disclose and provide all material information about the true capabilities and benefits known to and associated with their Products.

214.  Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck by and through their employees and/or agents, having a pecuniary interest in the sale of the Products, supplied false and/or unsupported claims or information to consumers and made misrepresentations of

material fact regarding the design and efficacy of the Products. Defendants, for example, fraudulently advertised and touted that their Products:

• killed up to 99% of illness causing household bacteria, viruses and allergens when the Products did not kill up to 99% of illness causing household bacteria, viruses and allergens; and

• helped protect against the risk of illnesses and other disease, including colds, flu and even the spread of MRSA and E.Coli, when the Products did not help protect against the risk of illnesses and other disease, including colds, flu and even the spread of MRSA and E.Coli.

215.   Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck made false affirmative representations, omissions and/or fraudulently concealed material adverse information regarding the effectiveness of the Products to induce Plaintiff Paragin and the Ohio Subclass to rely upon such representations in purchasing and using them. By falsely providing and failing to disclose important and material facts about the Products to Plaintiff Paragin and the Ohio Subclass in general, Defendants further misled Plaintiff Paragin and the Ohio Subclass to rely upon the purported benefits of the Products, and to believe that they would protect them from getting the flu virus, colds and other illnesses, thereby causing Plaintiff Paragin and members of the Ohio Subclass to purchase the Products at a substantial price premium.

216.   Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck had sole access to material facts concerning the defective nature of the Products and their ineffectiveness in performing as

represented, in that the Products do not capture and kill germs, viruses and otherwise prevent consumers from getting colds, the flu and other diseases.

217.  Defendants' Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck concealment and omissions of the material facts concerning the purported health benefits of the Products was done to mislead Plaintiff Paragin and the Ohio Subclass members and to induce them to rely upon the touted health benefits of the Products and to purchase them at a substantial price premium.

218.  Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck should have known that Plaintiff Paragin and other Ohio Subclass members had no way to determine the truth behind the concealments and omissions of material fact concerning the effectiveness, or lack thereof, of the Products.

219.  Plaintiff Paragin and other Ohio Subclass members reasonably and justifiably relied upon Defendants Oreck Corporation, Oreck Direct LLC, Oreck Homecare, LLC, and Mr. Oreck's misrepresentations, which did not include the material facts set forth above which were concealed and/or omitted. Plaintiff Paragin and other Ohio Subclass members were induced to, and did, purchase the Products to their detriment by paying a substantial price premium and would not have done paid had they known the truth about the lack of effectiveness of the Products and specifically that the Products did not kill household bacteria, viruses or allergens, or otherwise protect against the spread risk of illnesses and disease as represented.

220.  Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC, and Mr. Oreck's misrepresentations were made for the overall purpose of promoting and encouraging the sale of the Products.

221.  As a direct and proximate result of reliance upon Defendants Oreck Corporation, Oreck Direct, LLC, Oreck Homecare, LLC and Mr. Oreck's

1    concealments and Oreck Corporation, Oreck Direct, LLC, Oreck Homecare,
2    LLC, and Mr. Oreck's misrepresentations, Plaintiff Paragin and the Ohio
3    Subclass members have suffered, and will continue to suffer financial and other
4    economic loss as alleged herein because they paid a substantial price premium.
5    Alternatively, Plaintiff Paragin and the Ohio Subclass are entitled to a full refund
6    of the purchase price.

7                        **REQUEST FOR RELIEF**

8        WHEREFORE, Plaintiffs on behalf of themselves and the Class and the
9    Subclasses, request the following relief:

10   A.    An order certifying that this action is properly brought and may be
11         maintained as a class action under Rule 23 of the Federal Rules of
12         Civil Procedure, that Plaintiffs be appointed as Class Representatives
13         for the Class and Subclasses, and that Plaintiffs' counsel be
14         appointed Class Counsel;

15   B.    A finding that the responsible employees of Defendants, David
16         Oreck and those the now named Jane and John Doe 1-10, are liable
17         to the Class and that Defendants are responsible for the acts of the
18         employees based on agency principles;

19   C.    An award of restitution and/or disgorgement as against all
20         Defendants;

21   D.    An award of damages as against all Defendants jointly and severally;

22   E.    Such civil penalties and additional damages as the law may allow
23         against all Defendants;

24   F.    An award of reasonable attorneys' fees and other costs, including
25         costs of Court, against all Defendants;

26   G.    Pre-judgment and post-judgment interest at the maximum rates
27         permissible at law or in equity against all Defendants; and

28

H.    As against all Defendants, such other relief at law or equity as the Court may deem just and proper.

## VIII.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims and causes of action in this lawsuit.

Dated: September 7, 2012           RESPECTFULLY SUBMITTED

**KIRTLAND PACKARD LLP**
Michael Louis Kelly
Behram V. Parekh
Heather M. Baker

By:    _____

BEHRAM V. PAREKH
2041 Rosecrans Avenue, Third Floor
El Segundo, California 90245
Telephone: 310.536.1000
Facsimile: 310.536.1001
bvp@kirtlandpackard.com

*Lead Interim Class Counsel*

**LACKEY HERSHMAN, L.L.P.**
Roger L. Mandel
3102 Oak Lawn Ave., Suite 777
Dallas, TX  75219
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
rlm@lhlaw.net

**BINGHAM & LEA, P.C.**
Ben Bingham
319 Maverick Street
San Antonio Texas 78212
Telephone: 210.224.2885
Facsimile: 210.224.0141
ben@binghamandlea.com

**PISCITELLI LAW FIRM**
Frank E. Piscitelli, Jr.
6151 Wilson Mills Road, Suite 110
Cleveland, Ohio 44143
Telephone: (216)931-7000
Facsimile: (216)931-9925
frank@feplaw.com

**FARUQI & FARUQI, LLP**
Antonio Vozzolo
Christopher Marlborough
369 Lexington Ave., 10th Floor
New York, New York 10017
Telephone: (212) 983-9330
avozzolo@faruqilaw.com
cmarlborough@faruqilaw.com

*Plaintiffs Executive Committee*

**FEARS | NACHAWATI  LAW FIRM, P.L.L.C.**
Majed Nachawati
4925 Greenville Ave, Suite 715
Dallas, TX  75206
Telephone: (214) 890-0711
Facsimile: (214) 890-0712

**WILSON TROSCLAIR & LOVINS, P.L.L.C.**
Jeremy R. Wilson
302 N. Market St., Suite 510
Dallas, TX  75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475

**GNAU & TAMEZ LAW GROUP, LLP**
Daniel R. Tamez, Esq.
1010 Second Ave., Suite 1750
San Diego, CA  92101
Telephone: (619) 446-6736
Facsimile: (619) 684-3500

**HEENAN LAW FIRM**
John Heenan
3970 Avenue D, Suite A
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@heenanlawfirm.com

**KEOGH LAW, LTD.**
Keith J. Keogh
Craig Shapiro
Timothy J. Sostrin
101 North Wacker Drive, Suite 605
Chicago, Illinois   60606
Telephone: 312.726.1092
Facsimile: 312.726.1093
Keith@KeoghLaw.com

**THORNTON, DAVIS & FEIN, P.A.**
Barry L. Davis
Daniel R. Lever
80 SW Eighth Street, 29th Floor
Miami, Florida 33130
Telephone: (305) 446-2646
Facsimile: (305) 441-2374
davis@tdflaw.com
lever@tdflaw.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor
369 Lexington Ave., 10th Floor
New York, New York 10017-6506
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

*Additional Plaintiffs' Counsel*