## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Behram Parekh | David Aronoff |
| | Gayle Jenkins |

**Proceedings:**   DEFENDANT DAVID ORECK'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO DISMISS COUNTS X, XI, XII, XIV, XV, XVI, AND XVII (Docket #48, filed October 5, 2012)

DEFENDANTS' MOTION TO DISMISS PORTIONS OF FIRST AMENDED CONSOLIDATED COMPLAINT (Docket #47, filed October 5, 2012)

## I.   INTRODUCTION

On February 3, 2012, the Judicial Panel on Multidistrict Litigation ("MDL Panel") centralized and transferred six related cases to this Court pursuant to 28 U.S.C. § 1407.[1] On April 17, 2012, the Court consolidated these six cases for pretrial purposes and appointed Kirtland & Packard as interim lead class counsel. Dkt. #33. Plaintiffs' filed a Consolidated Class Action Complaint on July 13, 2012, and a First Amended Consolidated Class Action Complaint on September 7, 2012 ("FACC"). The defendants in the FACC are business entities Oreck Corporation, Oreck Direct, LLC, Oreck

---

[1]The six cases are: Gina Chenier, et al. v. Oreck Corporation, CV No. 2:11-5321 (C.D. Cal.); Roxy Edge, et al. v. Oreck Corporation, et al., CV No. 2:11-8725 (C.D. Cal.); Teri Latta v. Oreck Corporation, et al., CV No. 5:11-1082 (C.D. Cal.); Scott Stiepleman v. Oreck Corporation, et al., CV No. 0:11-61861 (S.D. Fla.); Gregory Ruscitti v. Oreck Corporation, CV No. 1:11-3121 (N.D. Ill.); Edward Paragin v. Oreck Corporation, et al., CV No. 1:11-580 (S.D. Ohio).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|----------|----------------------|------|------------------|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

Homecare, LLC (collectively the "Oreck Entities"), and individual defendant David Oreck ("Mr. Oreck"). The gravamen of the FACC is that defendants falsely represented in their marketing materials that the use of Halo vacuum cleaners and XL Professional, ProShield, and ProShield Plus air purifiers has certain health benefits, germ-killing properties, and allergy-prevention abilities. The FACC asserts seventeen claims for relief, including claims for breach of warranty, violation of state consumer protection statutes, unfair and deceptive trade practices, and fraud.

On October 5, 2012, David Oreck moved to dismiss for lack of personal jurisdiction the cases arising out of Florida and Ohio, and also moved to dismiss seven claims asserted against him in the FACC for failure to state a claim. Also on October 5, 2012, the Oreck Entities moved to dismiss portions of the FACC. On November 7, 2012, plaintiffs filed oppositions to both motions, and defendants replied on November 2012. Defendants' motions are before the Court.

## II.    BACKGROUND

The FACC alleges that defendants engaged in a deceptive marketing campaign promoting Oreck Halo upright vacuum cleaners and Oreck XL Professional, Oreck ProShield, and Oreck ProShield Plus air purifiers (collectively "the Oreck products"). FACC ¶ 1. According to the FACC, defendants advertised that the Oreck products were effective in killing airborne pathogens, that they were scientifically proven to have these pathogen eliminating properties, and that using the products reduced the risk of contracting the flu or other diseases. FACC ¶¶ 1, 56 – 57. The FACC alleges that this advertising campaign was "nationally uniform," and that the products were promoted in "infomercials, print ads, on [the defendants'] websites, on the products, the product pacakaging, the product labels, and in the products' user's guides." FACC ¶ 29. This advertising campaign allegedly claimed that the Oreck products could eliminate up to 99% of the pathogens either on a consumer's home floor or airborne in the consumer's home. FACC ¶ 31, 39. The FACC gives several examples of the allegedly deceptive advertising. FAC ¶¶ 36 – 55.

Plaintiffs in this case each purchased the products after viewing marketing materials from the national marketing campaign. In particular, plaintiff Edge purchased a Halo vacuum after viewing an infomercial, plaintiff Chenier purchased a Halo vacuum

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

after viewing an online video, plaintiff Yosri purchased a Halo vacuum after viewing a late night video advertisement, plaintiff Stiepleman purchased a ProShield Plus air purifier after viewing a video advertisement, plaintiff Ruscitti purchased a Halo vacuum cleaner after viewing an infomercial, plaintiff Latta purchased a Halo vacuum cleaner after viewing online advertisements, and plaintiff Paragin purchased a ProShield air purifier and Halo vacuum after seeing an infomercial and viewing online advertisements. FACC ¶¶ 59 – 70.  Each plaintiff seeks to recover the full purchase price paid for an Oreck product, or alternatively the difference between the price they paid and the price they would have had to pay had the products been marketed without the alleged false statements.  FACC ¶ 74.

The FACC alleges that David Oreck "was a central participant" in the misleading marketing campaign.  It alleges that his image and signature appeared in print advertisements that were nationally circulated, and that he appeared in infomercials that aired around the country, including in the six states in which plaintiffs' in this action reside (California, Illinois, Ohio, Utah, New York and Florida).  FACC ¶¶ 18 – 19; 23 – 25.  Additionally, the FACC provides examples of the advertisements in which Mr. Oreck allegedly appeared.  <u>See</u>, e.g., FACC ¶ 50 (infomercial).

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u>

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  <u>Pareto v. F.D.I.C.</u>, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  <u>Sprewell v. Golden State</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

### B.     Personal Jurisdiction

In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific. A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. (finding no general jurisdiction when the corporation was not registered or licensed to do business in California, paid no taxes, maintained no bank accounts, and targeted no advertising toward California). Occasional sales to residents of the forum state are insufficient to create general jurisdiction. See Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986).

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1)     The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2)     The claim must arise out of or result from the defendant's forum-related activities; and

(3)     Exercise of jurisdiction must be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).  The plaintiff bears the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

The purposeful availment prong is treated differently in a contracts case.  Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction ," a court must evaluate four factors to determine whether this prong is met: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties' actual course of dealing.  Burger King, 471 U.S. at 478-79.

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied.  Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477).  The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001).  Plaintiff's version of the facts is taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.  AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

### C.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity.  Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud."  Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003).  A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim.  Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)."  Id.  However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements.  Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth.  In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false."  Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV.    ANALYSIS

### A.    Personal Jurisdiction Over David Oreck

David Oreck seeks to dismiss the lawsuits filed in Florida and Ohio for lack of personal jurisdiction.  To determine whether personal jurisdiction exists over him, the Court looks to the personal jurisdiction rules of the transferor state.  See, e.g., In re Heritage Bond Litigation, 2004 WL 5639773, 2 (C.D. Cal. 2004) ("In a case transferred for pre-trial purposes by the Judicial Panel on multidistrict litigation, the transferee court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

must apply the personal jurisdiction rules of the transferor state."); In re Telectronics Pacing Systems, Inc., 953 F. Supp. 909, 914 (S.D. Ohio 1997).

      1.     Personal Jurisdiction over Mr. Oreck under Florida's Long Arm Statute

Florida's long arm statute provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
. . .
(b) Committing a tortious act within this state.

F.S.A. § 48.193. The Florida Supreme Court has held that "a defendant's physical presence is not necessary to commit a tortious act in Florida." Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1208 (Fla. 2010) (citing Wendt v. Horowitz, 822 So. 2d 1252 (Fla. 2002)). A tortious act "can occur by making telephonic, electronic, or written communications into [Florida], provided that the tort alleged arises from such communications." Wendt v. Marshall, 39 So. 3d at 1253. Additionally, the Florida Supreme Court held in Internet Solutions that a defendant can commit a tortious act in Florida for purposes of § 48.193(1)(b) merely by posting defamatory statements on the Internet about a Florida resident as long as the statements are accessed in Florida. Internet Solutions Corp., 39 So. 3d at 1216.

      The Court finds that the Florida long arm statute is satisfied because plaintiffs' allege that David Oreck engaged in false advertising in Florida. Even though he was not physically present in Florida while making the allegedly false or misleading statements, Florida law is clear that physical presence in Florida is not required to satisfy the long arm statute. David Oreck resists this result on the grounds that his statements were made as part of a national advertising campaign – not a campaign focused specifically on Florida – but cites no authority for the proposition that a defendant who commits tortious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

acts in Florida fails to fall under the long arm statute if the defendant also commits tortious acts in several other states.

David Oreck also argues that Florida courts could not exercise jurisdiction over him due to Florida's "fiduciary shield" or "corporate shield" doctrine. See Doe v. Thompson, 620 So. 2d 1004, 1006 (Fla. 1993). Under the corporate shield doctrine, acts of a corporate employee cannot form the basis for asserting personal jurisdiction over the employee if the actions were taken for the benefit of the corporation. Id. "The rationale of the doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." Id. Although the Florida Supreme Court therefore accepted the corporate shield doctrine as a general rule, it made clear that it also recognized an exception to the doctrine: "A corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." Id. fn. 1.

Florida case law recognizes that participation in an alleged violation of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201 et seq. ("FDUPTA") – the Florida statute allegedly violated in this case – constitutes a intentional misconduct sufficient to deprive an individual defendant of the protection of the corporate shield doctrine. State, Office of Atty. Gen., Dept. Of Legal Affairs v. Wyndham Intern., Inc., 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004). In Wyndham, the Florida attorney general sued corporate defendants and individual defendants for implementing a policy where guests at defendants' hotels were billed an "energy surcharge" over and above the advertised room rates. Id. at 594 – 595. The Florida appellate court found that the two individual defendants who developed and implemented the energy surcharge policy were not protected by the corporate shield doctrine. Id. at 599. The court also found, however, that an individual defendant who had no authority to develop or implement the policy could invoke the corporate shield doctrine, even though hotels under her management applied the energy surcharge policy pursuant to the orders of other corporate officers. Id. at 595 – 596, 598.

Here, David Oreck argues that under Wyndham, he may invoke the corporate shield doctrine because he did not develop and implement the allegedly fraudulent advertising campaign. Instead, he insists that the only actions he took in this case were at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

the direction of others, and hence that he can invoke the corporate shield doctrine under Wyndham.  The Court disagrees, and finds that, based on the holding in Wyndham, David Oreck cannot invoke the corporate shield doctrine.  By participating in the campaign of allegedly false advertising as a key spokesman or figurehead, Mr. Oreck played an important role in implementing the trade practices that allegedly violated the FDUPTA.  Therefore, his actions in this case are more akin to those of the Wyndham defendants who could not invoke the corporate shield doctrine, and the Court finds that he is not protected by the doctrine.

      2.     Personal Jurisdiction over Mr. Oreck under Ohio's Long Arm Statute

Ohio's long arm statute provides:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

Ohio R.C. § 2307.382.  The Supreme Court of Ohio has explained that "[t]he term 'transact' as utilized in the phrase 'transacting any business' encompasses 'to carry on business,' and 'to have dealings,' and is broader than the word 'contract.'" Goldstein v. Christiansen, 70 Ohio St. 3d 232, 236 (Ohio 1994).  Additionally, "[i]t is settled Ohio law . . . that the 'transacting business' clause of that statute was meant to extend to the federal constitutional limits of due process, and that as a result Ohio personal jurisdiction cases require an examination of those limits."  CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  Therefore, the Ohio long arm statute is satisfied as long as exercising personal jurisdiction does not violate the Constitution.

      Although the "transacting business" clause of Ohio's long arm statute generally stretches to the constitutional limits, David Oreck points out that Ohio courts – like Florida courts – recognize a "fiduciary shield" doctrine.  The cases cited by David Oreck stand for the rule that a defendant is not subject to personal jurisdiction in Ohio by virtue of acts undertaken in an "official capacity," or as a "fiduciary of the corporation."  See Diebold, Inc. v. Firstcard Financial Services, Inc., 104 F. Supp. 2d 758, 761 (N.D. Ohio 2000); State ex re. DeWine v. S&R Recycling, Inc., 961 N.E. 2d 1153, 1158 (Ohio Ct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

App. 2011). Ohio's fiduciary shield doctrine does not apply to David Oreck because he was not an officer or fiduciary of any of the Oreck entities while the alleged misconduct occurred; instead, he was merely a spokesman.

> 3. <u>Whether Personal Jurisdiction in Florida or Ohio Violates Due Process</u>

David Oreck argues that his presence in a national advertising campaign that involved transmitting broadcasts and other advertisements into Ohio and Florida does not show that he has had sufficient minimum contacts to satisfy the constitutional limits on personal jurisdiction. David Oreck relies primarily on two cases in making this argument, <u>Embs v. Jordan Outdoor Enterprises Ltd.</u>, 2004 WL 3322366 (S.D. Ohio 2004), and <u>TriStrata Tech, Inc. v. Neoteric Cosmetics, Inc.</u>, 961 F. Supp. 686 (D. Del. 1997).

<u>Embs</u> was a patent infringement case brought against, among other defendants, Jordan Outdoor Enterprises Ltd. ("JOEL") and William Roberts Jordan ("Jordan."). <u>Embs</u>, 2004 WL at 1. In <u>Embs</u>, plaintiff argued that the Jordan was subject to personal jurisdiction in Ohio by virtue of the fact that he appeared on television and videotaped programs distributed and broadcast in Ohio, and promoted JOEL products on those programs. <u>Id.</u> at 4. There, the Court found that these contacts with Ohio were not sufficient because the programs were nationally broadcast and not part of "a sustained promotion campaign directed at Ohio." <u>Id.</u> at 6. Similarly, in <u>Tristrata</u>, which was also a patent infringement case, the district court found that appearances in infomercials and other advertisements distributed as part of a nationwide marketing campaign were an insufficient basis on which to exercise personal jurisdiction. <u>Tristrata</u>, 961 F. Supp at 690.[2] The district court reasoned that such advertising could only be a basis for jurisdiction if it were directed specifically at Delaware consumers. <u>Id.</u>

---

[2] The court in <u>Tristrata</u> was analyzing Delaware's long arm statute in the passages cited and discussed by defendants, not whether constitutionally sufficient minimum contacts existed with Delaware, but the Court discusses it nonetheless as persuasive authority considering a similar question.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|----------|----------------------|------|------------------|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

Embs and Tristrata are distinguishable because the claims pursued by the plaintiffs in those cases were unrelated to the national advertising. In cases where the national advertising is the underlying act supporting both personal jurisdiction and plaintiff's claim for relief, courts have found personal jurisdiction exists on the basis of national advertising. Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 746 (C.D. Cal. 1995) (recognizing that many cases find national advertising insufficient to establish purposeful availment but noting that "[w]hat separates this case from most others analyzing jurisdictional issues is that plaintiff's jurisdictional argument and underlying trademark claim are primarily supported by the same acts—namely, defendant's national advertising."); SEC v. Carillo, 115 F.3d 1540, 1545 – 1546 (11th Cir. 1997) (placing advertisements fraudulently offering unregistered securities in nationally circulated magazines amounted to purposeful availment in action arising out of the offer and sale of securities through those advertisements). Moreover, it is clear that a person should expect to be haled into the courts of a forum state for a claim of false advertising if he or she broadcasts false advertising into that state. Consequently, the Court finds that by appearing in advertisements broadcast into Florida and Ohio, David Oreck purposefully availed himself of these states, and that it would be reasonable for the courts of those states to exercise specific personal jurisdiction over him.

## B.     Motion to Dismiss Claims Against Oreck Entities

### 1.     Breach of Warranty Claims (Counts I – III)

Plaintiffs allege claims for breach of express warranty, breach of the implied warranty of merchantability, and violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 et seq.). Defendants argue that plaintiffs lack "standing" to bring breach of warranty claims on behalf of a nationwide class because they only suffered injuries that can be redressed under the laws of the six state jurisdictions where their injuries occurred. Defendants conclude that each putative lead plaintiff only has "standing" to bring claims on behalf of a subclass of purchasers from the state in which that plaintiff was injured.

As with any suit, a plaintiff must have Article III standing to bring a class action. See Bates v. United Parcel Service, Inc., 511 F.3d 974, 985 (9th Cir. 2007) (holding that standing is satisfied for purposes of bringing a class action if at least one named plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

meets the Article III requirements); Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001) ("[a] named plaintiff cannot represent a class alleging. . . claims that the named plaintiff does not have standing to raise"). This requires the plaintiff to demonstrate that she has suffered (1) an "injury in fact" that is actual and concrete; (2) "fairly traceable" to the defendant's alleged wrongful conduct; and (3) such injury is likely to be redressed by a decision in the plaintiff's favor. Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc., 528 U.S. 167, 180–81 (2000).

Courts are split as to whether intra-class differences are appropriately addressed at this stage of the litigation by a doctrine of standing or the Rule 23(a) requirements of adequacy and typicality for class certification. See Gratz v. Bollinger, 539 U.S. 244, 264 n. 15 (2003) (noting the "tension in [the Supreme Court's] prior cases in this regard"); Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1016–17 (N.D. Cal. 2011) (collecting cases, discussing the split of authority). This Court is of the view that in most cases, Rule 23(a), not a standing doctrine, is the proper method for determining whether class representatives can properly bring claims on behalf of absent class members. See id. at 1017. This is so because the question of "[w]hether a named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue," but is instead an issue of whether the requirements of Rule 23 are met. Lewis v. Casey, 518 U.S. 343, 395–96 (1996) (Souter, J., concurring in part and dissenting in part) (citing 1 H. Newberg & A. Conte, Newberg on Class Actions § 2.07 (3d ed.1992)); see also 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1785.1 (3d ed.) ("Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").

Here, the requirements of Article III standing are clearly met: plaintiffs assert that they suffered injury when they purchased defendants' products, and their injuries can be redressed by damages. Consequently, there is no basis on which to dismiss plaintiffs' warranty claims for lack of standing.

Defendants next argue that plaintiffs' claim for breach of the implied warranty of merchantability should be dismissed because it impermissibly conflates the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

In reply, plaintiffs maintain that they are only alleging a claim for violation of the implied warranty of merchantability.

The Court finds that the FACC states a claim for violation of the implied warranty of merchantability. The implied warranty of merchantability is set out in UCC § 2-314. Specifically, UCC § 2-314(2) provides that goods are merchantable only if, among other things, they "pass without objection in the trade under the contract description; . . . are fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any." Plaintiffs' complaint alleges that the none of the products were merchantable because they were not fit to eliminate pathogens, which was the ordinary purpose for which they were used. FACC ¶ 110. Plaintiffs' complaint also alleges that the products' inability to eliminate pathogens shows that the products would not "pass without objection in the trade" and that the products did not conform to affirmations made on the label. FACC ¶¶ 108 – 109. Plaintiffs' complaint has therefore alleged that the products were not fit for their ordinary purpose, and in doing so successfully states a claim for violation of the implied warranty of merchantability.[3]

---

[3] It is unclear to the Court how plaintiffs' allegations have improperly conflated the warranty of merchantability with the warranty of fitness for a particular purpose. Moreover, even if any such conflation has occurred, courts have noted that "if the particular purpose for which goods are to be used coincides with their general functional use, the implied warranty of fitness for a particular purpose merges with the implied warranty of merchantability." Cartillar v. Turbine Conversions, Ltd., 187 F.3d 858, 861 fn. 5 (8th Cir. 1999). Therefore, it is not necessarily improper to conflate these two warranties, and defendants do not explain why this is a case in which these warranties differ.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

2.   <u>Utah Statutory Claims (Counts X – XI)</u>

The FACC asserts a claim for relief under the Utah Truth in Advertising Act (U.C. §§ 13–11A et seq.) ("UTAA").[4]  Defendants argue that this claim should be dismissed because the allegations supporting this claim are conclusory and do nothing more than parrot the language of the statute.  Although plaintiffs, following standard pleading practice, reincorporated the substantive parts of their pleading in the section of the FACC specifically alleging a claim under the UTAA, defendants argue that "the 'reincorporation' of each of the preceding paragraphs of the entire FACC utterly fails to advise defendants of that conduct which [plaintiffs claim] constitutes breach of the [UTAA]."  Reply at 10.  Defendants argue that because plaintiffs have failed to advise them of what alleged misconduct violates the UTAA, this claim should be dismissed under Federal Rule of Civil Procedure 8.

Plaintiffs explain that defendants' advertising constituted a deceptive trade practice pursuant to four provisions of the UTAA: U.C. §§ 13–11a–3(1)(b), (c), (e), (g).  Under these provisions:

(1) Deceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person:

* * * *

(b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another;

* * * *

(e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not

---

[4] The FACC also asserts a claim under the Utah Consumer Sales Practices Act (U.C. §§ 13–11–1 et seq.), but plaintiffs' opposition states that they have abandoned this claim.  Opp. at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

> have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>
> * * * *
>
> (g) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

Id. The heart of plaintiffs' allegations is that the defendants' falsely represented that the Oreck products were scientifically proven to have particular pathogen eliminating properties and could be used to reduce the risk of a user's disease. Therefore, the FACC alleges that the Oreck products were represented to have "uses" or "benefits" that they did not have, and were represented to be of a higher "quality" than they in fact were, and hence the FACC alleges deceptive trade practices under §§ (e) and (g). Moreover, the FACC alleges that defendants' falsely represented that the pathogen eliminating properties of the Oreck products were scientifically proven, and plaintiffs explain that in doing so defendants' caused "misunderstanding" as to the "certification," or "approval" of the Oreck products in violation of §§ (b) and (c). FACC ¶ 160. Defendants have been given adequate notice of what facts underlie plaintiffs' claim for relief under the UTAA, and Rule 8 therefore does not require that the claim be dismissed.

3.      Ohio Statutory Claims (Counts XVI – XV)

The FACC asserts claims for violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345 et seq. ("OCSPA"), and Ohio Deceptive Trade Practices Act, Ohio Rev. Code, §§ 4165 et seq. ("ODTPA").

Defendants argue that plaintiffs' ODTPA claim fails because the ODTPA does not grant consumers standing to sue. In support of this argument, defendants cite Blankenship v. CFMOTO Powersports, Inc., 944 N.E. 2d 769 (Ohio Com. Pl. 2011), which held that only commercial entities – not consumers – have standing to sue under the ODTPA. Blankenship, 944 N.E. at 778. The court in Blankenship reasoned that the OCSPA would be superfluous if consumers had a right of action under the ODTPA because both statutes prohibit the same conduct and the OCSPA expressly provides consumers a cause of action. Id. Additionally, defendants argue that consumers lack standing under the ODTPA because Ohio courts have ruled that the ODTPA should be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|----------|------------------------|------|-------------------|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

analyzed in the same was as the Lanham Act, 15 U.S.C. § 1051 et seq., and the law is clear that consumers lack standing to sue under the Lanham Act.  Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc., 125 Ohio App. 3d 572, 580 (Ohio Ct. App. 1997) ("When adjudicating claims under the [ODTPA], Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law."); Blankenship, 944 N.E. at 977 (similar); Made in the USA Foundation v. Phillips Foods, Inc., 365 F.3d 278, 280 (collecting cases and noting that every circuit court to consider the question has found that consumers cannot sue under the Lanham Act).

In response, plaintiffs cite to an Ohio district court decision, Bower v. International Business Machines, Inc., 495 F. Supp. 2d 837 (S.D. Ohio 2007), which held that both consumers and commercial entities could assert a claim for relief under the ODTPA. Bower, 495 F. Supp. 2d at 843 – 844.

As the parties' citations demonstrate, there is a conflict of authority regarding whether consumers can assert a claim for relief under the ODTPA.  It appears to the Court, however, that the weight of authority tips strongly in favor of finding that consumers have no private right of action.  Plaintiffs cite no Ohio state court decisions concluding that consumers may sue under the ODTPA, and the Court has found none. Moreover, Ohio district courts have criticized and declined to follow the decision in Bower.  Gascho v. Global Fitness Holdings, LLC, 863 F. Supp. 2d 677, 698 – 699 (S.D. Ohio 2012) (criticizing the decision in Bower); Holbrook v. Louisiana-Pacific Corp., 2012 WL 3801725, 4 (N.D. Ohio 2012) ("Cases in this District have not adopted the Bower interpretation of the ODTPA").  The Court therefore concludes that consumers cannot maintain a claim for relief under the ODTPA, and consequently finds that plaintiffs' ODTPA claim should be dismissed.

The Court next considers plaintiffs' claim under the OCSPA.  Ohio Revised Code § 1345.09, which recognizes a private right of action to enforce the OCSPA, provides:

> For a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:
>
> (A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.

(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages . . .

Here, plaintiff has asserted claims under §§ (A) and (B).

Defendants argue that plaintiffs' § (A) claim fails because that section only allows consumers to recover "in an individual action." In response plaintiffs argue that Federal Rule of Civil Procedure 23 determines whether they may pursue a class claim, not state law. The issue in dispute therefore appears to be whether plaintiff can pursue this claim on a classwide basis, not whether plaintiff has stated a claim upon which relief can be granted. Accordingly, the Court finds that the parties' dispute is better addressed on a motion for class certification.

In contrast, defendants' argument for dismissing plaintiffs' § (B) claim is appropriately addressed in a motion to dismiss. Defendants argue that plaintiffs' § (B) claim fails because plaintiff has not satisfied § (B)'s notice requirement by pointing to a rule or court decision that declared the false advertising alleged in the FACC to be deceptive or unconscionable. In response, plaintiffs point to two forms of notice that would meet § (B)'s notice requirement. First, plaintiffs argue that Ohio Admin. Code §§ 109:4-3-10, 109:4-3-3(B)(1) provide defendants adequate notice that falsely claiming to have scientific data in support of advertising claims violates the OCSPA. Second, plaintiffs argue that defendants were given sufficient notice by an entry of judgment in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

State of Ohio ex. Rel. Richard Cordray v. Dannon, No. 10-CV-12 18225, Franklin Cty. Ct. Com. Pl. (December 22, 2010), which approved a settlement that enjoined the defendant in that case from claiming, without scientific evidence, that its products reduced a consumer's likelihood of contracting the cold or the flu.

The Ohio Supreme Court in Marrone v. Phillip Morris USA, Inc., 850 N.E. 2d 31 (Ohio 2006), explained the criteria a previous rule or decision must meet for it to put a defendant on adequate notice that a practice is deceptive or unconscionable for purposes of § 1345.09(B).  There, the Ohio Supreme Court rejected the claim that a "generic prohibition that does not refer to any specific act or practice" could satisfy the notice requirement in § (B), and on that basis specifically held that Ohio Admin Code § 109:4-3-10 could not satisfy the notice requirement.  Id. at 36 – 37.  The Ohio Supreme Court also explained that "[c]ases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA."  Id. at 36.  Specifically, the Ohio Supreme Court rejected the argument that prior cases involving deception and unfair practices in the automobile industry could have put the defendant cigarette companies on notice because the relevant industries were too dissimilar.  Id. at 35.

Consequently, under Marrone, it appears that plaintiffs cannot satisfy the OCSPA's notice requirement.  The general administrative rules cited by plaintiffs are "generic rules" that do not provide sufficient notice under Marrone.  Additionally, even if the judgment approving a settlement in Dannon counts as a court decision under § (B), the defendant in that case manufactured food and beverages, and therefore the decision involved an industry different from the industry of defendants'.  Plaintiffs' claim under Ohio Revised Code § 1345.09(B) should therefore be dismissed.

4.    Other Ohio Tort Claims (Counts XVI – XVII)

The FACC also asserts claims under Ohio law for tortious breach of warranty and fraudulent concealment.  Defendants argue that the claim for tortious breach of warranty should be dismissed because Ohio recognizes the economic loss doctrine, which bars a plaintiff from recovering purely economic loss in connection with a tortious breach of warranty claim.  In response, plaintiffs argue that Ohio only applies the economic loss doctrine to commercial buyers, and that consumers can assert tortious breach of warranty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|----------|----------------------|------|------------------|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

claims for solely economic damages against defendants with whom there is no privity of contract.

Under Ohio law, the economic loss rule only bars a consumer from recovering economic losses in tort when there is privity of contract between plaintiff and defendant.[5] In Iacono v. Anderson Concrete Corp., 42 Ohio St. 2d 88 (Ohio 1975), plaintiff entered into a contract with a construction company to install, among other things, a driveway at his home. That work was then subcontracted out to a concrete installation company, which installed a defective driveway containing numerous small holes. Plaintiff sued the concrete installation company in tort for breach of warranty, and the Ohio Supreme Court held that the claim could be maintained even though the only damages were to the driveway itself. Id. at 93. Subsequent decisions of the Ohio Supreme Court have followed Iacono, and recognize that it established the rule that a plaintiff can recover economic losses in a claim for tortious breach of warranty as long as plaintiff and defendant are not in privity of contract. LaPuma v. Collinwood Concrete, 75 Ohio St. 3d 64, 67 (Ohio 1996); Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co., 42 Ohio St. 3d 40, 49 (Ohio 1989) ("in Ohio an action in tort for breach of express or implied warranty . . . may be maintained for purely economic loss."). In fact, the case upon which defendant relies, Malkamaki v. Sea Ray Boats, Inc., 411 F. Supp. 2d 737, 748 (N.D. Ohio 2005), expressly recognizes that under Ohio law the economic loss doctrine only bars recovery of economic damages in tort when the plaintiff is not in privity with the defendant. Malkamaki, 411 F. Supp. 2d at 748 (recognizing that Iacono and LaPuma apply when there is no privity between plaintiff and defendant). Therefore, because plaintiffs' claim for tortious breach of warranty is only brought against defendants not in privity with plaintiffs, the Court finds that this claim should not be dismissed.

Turning to plaintiffs' claim for concealment, defendants' argue that this claim should be dismissed because Ohio law only allows a plaintiff to pursue a concealment claim if there exists a fiduciary duty or similar relationship between the plaintiff and

---

[5] When there is privity of contract, however, it appears that Ohio law only allows a plaintiff to recover economic losses resulting from damage to a defective product itself in a breach of contract claim. Chemtrol Adhesive, Inc. v. American Mfrs. Mut. Ins. Co., 42 Ohio St. 3d 40, 50 (Ohio 1989).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

defendant.  See Fed. Mgt. Co. v. Coopers & Lybrand, 738 N.E. 2d 842, 855 (Ohio Ct. App. 2000) ("the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.").  Plaintiffs respond that such a duty does exist in this case because defendants sold, designed, and engineered the products at issue, and that under these circumstances a plaintiff can maintain a fraudulent concealment action against a seller.  In support of this argument, plaintiffs' cite Mancini v. Gorick, 536 N.E. 2d 8 (Ohio Ct. App. 1987), and Brewer v. Brothers, 611 N.E. 2d 148 (Ohio Ct. App. 1992).

The cases cited by plaintiff address a situation in which a seller of property had a duty to disclose latent defects to a buyer.  While several cases recognize a duty of a seller to disclose latent defects to a buyer, these cases are inapposite because the FACC does not allege that defendants' failed to disclose a latent defect in the products.  FACC ¶ 29. Instead, plaintiffs allege that defendants "fraudulently concealed material adverse information regarding the effectiveness of the Products," and presumably that this failure to disclose rendered other statements about the products misleading.  FACC ¶ 215.  This theory of relief has been accepted by Ohio courts, which have held that a party has a duty to disclose information if a prior statement or representation made by the party is untrue or misleading without further disclosures.  See, e.g., Doe v. Flair Corp., 719 N.E. 2d 34, 39 (Ohio Ct. App. 1998).

Nonetheless, as defendants point out in their reply brief, plaintiffs have not pointed to any particular material adverse information that defendants' failed to disclose about their products.  Consequently, because plaintiffs have not pled which material information was not disclosed, the claim for fraudulent concealment should be dismissed without prejudice.

5.     Other State Consumer Protection and Fraud Claims

The FACC also asserts a claim for affirmative misrepresentation and state consumer protection claims under the laws of California (counts IV, V, and VII), Florida (XII), Illinois (XIII), and New York (VIII – IX).  Defendants argue that these state consumer protection statutory claims are subject to Federal Rule of Civil Procedure 9(b), and that the FACC fails to plead these claims and the claim for fraudulent misrepresentation with the requisite specificity.  Put succinctly, defendants' argument is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|----------|-----------------------|------|------------------|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

that while the FACC points to several allegedly false statements in a national advertising campaign, it does not specify which particular advertisements or commercials were actually viewed by the plaintiffs, nor does it specify which statements in those advertisements the plaintiffs relied upon in making their purchases.

Defendants' are correct that the FACC does not specify for each particular lead plaintiff exactly which advertisement that plaintiff viewed and exactly which statements in the advertisement that plaintiff relied upon. Instead, the FACC alleges that the plaintiffs were exposed to a national advertising campaign that utilized several slightly different advertisements all articulating a common allegedly fraudulent message: that the Oreck products used scientifically proven technology to effectively kill pathogens and reduce the risk of illness. The FACC also explains which type of advertising (infomercial, online, etc.) each plaintiff was viewed. This is sufficient to satisfy Rule 9(b). By identifying a clear common message in the advertising campaign and identifying numerous examples that repeat this message, plaintiffs have adequately notified defendants of the "who, what, when, where and how of the misconduct charged." Cafasso, 637 F.3d at 1055. Moreover, it would be unfair to require plaintiffs to recall and specify precisely which of the many advertisements they have been saw were the particular advertisements they relied upon. It suffices for plaintiffs to provide examples of advertisements similar to those they saw as long as all the advertisements convey the core allegedly fraudulent message.

Defendants argue that Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009), compels the opposite result because it stands for the proposition that alleging exposure to a national advertising campaign does not satisfy Rule 9(b). See Kearns, 567 F.3d at 1125 – 1126. Defendants are correct that Kearns held that merely alleging exposure to a fraudulent advertising campaign, without more, did not satisfy Rule 9(b). However, this case is distinguishable from Kearns because there the plaintiff failed to "specify what the television advertisements or other sales material specifically stated." Id. at 1126. Here, in contrast, the FACC clearly specifies the core message of the advertising campaign, and as explained above this combined with specific examples of the allegedly fraudulent advertising is sufficient to give defendants adequate notice for purposes of 9(b).

Finally, defendants argue that plaintiffs' have not satisfied Rule 9(b) because the FACC fails to explain why the core message of the advertising campaign is false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

Contrary to defendants arguments, however, the FACC alleges that the core advertising message is false because the Oreck products do not kill all or virtually all pathogens from a consumer's floor or indoor air, and do not reduce the risk of contracting the flu or other diseases. FACC ¶ 71. Additionally, a fair reading of the FACC leads to the conclusion that it alleges that there was no scientific evidence proving that the Oreck products could function as advertised. FACC ¶ 72. This provides a clear explanation of what was false about defendants' advertisements, and hence is sufficient to meet Rule 9(b).[6]

## C.   Motion to Dismiss Claims Against David Oreck

David Oreck separately moved to dismiss claims asserted against him personally under the UTAA, the FDUPTA, the OCSPA, the ODTPA, and the Ohio tort claims for tortious breach of warranty and fraud. With respect to the OCSPA, the ODTPA, and the claim for tortious breach of warranty, the Court's analysis set out above applies to David Oreck's motion to dismiss. The Court separately considers his arguments with respect to the other claims.

David Oreck argues that he cannot be sued personally under the UTAA because plaintiffs did not serve him with the pre-suit notice required by that statute. U.C. § 13–11a–5. In response, plaintiffs point out that the UTAA only requires pre-suit notice in actions for injunctive relief, not actions for damages, and point out that the UTAA claim against David Oreck only seeks damages. Id. ("No action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant."). The Court agrees with plaintiff,

---

[6] Yacu v. All American Pharmaceutical and Natural Foods Inc., et al, Case No. 2:12-cv-03945 SVW-JCG (C.D. Cal. 2012) is distinguishable because there the complaint identified a haphazard set of somewhat vague statements and merely labeled them false, whereas here plaintiffs explained why the essential content underlying the alleged false statements was false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

and finds that the statute contains no pre-suit requirement in an action for damages, and therefore that the claim for damages against David Oreck can go forward without notice.[7]

      Turning to the FDUTPA, David Oreck argues that he cannot be liable under this statute because he is not a seller, but merely a spokesman, and liability under the FDUPTA only attaches to sellers. See Tuckish v. Pompano Motor Co., 337 F. Supp. 2d 1313, 1320 (S.D. Florida 2004) ("In order to state a cause of action under the DUTPA, the consumer must also allege sufficient facts to show that he has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce."). In response, plaintiffs' cite Florida cases which hold that a defendant can be liable under the FDUTPA even if it is not the seller as long as it is a "direct participant" in the dealings between plaintiff and a seller. Rollins, Inc. v. Heller, 454 So. 2d 580, 582 (Fla. Dist. Ct. App. 1984) (corporate parent was direct participant in transaction between consumer and corporate subsidiary where consumer did not know it was contracting with subsidiary); Anden v. Litinsky, 472 So. 2d 825, 826 – 827 (individual defendant was direct participant in transaction between consumer and corporation where all negotiations and sales discussions were between individual defendant and the consumers).

      The Court finds that cases plaintiffs cite are inapposite. In Rollins and Litinsky, the courts found that non-sellers were direct participants in a transaction because the non-

---

      [7] Defendants point the Court to Proctor & Gamble Co. v. Haugen, 947 F. Supp. 1551 (D. Utah 1996), which read a pre-suit notice requirement into the UTAA for actions for damages. The district court in Proctor & Gamble found that pre-suit notice was required for a damages action because the UTAA states that a court "shall" enjoin a defendant found to have violated the act from further violations. The district court then reasoned that if the statute were read literally, a kind of paradox would come about if a plaintiff successfully brought an action for damages but did not provide pre-suit notice: the court would be required to grant injunctive relief because it found a violation but would lack the authority to do so due to lack of pre-suit notice. Proctor & Gamble, 947 F. Supp. at 1555 – 1556. The Court disagrees with this interpretation, and finds that the statute is more reasonably read to only require a court to grant injunctive relief in situations where the statute does not specifically prevent a court from granting it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | ML 12-2317 CAS (JEMx) | Date | December 3, 2012 |
|---|---|---|---|
| Title | IN RE: ORECK CORPORATION HALO VACUUM AND AIR PURIFIERS MARKETING AND SALES PRACTICES LITIGATION | | |

sellers were the ones who closed transactions and provided goods or services to the consumer-plaintiff.  In <u>Rollins</u>, the consumer-plaintiff actually believed that the corporate parent was the seller it had a contract with even though the contract was actually between the plaintiff and a subsidiary.  <u>Rollins</u>, 454 So. 2d at 582.  Similarly, in <u>Litinsky</u>, the court found that the non-seller defendant was a direct participant because he was the only person the plaintiffs interacted with in connection with their contract with the corporate seller, and the non-seller defendant had stated that there was no material difference between him and the corporate.  <u>Litinsky</u>, 472 So. 2d at 826 – 827.  Here, in contrast, David Oreck was merely an advertising spokesman, and took no steps to actually close transactions with consumers or transfer goods to them.  Therefore, since David Oreck is neither a seller of products nor a direct participant in sales of the product, the claims against him under the FDUTPA act should be dismissed.[8]

The Court next considers David Oreck's argument that the claims for fraud against him should be dismissed because the complaint does not allege that he actually knew any of the statements he made were false.  The plaintiffs do not oppose this argument, and therefore the Court finds that the claims for fraud should be dismissed.

**V.      CONCLUSION**

In accordance with the foregoing, the Court hereby DISMISSES WITH PREJUDICE counts XI and XV of the FACC against all defendants, and DISMISSES WITHOUT PREJUDICE plaintiffs' claims for fraudulent concealment and the claim under § 1345.09(B) of the OCSPA against all defendants.  Additionally, the Court DISMISSES WITHOUT PREJUDICE the claims against David Oreck personally for fraud and for violation of the FDUPTA (Count XII).  Otherwise, defendants' motions are DENIED.

IT IS SO ORDERED.

00:02
CMJ

---

[8] If, however, plaintiffs' can allege facts showing that David Oreck had actual knowledge that the statements were false, this may subject him to liability under a direct participant theory.  <u>KC Leisure, Inc. v. Haber</u>, 972 So. 2d 1069, 1074 (Fla. Dist. Ct. App. 2008).  Therefore, this claim is subject to dismissal with leave to amend.